**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF GEORGIA, *ex rel.* BETTY RINER, <br><br> *Plaintiff-Relator,* <br><br> v. <br><br> COMMUNITY PRIMARY CARE OF GEORGIA, LLC (a/k/a Ga MedGroup, <br><br> *Defendant.* | Civil Action File No.: <br><br> 1:19-cv-04316-MLB |

## Request for Judicial Notice in Support of Defendant Community Primary Care of Georgia, LLC'S Motion To Dismiss

Pursuant to Federal Rule of Evidence 201, Defendant Community Primary Care of Georgia, LLC's ("CPC") requests that the Court take judicial notice of or otherwise consider the following documents in connection with its concurrently filed motion to dismiss under Rule 9(b) and Rule 12(b)(6) of the Federal Rules of Civil Procedure:

(1)  Scott Health & Rehab ownership and management disclosure: https://www.medicare.gov/care-compare/details/nursing home/115671?id=d4683216-9e83-46ad-a808-ffd56c81345a&state=GA&measure=nursing-home-ownership;

(2) Azalea Health & Rehab ownership and management disclosure: https://www.medicare.gov/care-compare/details/nursing-home/115642?id=c90ef5bc-053a-4c43-8258-

17626606v2

9b4526c6e0b3&state=GA&measure=nursing-home-ownership;

(3) Camellia Health & Rehab ownership and management disclosure: https://www.medicare.gov/care-compare/details/nursing-home/115598?id=e5c74d9f-934b-4fe1-979d-0ce620b3bc7d&state=GA&measure=nursing-home-ownership;

(4) Orchard Health & Rehab ownership and management disclosure: https://www.medicare.gov/care-compare/details/nursing-home/115522?id=693fbade-9637-4195-b5d8-7775b90662ef&state=GA&measure=nursing-home-ownership;

(5) Eagle Health & Rehab ownership and management disclosure: https://www.medicare.gov/care-compare/details/nursing-home/115618?id=cc280d1a-d485-4c9b-9def-18301f81a20b&state=GA&measure=nursing-home-ownership;

(6) Riverview Health & Rehab ownership and management disclosure: https://www.medicare.gov/care-compare/details/nursing-home/115641?id=5d530724-4c5a-4c1d-9f3d-6a2a79a09af3&state=GA&measure=nursing-home-ownership

(7) Heritage Inn of Sandersville Health and Rehab ownership and management disclosure: https://www.medicare.gov/care-compare/details/nursing-home/115369?id=13417375-7d7e-4d54-b018-4ef4a4a5abef&state=GA&measure=nursing-home-ownership ;

 (8) Delegation of Tasks in Skilled Nursing Facilities (SNFs) and Nursing Facilities (NFs) ("Designation of Tasks"), p. 1, Ref: S&C: 13-15-NH, March 8, 2013, Centers for Medicare and Medicaid Services, available at https://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/SurveyCertificationGenInfo/Downloads/Survey-and-Cert-Letter-13-15-.pdf ; and

(9) CMS, *Medicare Claims Processing Manual*, (Rev. 11109, 11-04-21), § 20.1.1: https://www.cms.gov/regulations-and-guidance/guidance/manuals/downloads/clm104c06.pdf (all last visited

Jan. 11, 2022).

CPC attaches copies of these items to this Request for Judicial Notice as Exhibits A through I.

Data on the Medicare.gov website—documents (1) through (7) above (Exhibits A through G)—show the ownership and control of the seven nursing homes referenced in the FAC. By statute, direct and indirect ownership of facilities must be reported and made publicly available down to the 5-percent level. *See* 42 U.S.C. § 1320a–3; *see also* 42 C.F.R. § 455.107. Publicly available Centers for Medicare and Medicaid Services ("CMS") records demonstrate that CPC has no ownership stake or operational or managerial control over any of the named facilities, which are owned and managed by other non-profit entities.

In deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court may take judicial notice of public records when considering a motion to dismiss. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279–80 (11th Cir. 1999); *Ohome v. U.S.*, 2021 WL 5771147, at *7 n.4 (N.D. Ga. Dec. 6, 2021) (noticing information available from a government website). Introducing these public records does not convert Defendant's motion to dismiss into a motion for summary judgment. *Serpentfoot v. Rome City Comm'n*, 322 Fed. Appx. 801, 807

3

(11th Cir. 2009) (*per curiam*) (citing *Bryant v. Avado Brands*, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999)).

Document (8) above (Exhibit H) is a CMS memorandum clarifying federal guidance related to physician delegation of certain tasks in skilled nursing facilities ("SNFs") and nursing facilities ("NFs") to non-physician practitioners such as nurse practitioners ("NPs"), physician assistants ("PAs"), or clinical nurse specialists ("CNSs"). CMS explains that non-physician practitioners may provide initial and other required visits for Medicaid (i.e., "NF") patients where state law permits.[1] The only purportedly false claim that Relator pleads with any degree of particularity is a Medicaid patient, as reflected the exhibit attached to her FAC. (FAC ¶¶119-20 & Exh. 1.) The CMS memorandum instructs that it was permissible for Relator's sample patient to be seen by non-physician practitioners, rather than a physician, as alleged by Relator. Specifically, the CMS memorandum states:

> In a facility where beds are dually certified [for Medicare (SNF) and Medicaid (NF) participation], the facility must determine how the resident stay is being paid. For residents in a Part A Medicare stay,

---

[1] The CMS Designation of Tasks memorandum references 42 C.F.R. §483.40. This regulation was renumbered to 42 C.F.R. § 483.30 effective November 28, 2016. *See* Medicare and Medicaid Programs; Reform of Requirements for Long-Term Care Facilities, 81 FR 68688-01, 2016 WL 5687478(F.R.) at *68861. However, the text of the new 42 C.F.R. § 483.30(f) was unchanged from 42 C.F.R. §483.40(f) discussed in this CMS memo. *See id*.

> the PA, NP, and CNS must follow the guidelines for services in a SNF. For Medicaid stays, the PA, NP, and CNS must follow the provisions outlined for care in NFs. As such, in a dually certified nursing home, any required physician task for a Medicaid beneficiary in a NF certified bed, at the option of the State, may be performed by a NP, CNS, or PA who is not an employee of the facility but who is working in collaboration with a physician.

(Exhibit H at 2-3.) Relator never alleges that a nurse practitioner did not see her sample patient (Patient H.B.), as permitted by § 483.30(f) and Georgia law (O.C.G.A. § 43-34-25). Thus, the CMS Designation of Tasks memorandum demonstrates that Relator failed to show that anything about claims for Medicaid payment for the sample patient's care were "false."

Document (9) above (Exhibit I)—which is Section 20.1.1 of the CMS Medicare Claims Processing Manual—states that that physician's professional services are excluded from a skilled nursing facility's Medicare Part A payment and must be billed separately by the physician directly to the Medicare program. (Exh. I p. 5.)  This CMS requirement, in conjunction with the statutory authority analyzed in CPC's Brief in Support of its Motion to Dismiss on pages 18-19, refute Relator's allegation that a nursing home is responsible for physician billing or vice-versa.

The Supreme Court has instructed that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on

Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007). Under Federal Rule of Evidence 201, the Court may take judicial notice of any adjudicative fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2).

## Conclusion

For the reasons set forth above, CPC respectfully requests that the Court take judicial notice of Exhibits A through I.

Respectfully submitted this 11th day of January, 2022.

ARNALL GOLDEN GREGORY LLP

*/s/ W. Jerad Rissler*
W. Jerad Rissler, Esq.
Georgia Bar No. 142024
jerad.rissler@agg.com
Glenn P. Hendrix, Esq.
Georgia Bar No. 346590
glenn.hendrix@agg.com

171 17th Street, Suite 2100
Atlanta, Georgia 30363-1031

17626606v2

404.873.8500 (Telephone)
404.873.8501 (Facsimile)

*Attorneys for Defendant*

17626606v2

## **CERTIFICATE OF COMPLIANCE**

The undersigned certified that this pleading was prepared using Book

Antiqua 13-point font in accordance with LR, NDGa 5.1(C).

*/s/ W. Jerad Rissler*
W. Jerad Rissler
Georgia Bar No. 142024

8

17626606v2

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2022, I electronically filed the foregoing **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT COMMUNITY PRIMARY CARE OF GEORGIA, LLC'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all Counsel of Record.

*/s/ W. Jerad Rissler*
W. Jerad Rissler
Georgia Bar No. 142024

ARNALL GOLDEN GREGORY LLP
171 17th Street NW
Suite 2100
Atlanta, Georgia 30363-1031
Telephone: 404.873.8500
Facsimile: 404.873.8501

17626606v2

# EXHIBIT
# A

Scott Health & Rehabilitation

# Ownership

**Legal business name**

Johnson County Ltc, LLC

**Ownership type**

Non profit – Other

**Contact info**

12 Smith Lane

Adrian, GA 31002

(478) 668-3225

## Owners and managers of Scott Health & Rehabilitation

**OWNER**

5% or greater direct ownership interest

**PIEDMONT REGIONAL HEALTH INC (100%)**

since 11/01/2006

**OPERATIONAL/MANAGERIAL CONTROL**

**CLINICAL SERVICES, INC.**

since 10/25/2005

**HUNT, GEORGE**

since 01/01/2019

# EXHIBIT B

2282967v1

Azalea Health and
Rehabilitation

# Ownership

**Legal business name**

Candler County Ltc, LLC

**Ownership type**

Non profit – Other

**Contact info**

300 Cedar Road
Metter, GA 30439
(912) 685-5734

## Owners and managers of Azalea Health and Rehabilitation

OWNER
5% or greater direct ownership interest

**PIEDMONT REGIONAL HEALTH INC (100%)**

since 11/01/2006

OPERATIONAL/MANAGERIAL CONTROL

**CLINICAL SERVICES, INC.**

since 10/25/2005

**HODGES, KIMBERLY**

since 11/01/2016

# EXHIBIT C

Camellia Health & Rehabilitation

# Ownership

**Legal business name**

Evans County Ltc LLC

**Ownership type**

Non profit – Other

**Contact info**

700 East Long Street
Claxton, GA 30417
(912) 739-2245

## Owners and managers of Camellia Health & Rehabilitation

OWNER
5% or greater direct ownership interest

**PIEDMONT REGIONAL HEALTH INC (100%)**

since 11/01/2006

OPERATIONAL/MANAGERIAL CONTROL

**CLINICAL SERVICES, INC.**

since 10/25/2005

**HUNT, GEORGE**

since 01/01/2019

# EXHIBIT D

Orchard Health and
Rehabilitation

# Ownership

**Legal business name**

Candler County II Ltc LLC

**Ownership type**

Non profit – Other

**Contact info**

1321 Pulaski School Road
Pulaski, GA 30451
(912) 685-5072

## Owners and managers of Orchard Health and Rehabilitation

**OWNER**
5% or greater direct ownership interest

### PIEDMONT REGIONAL HEALTH INC (100%)

since 11/01/2006

**OPERATIONAL/MANAGERIAL CONTROL**

### CLINICAL SERVICES, INC.

since 11/25/2005

### HUNT, GEORGE

since 01/01/2019

# EXHIBIT E

Eagle Health & Rehabilitation

# Ownership

×

**Legal business name**

Bulloch County Ltc LLC

**Ownership type**

Non profit - Other

**Contact info**

405 S College St
Statesboro, GA 30458
(912) 764-6108

## Owners and managers of Eagle Health & Rehabilitation

OWNER
5% or greater direct ownership interest

### PIEDMONT REGIONAL HEALTH INC (100%)

since 11/01/2006

OPERATIONAL/MANAGERIAL CONTROL

### CLINICAL SERVICES, INC.

since 10/25/2005

### HUNT, GEORGE

since 01/01/2019

# EXHIBIT F

Riverview Health & Rehab Ctr

# Ownership

**Legal business name**

Riverview Health and Rehabilitation Center, Inc.

**Ownership type**

Non profit - Corporation

**Contact info**

6711 Laroche Avenue
Savannah, GA 31406
(912) 354-8225

## Owners and managers of Riverview Health & Rehab Ctr

OPERATIONAL/MANAGERIAL CONTROL

### CLINICAL SERVICES, INC.

since 08/27/2012

### HODGES, KIMBERLY

since 11/01/2016

### POOLE, BRANDON

since 07/01/2021

### RIVERVIEW HEALTH AND REHABILITATION CENTER, INC.

since 08/27/2012

# EXHIBIT G

Heritage Inn of Sandersville
Health and Rehab

# Ownership

**Legal business name**

Heritage Inn of Sandersville LLC

**Ownership type**

Non profit – Other

**Contact info**

652 Ferncrest Drive
Sandersville, GA 31082
(478) 552-3015

## Owners and managers of Heritage Inn of Sandersville Health and Rehab

OWNER
5% or greater direct ownership interest

### HEALTH SYSTEMS FACILITIES, INC. (100%)

since 10/01/2003

OPERATIONAL/MANAGERIAL CONTROL

### CLINICAL SERVICES, INC.

since 10/01/2003

### HUNT, GEORGE

# EXHIBIT H

Department of Health & Human Services
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C2-21-16
Baltimore, Maryland  21244-1850



**Center for Clinical Standards and Quality/Survey & Certification Group**

**Ref: S&C: 13-15-NH**

**DATE:**      **March 8, 2013**

**TO:**        State Survey Agency Directors

**FROM:**      Director
               Survey and Certification Group

**SUBJECT**:   Physician Delegation of Tasks in Skilled Nursing Facilities (SNFs) and
               Nursing Facilities (NFs)

This memorandum replaces Survey and Certification memorandum S&C-04-08 dated
November 13, 2003, which discusses physician delegation of tasks in SNFs and NFs.

---

### Memorandum Summary

- **Guidance revision:**  This memo provides clarification of Federal guidance related
  to physician delegation of certain tasks in SNFs and NFs to non-physician
  practitioners (NPPs; formerly "physician extenders") such as nurse practitioners,
  physician assistants, or clinical nurse specialists
- **Implements Section 3108 of the Affordable Care Act (ACA):**  Implements section
  3108 of the Affordable Care Act, which adds physician assistants to the list of
  practitioners that can perform Skilled Nursing Facility (SNF) level of care
  certifications and re-certifications.
- **Co-signing of orders:**  Clarifies policy on co-signing orders in SNFs and NFs.

---

## A.    Background

The Centers for Medicare & Medicaid Services (CMS) is clarifying for State survey agencies
and providers the regulatory differences concerning physician delegation of tasks in SNFs and
NFs.  The distinction in policies between these two settings (SNFs and NFs) is based in statute
and regulation.  Improper application of these regulations may affect a facility's compliance and
may also affect payment to providers.  The key to accurate application is to identify:

(1) in which setting, SNF or NF, the physician services are being provided;
(2) whether the task must be performed personally by the physician; and
(3) whether or not the non-physician practitioner (NPP) is employed by the facility.

The "setting" is determined by whether the visit to a patient in a certified bed is to a resident
whose care is paid for by Medicare Part A in a SNF or under Medicaid in a NF. This
memorandum addresses the authority of NPPs (i.e., nurse practitioners, physician assistants, or

Page 2 - State Survey Agency Directors

clinical nurse specialists) to perform certain tasks such as conducting physician visits and writing orders, and to sign certifications and re-certifications.

**B.      Physician Delegation of Tasks in Skilled Nursing Facilities (SNFs)**

Under the requirements for long-term care facilities, 42 C.F.R. §483.40(e)(2) provides that, "A physician may not delegate a task when the regulations specify that the physician must perform it personally, or when the delegation is prohibited under State law or by the facility's own policies."

Physician Required and other Medically Necessary Visits in SNFs:  Under 42 C.F.R. §483.40(c)(3), all required physician visits must be made by the physician personally and cannot be delegated.  A required physician visit includes the initial comprehensive visit in a SNF and every alternate required visit thereafter, as required in 42 C.F.R. §483.40(c)(4).  The initial comprehensive visit in a SNF is the initial visit during which the physician completes a thorough assessment, develops a plan of care and writes or verifies admitting orders for the resident. Under 42 C.F.R. §483.40(c)(1), the initial comprehensive visit must occur no later than 30 days after a resident's admission into the SNF.  Further, under 42 C.F.R. §483.40(c)(4) and (e), the physician may not delegate the initial comprehensive visit in a SNF.  Non-physician practitioners may perform other medically necessary visits prior to and after the physician's initial comprehensive visit.

Once the physician has completed the initial comprehensive visit in the SNF, the physician may then delegate alternate visits to a Physician Assistant (PA), Nurse Practitioner (NP), or Clinical Nurse Specialist (CNS) who is licensed as such by the State and performing within the scope of practice in that State, as permitted under 42 C.F.R. §483.40(c)(4).  These alternate visits, as well as medically necessary visits, may be performed and signed by the NPP (physician co-signature is not required).

Certifications/Re-certifications in SNFs:  Under 42 C.F.R. §424.20, certifications and re-certifications are required to verify that a resident requires daily skilled nursing care or rehabilitation services.  Section 424.20(e)(2) (which reflects the requirements of section 1814 (a)(2) of the Social Security Act (Act)) states that NPs and CNSs who are not employed by the facility and who are working in collaboration with a physician may sign the required initial certification and re-certifications when permitted under the scope of practice for the State. Effective with services furnished on or after January 1, 2011, Section 1814(a)(2) of the Act, which was amended by section 3108 of the Affordable Care Act, authorizes physician assistants who are not employed by the facility to perform the required initial certification and periodic re-certifications of a beneficiary's need for a SNF level of care.

**C.      Performance of Physician Tasks in Nursing Facilities (NFs)**

Physician Required and Other Medically Necessary Visits in NFs:  Similar to a SNF, the initial comprehensive visit in a NF is the initial visit during which the physician completes a thorough assessment, develops a plan of care and writes or verifies admitting orders for the resident, which must take place no later than 30 days after admission.  Section 483.40(f) provides that "At the

Page 3 - State Survey Agency Directors

option of the State, any required physician task in a NF (including tasks which the regulations specify must be performed personally by the physician) may also be satisfied when performed by a nurse practitioner, clinical nurse specialist, or physician assistant who is not an employee of the facility but who is working in collaboration with a physician." In other words, NPPs that have a direct relationship with a physician and who are not employed by the facility may perform the initial comprehensive visit, any other required physician visit, and other medically necessary visits for a resident of a NF as the State allows. NPPs may also perform other medically necessary visits prior to and after the physician initial comprehensive visit.

At the option of the State, NPs, PAs, and CNSs who are employees of the facility, while not permitted to perform visits required under the schedule prescribed at 42 C.F.R. §483.40(c)(1), are permitted to perform other medically necessary visits and write orders based on these visits. For example, if a resident complains of a headache, the NP, CNS, or PA employed by the NF may assess the resident and write orders to address the condition. The physician is not required, other than by State law as applicable, to verify and sign orders written by NPPs who are employed by the facility for other medically necessary visits. These medically necessary visits performed by NPs, CNSs, and PAs employed by the facility may not take the place of the physician required visits, nor may the visit count towards meeting the required physician visit schedule prescribed at 42 C.F.R. §483.40(c)(1).

In contrast to the initial <u>SNF</u> visit, NPPs may provide initial NF visits and other required visits under 42 C.F.R. §§483.40(c)(3) and (f) if the State permits it. Under these regulations, required physician tasks, such as verifying and signing orders in an NF, may be delegated to a PA, NP, or CNS who is **not** an employee of the facility but who is working in collaboration with a physician. Orders written by an NPP who is employed by the NF and are written during visits that are not required visits, and are therefore "other medically necessary visits," do not require physician co-signature except as mandated by State law.

We are issuing this clarification because, where a NPP is permitted to perform a medically necessary visit, the NPP is likewise permitted to write applicable orders during that visit. The Federal requirements restricting NPPs who are employed by the NF from performing a *required visit*, do not apply to *other medically necessary visits*. Thus, this guidance clarifies when an NPP employed by a NF may write orders without a countersignature unless State law requires it.

NOTE: Regulatory language is included for reference purposes:

> **§483.40(f) Performance of Physician Tasks in NFs**
> **At the option of the State, any required physician task in a NF (including tasks which the regulations specify must be performed personally by the physician) may also be satisfied when performed by a nurse practitioner, clinical nurse specialist, or physician assistant who is not an employee of the facility but who is working in collaboration with a physician.**

**D.     Dually-Certified Facilities (SNF/NFs)**

While the regulations do not address dually-certified SNF/NFs directly, the law is clear about who can perform tasks in a SNF and in a NF. In a facility where beds are dually–certified under

Page 4 - State Survey Agency Directors

Medicare and Medicaid, the facility must determine how the particular resident stay is being paid.  For residents in a Part A Medicare stay, the NPP must follow the guidelines for services in a SNF.  For residents in a Medicaid stay, the NPP must follow the provisions outlined for care in NFs.  As such, in a dually-certified nursing home, any required physician task for a Medicaid beneficiary in a Medicaid stay certified bed, at the option of the State, may be performed by a NPP who is not an employee of the facility but who is working in collaboration with a physician.  In addition, in a dually-certified nursing home and at the option of a physician, required physician visits for a Medicare beneficiary in a Part A Medicare stay certified bed may be alternated between personal visits by the physician and visits by a NPP after the physician makes the initial first visit.

Table 1 below summarizes the requirements for non-physician practitioners to perform visits, sign orders, and sign certifications and re-certifications, when this function is permitted under the scope of practice for the State.

**Table 1:  Authority for Non-physician Practitioners to Perform Visits, Sign Orders and Sign Certifications/Re-certifications When Permitted by the State\***

|  | **Initial Comprehensive Visit /Orders** | **Other Required Visits^** | **Other Medically Necessary Visits & Orders+** | **Certification/ Recertification** |
|---|---|---|---|---|
| **SNFs** | | | | |
| PA, NP & CNS employed by the facility | May not perform/ May not sign | May perform alternate visits | May perform and sign | May not sign |
| PA, NP & CNS not a facility employee | May not perform/ May not sign | May perform alternate visits | May perform and sign | May sign subject to State Requirements |
| **NFs** | | | | |
| PA, NP, & CNS employed by the facility | May not perform/ May not sign | May not perform | May perform and sign | Not applicable ± |
| PA, NP, & CNS not a facility employee | May perform/ May sign | May perform | May perform and sign | Not applicable ± |

\*This reflects clinical practice guidelines
^Other required visits are the required monthly visits.
+Medically necessary visits may be performed prior to the initial comprehensive visit.
± This requirement relates specifically to coverage of a Part A Medicare stay, which can take place only in a Medicare-certified SNF.

For questions on this memorandum, please contact Alice Bonner at alice.bonner@cms.hhs.gov.

**Effective Date:**  This policy is in effect immediately.

**Training:**  This policy should be shared with all appropriate survey and certification staff, their managers, and the state/regional office training coordinator.

Page 5 - State Survey Agency Directors

/s/
Thomas E. Hamilton

cc:  Survey and Certification Regional Office Management

# EXHIBIT I

# Medicare Claims Processing Manual

## Chapter 6 - SNF Inpatient Part A Billing and SNF Consolidated Billing

**Table of Contents**
*(Rev. 11109, 11-04-21)*

**Transmittals for Chapter 6**

10 - Skilled Nursing Facility (SNF) Prospective Payment System (PPS) and Consolidated Billing Overview

    10.1 - Consolidated Billing Requirement for SNFs

    10.2 - Types of Facilities Subject to the Consolidated Billing Requirement for SNFs

    10.3 - Types of Services Subject to the Consolidated Billing Requirement for SNFs

    10.4 - Furnishing Services that are Subject to SNF Consolidated Billing Under an "Arrangement" with an Outside Entity

        10.4.1 - "Under Arrangements" Relationships

        10.4.2 - SNF and Supplier Responsibilities

20 - Services Included in Part A PPS Payment Not Billable Separately by the SNF

    20.1 - Services Beyond the Scope of the Part A SNF Benefit

    20.1.1 - Physician's Services and Other Professional Services Excluded From Part A PPS Payment and the Consolidated Billing Requirement

        20.1.1.1 - Correct Place of Service (POS) Code for SNF Claims

        20.1.1.2 - Hospital's "Facility Charge" in Connection with Clinic Services of a Physician

    20.1.2 - Other Excluded Services Beyond the Scope of a SNF Part A Benefit

        20.1.2.1 - Outpatient Surgery and Related Procedures- Inclusion

        20.1.2.2 - Emergency Services

    20.2 - Services Excluded from Part A PPS Payment and the Consolidated Billing Requirement on the Basis of Beneficiary Characteristics and Election

        20.2.1 - Dialysis and Dialysis Related Services to a Beneficiary With ESRD

            20.2.1.1 - ESRD Services

            20.2.1.2 - Coding Applicable to Dialysis Services Provided in a Renal Dialysis Facility (RDF) or Home)

20.2.2 - Hospice Care for a Beneficiary's Terminal Illness

20.3 - Other Services Excluded from SNF PPS and Consolidated Billing

20.3.1 - Ambulance Services

20.4 - Screening and Preventive Services

20.5 - Therapy Services

20.6 - SNF CB Annual Update Proces for  A/B MACs (A)

30 - Billing SNF PPS Services

30.1 - Health Insurance Prospective Payment System (HIPPS) Rate Code

30.2 - Coding PPS Bills for Ancillary Services

30.3 - Adjustment Request

30.4 - SNF PPS Pricer Software

30.4.1 - Input/Output Record Layout

30.4.2 - SNF PPS Rate Components

30.4.3 - Decision Logic Used by the Pricer on Claims

30.5 - Annual Updates to the SNF Pricer

40 - Special Inpatient Billing Instructions

40.1 - Submit Bills in Sequence

40.2 - Reprocessing Inpatient Bills in Sequence

40.3 - Determining Part A Admission Date, Discharge Date, and Utilization Days

40.3.1 - Date of Admission

40.3.2 - Patient Readmitted Within 30 Days After Discharge

40.3.3 - Same Day Transfer

40.3.4 - Situations that Require a Discharge or Leave of Absence

40.3.5 - Determine Utilization on Day of Discharge, Death, or Day Beginning a Leave of Absence

40.3.5.1 - Day of Discharge or Death Is the Day Following the Close of the Accounting Year

40.3.5.2 - Leave of Absence

40.4 - Accommodation Charges Incurred in Different Accounting Years

40.5 - Billing Procedures for Periodic Interim Payment (PIP) Method of Payment

40.6 - Total and Noncovered Charges

40.6.1 - Services in Excess of Covered Services

40.6.2 - Showing Discounted Charges

40.6.3 - Reporting Accommodations on the Claim

40.6.4 - Bills with Covered and Noncovered Days

40.6.5 - Notification of Limitation on Liability Decision

40.7 Ending a Benefit Period

40.8 - Billing in Benefits Exhaust and No-Payment Situations

40.8.1 - SNF Spell of Illness Quick Reference Chart

40.8.2 - Billing When Qualifying Stay or Transfer Criteria are Not Met

40.9- Other Billing Situations

50 - SNF Payment Bans, or Denial of Payment for New Admissions (DPNA)

50.1 - Effect on Utilization Days and Benefit Period

50.2 - Billing When Ban on Payment Is In Effect

50.2.1 - Effect of an Appeal to a DPNA on Billing Requirements During the Period a SNF is Subject to a DPNA

50.2.2 - Provider Liability Billing Instructions

50.2.3 - Beneficiary Liability Billing Instructions

50.2.4 - Part B Billing

50.3 - Sanctions Lifted: Procedures for Beneficiaries Admitted During the Sanction Period

50.3.1 - Tracking the Benefit Period

50.3.2 - Determining Whether Transfer Requirements Have Been Met

50.4 - Conducting Resident Assessments

50.5 - Physician Certification

50.6 - A/B MAC (A) Responsibilities

50.7 - Retroactive Removal of Sanctions

60 - Billing Procedures for a Composite SNF or a  Change in Provider Number

70 - Billing for Services After Termination of Provider Agreement, or After Payment is Denied for New Admissions

70.1 - General Rules

70.2 - Billing for Covered Services

70.3 - Part B Billing

80 - Billing Related to Physician's Services

80.1 - Reassignment Limitations

80.2 - Payment to Employer of Physician

80.3 - Information Necessary to Permit Payment to a Facility

80.4 - Services Furnished Within the SNF

80.5 - Billing Under Arrangements

80.6 - Indirect Contractual Arrangement

80.7 - Establishing That a SNF Qualifies to Receive Part B Payment on the Basis of Reassignment

90 - Medicare Advantage (MA) Beneficiaries

90.1 - Beneficiary Disenrolled from MA Plans

90.2 - Medicare Billing Requirements for Beneficiaries Enrolled in MA Plans

100 - Part A SNF PPS for Hospital Swing Bed Facilities

100.1 - Swing Bed Services Not Included in the Part A PPS Rate

110 - A/B MAC (B)/DME MAC Claims Processing for Consolidated Billing for Physician and Non-Physician Practitioner Services Rendered to Beneficiaries in a SNF Part A Stay

    110.1 - Correct Place of Service (POS) Code for SNF Claims

    110.2 - CWF Edits

        110.2.1 - Reject and Unsolicited Response Edits

        110.2.2 - A/B Crossover Edits

        110.2.3 - Duplicate Edits

        110.2.4 - Edit for Ambulance Services

        110.2.5 - Edit for Clinical Social Workers (CSWs)

        110.2.6 - Edit for Therapy Services Separately Payable When Furnished by a Physician

        110.2.7 - Edit to Prevent Payment of Facility Fees for Services Billed by an Ambulatory Surgical Center (ASC) when Rendered to a Beneficiary in a Part A Stay

    110.3 - CWF Override Codes

    110.4 - Coding Files and Updates

        110.4.1 - Annual Update Process

**120- Skilled Nursing Facility (SNF) Patient Driven Payment Model (PDPM)**

    **120.1 - HIPPS Updates and Structure Changes**

    **120.2 - Interrupted Stay Policy**

    **120.3 - Variable Per Diem (VPD) Adjustment**

    **120.4 - AIDS Adjustments**

    **120.5 - Transition Claims**

    **120.6 - Default Billing**

A general explanation of the five major categories can also be found at the above link.

**NOTE:** It is important for MACs/providers to understand the major categories for SNF CB.  Some major categories exclude services by revenue code (see section 20.1.2.2 for emergency room exclusion) as well as bill types (see section 20.2.1.2 on coding for renal dialysis facilities and 20.2.2 for hospice facilities).

Services paid under Part A cannot be billed under Part B.  Any service paid under Part A that is billed separately will not be paid separately, or payment will be recovered if already paid at the time of the SNF billing.  The following subsections list the types of services that can be billed under Part B for SNF residents for whom Part A payment is made.

## 20.1 - Services Beyond the Scope of the Part A SNF Benefit
**(Rev. 846, Issued:  02-10-06; Effective:  12-15-05; Implementation:  03-13-06)**

The following services are beyond the scope of the SNF Part A benefit and are excluded from payment under Part A SNF PPS and from the requirement for consolidated billing.  These services must be paid to the practitioner or provider that renders them and are billed separately by the rendering provider/supplier/practitioner to the A/B MAC (A) or (B).  The SNF may not bill excluded services separately under Part B for its inpatients entitled to Part A benefits.  HCPCS procedure codes representing these excepted services for services billed to the A/B MACs (A), (B), (HHH), and DME MACs are updated as frequently as quarterly on the CMS Web site at:
https://www.cms.gov/Medicare/Billing/SNFConsolidatedBilling/  Physicians, non-physician practitioners, and suppliers billing the A/B MAC (B) should consult the above link for lists of separately billable services.

**Note**:  There are separate Annual Update files for service billed to A/B MACs (B)/DME MACs and services billed to A/B MACs (A) or (HHH) posted to the Web site mentioned above.

## 20.1.1 - Physician's Services and Other Professional Services Excluded From Part A PPS Payment and the Consolidated Billing Requirement
**(Rev. 4409, Issued: 10-04-19, Effective: 11-05-19, Implementation: 11- 05-19)**

Except for the therapy services (see §20.5), physician's professional services and services of certain nonphysician providers listed below are excluded from Part A PPS-payment and the requirement for consolidated billing, and must be billed separately by the practitioner to the A/B MAC (B).  See below for Rural Health Clinic (RHC)/Federally Qualified Health Center (FQHC) instructions.

For this purpose "physician service" means the professional services of the physician as defined under the Medicare physician Fee Schedule.  For services that contain both a technical component and a professional component, the technical component, if any, must be billed by the SNF for its Part A inpatients.  The A/B MAC (B) will pay only the professional component to the physician.  For example, the technical component of a

diagnostic radiology test (representing the performance of the procedure itself) is subject to SNF CB, whereas the professional component (representing the physician's interpretation of the test results) is excluded and, thus, remains separately billable under Part B.

- Physician's services other than physical, occupational, and speech-language pathology services furnished to SNF residents;

- Physician assistants, working under a physician's supervision;

- Nurse practitioners and clinical nurse specialists working in collaboration with a physician;

- Certified nurse-midwives;

- Qualified psychologists; and

- Certified registered nurse anesthetists.

SNF CB excludes the categories of practitioner services described above, and this exclusion applies specifically to those professional services that ordinarily require performance by the practitioner personally (see the regulations at 42 CFR 411.15(p)(2)(i) and 415.102(a)(3)). This means, for example, that an otherwise bundled task (such as a routine blood draw) cannot be converted into an excluded physician service merely by having a physician perform it personally, as such a task does not ordinarily require performance by the physician. This exclusion also does not encompass services that are performed by someone else as an incident to the practitioner's professional service. Such "incident to" services remain subject to SNF CB and, accordingly, must be billed to Medicare by the SNF itself (see §10.3).

Providers with the following specialty codes assigned by CMS upon enrollment with Medicare are considered physicians for this purpose. Some limitations are imposed by §§1861(q) and (r) of the Act. These providers may bill their A/B MAC (B) directly.

**Physician Specialty Codes**

| | |
|---|---|
| 01 General Practice | 02 General Surgery |
| 03 Allergy/Immunology | 04 Otolaryngology |
| 05 Anesthesiology | 06 Cardiology |
| 07 Dermatology | 08 Family Practice |
| 10 Gastroenterology | 11 Internal Medicine |

**Physician Specialty Codes**

| | |
|---|---|
| 12 Osteopathic Manipulative Therapy | 13 Neurology |
| 14 Neurosurgery | 16 Obstetrics Gynecology |
| 18 Ophthalmology | 19 Oral Surgery (Dentists only) |
| 20 Orthopedic Surgery | 22 Pathology |
| 24 Plastic and Reconstructive Surgery | 25 Physical Medicine and Rehabilitation |
| 26 Psychiatry | 28 Colorectal Surgery (formerly Proctology) |
| 29 Pulmonary Disease | 30 Diagnostic Radiology |
| 33 Thoracic Surgery | 34 Urology |
| 35 Chiropractic | 36 Nuclear Medicine |
| 37 Pediatric Medicine | 38 Geriatric Medicine |
| 39 Nephrology | 40 Hand Surgery |
| 41 Optometry | 44 Infectious Disease |
| 46 Endocrinology | 48 Podiatry |
| 66 Rheumatology | 69 Independent Labs |
| 70 Multi specialty Clinic or Group Practice | 76 Peripheral Vascular Disease |
| 77 Vascular Surgery | 78 Cardiac Surgery |
| 79 Addiction Medicine | 81 Critical Care (Intensivists) |
| 82 Hematology | 83 Hematology/Oncology |
| 84 Preventive Medicine | 85 Maxillofacial Surgery |
| 86 Neuropsychiatry | 90 Medical Oncology |
| 91 Surgical Oncology | 92 Radiation Oncology |
| 93 Emergency Medicine | 94 Interventional Radiology |
| 98 Gynecological/Oncology | 99 Unknown Physician Specialty |

**Nonphysician Provider Specialty Codes**

| | |
|---|---|
| 42 Certified Nurse Midwife | 43 Certified Registered Nurse Anesthetist, Anesthesia Assistants (effective 1/1/89) |
| 50 Nurse Practitioner | 62 Clinical Psychologist  (billing independently) |
| 68 Clinical Psychologist | 89 Certified Clinical Nurse Specialist |
| 97 Physician Assistant | |

**NOTE:** Some HCPCS codes are defined as all professional components in the fee schedule. Fee schedule definitions apply for this purpose.

Effective July 1, 2001, the Benefits Improvement and Protection Act (BIPA) established payment method II, in which CAHs can bill and be paid for physician services billed to their A/B MAC (A). CAHs must bill the professional fees using revenue codes 96x, 97x, or 98x on an 85x type of bill (TOB). Like professional services billed to the A/B MAC (B), the specific line items containing these revenue codes for professional services are excluded from the requirement for consolidated billing.

RHC/FQHC Instructions:


Effective January 1, 2005, section 410 of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (MMA) amended the SNF consolidated billing law to specify that when a SNF's Part A resident receives the services of a physician (or another type of practitioner that the law identifies as being excluded from SNF consolidated billing) from a RHC or a FQHC, those services are not subject to CB merely by virtue of being furnished under the auspices of the RHC or FQHC. Accordingly, under section 410 of the MMA, services otherwise included within the scope of RHC and FQHC services that are also described in clause (ii) of section 1888(e)(2)(A) are excluded from consolidated billing, effective with services furnished on or after January 1, 2005. Only this subset of RHC/FQHC services may be covered and paid separately when furnished to SNF residents during a covered Part A stay (see the regulations at 42 CFR 411.15(p)(2)(xvii) and 405.2411(b)(2)). Use TOBs 71x and 73x, respectively, to bill for these RHC/FQHC services. See Pub. 100-02, Medicare Benefit Policy Manual, chapter 13 for additional information on Part B coverage of RHC/FQHC services.

## 20.1.1.2 - Hospital's "Facility Charge" in Connection with Clinic Services of a Physician
**(Rev. 3230, Issued: 04-03-15, Effective: 06-15-15, Implementation: 06-15-15)**

As noted above in section 20.1.1, physician services are excluded from Part A PPS payment and the requirement for consolidated billing. When a beneficiary receives clinic services from a hospital-based physician, the physician in this situation would bill his or her own professional services directly to the A/B MAC (B) and would be reimbursed at the facility rate of the Medicare physician fee schedule - which does not include overhead expenses. The hospital historically has submitted a separate Part B "facility charge" for the associated overhead expenses to its A/B MAC (A). The hospital's facility charge does not involve a separate service (such as a diagnostic test) furnished in addition to the physician's professional service; rather, it represents solely the overhead expenses associated with furnishing the professional service itself. Accordingly, hospitals bill for "facility charges" under the physician evaluation and management (E&M) codes in the range of 99201-99245 and G0463 (for hospitals paid under the Outpatient Prospective Payment System).

E&M codes, representing the hospital's "facility charge" for the overhead expenses associated with furnishing the professional service itself, are excluded from SNF CB.