# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

UNITED STATES OF AMERICA and )
THE STATE OF GEORGIA )
ex rel. BETTY RINER )
                               )
     Plaintiffs, )
                               )
v. )        Civil Case No:
                               )        1:19-cv-4316-MLB
COMMUNITY HEALTH SERVICES )
OF GEORGIA, LLC )
                               )
     Defendant. )

## RELATOR'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS RELATOR'S FIRST AMENDED COMPLAINT

Defendant has schemed to defraud taxpayers by deliberately and systematically submitting false claims to Medicare and Medicaid and receiving money on those claims, indifferent to the pain it inflicted on society's most vulnerable in the process.  In response to Relator Riner's exposure of those schemes, Defendant retaliated against Relator Riner.  Now Defendant asks this Court to allow it to avoid responsibility and dismiss Relator Riner's Complaint. To do so, Defendant asks the Court to apply an incorrect definition of "shotgun pleading," improperly consider documents outside of the pleadings to accept its gloss on disputed alleged facts, and impose standards of pleading and law that

1

exceed what is required by the Federal Rules of Civil Procedure, the statutes at issue, and Eleventh Circuit case law.  The Court should deny the Motion.

## STATEMENT OF FACTS

Defendant owns, operates, and/or controls multiple health care service entities, including facilities and physician and medical services through which Defendant manages, submits, and receives payment for claims to the Government. Doc. 44 ¶¶ 1, 5-14.  Defendant's interrelationships among its entities, facilities, employees, and controllers are labyrinthine, and it has changed names.  *Id.*

Relator Riner is an Advanced Practice Registered Nurse (APRN) who worked for Defendant from 2015 through 2021 and received positive feedback for her work.  *Id.* ¶¶ 16, 19, 154, 158-59.  Defendant has violated the False Claims Act (FCA) and Georgia False Medicaid Claims Act (GFMCA) by billing the Government for services (1) without oversight confirming that the services were medically necessary and appropriate, (2) that never occurred or occurred in deficient form, and (3) based on categorizing patients as requiring "skilled" care, which led to more lucrative reimbursements, instead of categorizing them for "palliative" care, which was the medically necessary diagnosis.  *Id.* ¶ 3. Prioritizing profits over patients, Defendant failed to provide patients required physician visits, fabricated visits that did not take place, charted visits as occurring

on different dates than they really did, and mis-classified patients, all in order to charge the Government more money, which it did.  *See generally id.*

Relator Riner is now an employee of a company that provides nursing services on a contract basis to facilities, including Defendant's.  *Id.* ¶ 160.  Soon after this lawsuit was unsealed, Relator Riner was informed that Defendant no longer wanted her to serve at its facilities, with no non-retaliatory reason given, depriving her of professional opportunities.  *Id.* ¶ 161-68.

## PROCEDURAL HISTORY

Relator Riner brought this lawsuit on September 25, 2019.  Doc. 1.  The United States and Georgia sought and received multiple unopposed requests for extensions of time to determine whether to intervene, ultimately declining to intervene,[1] and the Court ordered the case unsealed on June 2, 2021.  Doc. 26.  Relator Riner then filed her Amended Complaint (Doc. 44) ("Complaint"), the subject of this Motion to Dismiss, on December 7, 2021.

## ARGUMENT AND CITATION TO AUTHORITY

### I. Defendant cannot meet its high burden on a motion to dismiss

A motion to dismiss may only be granted if the complaint does not "contain

---

[1] This decision was expressly not on the merits and "is not probative of any matter concerning the merits of" the claims.  *See, e.g., Graves v. Plaza Med. Ctrs., Corp.,* 281 F. Supp. 3d 1260, 1276-77 (S.D. Fla. 2017) (quotation marks omitted).

sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Guerra v. Rockdale Cnty.*, 420 F. Supp. 3d 1327, 1336 (N.D. Ga. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ohome v. U.S.*, 2021 WL 5771147, at *2 (N.D. Ga. Dec. 6, 2021) (quoting *Iqbal*, 556 U.S. at 678).  "At the motion to dismiss stage, 'all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.'" *Guerra*, 420 F. Supp. 3d at 1336 (quoting *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999)).

Rule 9(b) does not drastically alter the standard for dismissal on fraud claims, but rather requires only that Plaintiff "state with particularity the circumstances constituting fraud or mistake," while  "conditions of a person's mind" such as intent and knowledge may be alleged generally, "to alert defendants to the precise misconduct with which they are charged and protect defendants against spurious charges." *U.S. ex rel. Matheny v. Medco Health Sol.*, 671 F.3d 1217, 1222 (11th Cir. 2012) (quotation marks and punctuation omitted).

Defendant has not shown the Complaint is insufficient as a matter of law.

## II. The Complaint Follows the Federal Rules of Pleading

Defendant argues that the Complaint is a "shotgun pleading."  Doc. 48-1 at 5-9.  It is not.  The Complaint presents Relator Riner's claims discretely and succinctly so that Defendant and the Court can discern her claims and the alleged facts pertinent to those claims.  That is all that is required.  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  Rule 8(d)(1) requires that allegations "must be simple, concise, and direct.  No technical form is required."

Shotgun complaints are "calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially for a jury, can be masked."  *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (quotation marks omitted).  Yet, Defendant has not moved for a more definite statement or otherwise identified any claim about which it is confused or to which it is unable to respond.

First, Defendant begins its argument by misstating the law required for this Court to find a shotgun pleading exists.  Defendant cites *Barmapov* for the proposition that one category of "shotgun pleadings" is a complaint that "incorporates by reference all of the preceding factual allegations."  Doc. 48-1 at 5-

6 (citing 986 F.3d at 1324-25).  That is not what a shotgun pleading is and is not what *Barmapov* held.  Indeed, because incorporation by reference can shorten a pleading and promote clarity, the Federal Rules of Civil Procedure specifically provide for it.  Fed. R. Civ. P. 10(c).  Rather, the first category of a "shotgun pleading," according to the Eleventh Circuit in *Barmapov*, is "a complaint containing multiple **counts** where each **count** adopts the allegations of all preceding **counts**, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."  986 F.3d at 1324-25 (emphases supplied and quotation marks omitted).  The court in *Barmapov* held that the complaint did "not fall into the first category because although nine of the 19 counts incorporate almost every factual allegation in the complaint, none of them adopts the allegations in the preceding counts."  986 F.3d at 1325.

The Complaint in this case also does not fall into this category of impermissible shotgun pleadings.  The Complaint incorporates the factual allegations into each count because they are relevant to each count and this is allowed, but no count incorporates any count that precedes it.  *See* Doc. 44.  This case is not like *Magluta v. Samples* or *Jackson v. Bank of Am., N.A.,* where the complaints incorporated into each count all prior counts.  *Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001); *Jackson*, 898 F.3d 1348, 1364-77 (11th Cir. 2018).

Second, Defendant argues that the Complaint "is replete with conclusory, vague, and immaterial facts," but it cites its Motion to Strike, which in turn only challenges 22 out of 204 paragraphs of the Complaint.  Doc. 48-1 at 6-7; Doc. 49 at 1.  As explained more fully in Relator Riner's Response to that Motion, those challenged portions are material to Relator Riner's claims, and Defendant does not argue in the Motion to Strike that the allegations are conclusory or vague; they are not, especially pursuant to Rule 8's "short and plain statement" standard.

Third, Defendant states, without argument or citation to additional authority, that the Complaint is a shotgun pleading because it "leaves it to Defendant and the Court to parse out her alleged schemes and figure out which implicate which FCA provisions."  Doc. 48-1 at 7.  To the contrary, as discussed throughout this brief, Relator Riner's Complaint sets forth straightforward allegations of violations of the FCA and GFMCA's prohibitions against false claims to the Government, false records, and retaliation.  From a practical standpoint, Defendant must understand which allegations apply to which claims for relief, because it has moved to dismiss claims and does not assert the need for clarification to support its legal challenges.

Finally, Defendant asserts that Relator Riner's Complaint "pleads contradictory facts to avoid specifying which of the original complaint defendants were responsible for which acts."  *Id*. at 7-9.  There is only one operative

complaint in this case, which is the First Amended Complaint (Doc. 44).  "[A]n amended pleading supersedes the former pleading; and the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary." *Devengoechea v. Bolivarian Republic of Venez.*, 889 F.3d 1213, 1229 (11th Cir. 2018) (quotation marks omitted).

Defendant cites two district court orders that state a court may disregard changes between an initial and amended complaint if the discrepancies are irreconcilable.  Doc. 48-1 at 8.  But in this case, Relator Riner has been consistent from the first filing in the fall of 2019: The entity known at some point as Community Health Services of Georgia ("CHS-Ga") and now known as Community Primary Care of Georgia ("CPC-Ga"), both of which have been known as "Ga MedGroup," either on its own, through "doing business as" names, or alongside affiliate and subsidiary companies it controlled, violated the False Claims Act.  *Compare* Doc. 1 ¶¶ 4, 6-12, *with* Doc. 44 ¶¶ 3, 5-9.  Accordingly, in both versions of the complaint, Relator Riner alleges that Defendant *is* CPC-Ga or its predecessor CHS-Ga, both also doing business as GA MedGroup, and it controls multiple other entities.  Eliminating several defendants because there is

only one controlling culprit is not inconsistency; it is streamlining.[2]

Defendant's cases do not support finding inconsistencies here.  First, the court in *Nelson v. Trugolf, Inc.* stated that "[t]he degree to which the two complaints are inconsistent is the critical inquiry" and in that case the court ruled the versions were not inconsistent.  2021 WL 3398140, at *5 (N.D. Ga. Mar. 31, 2021).  *Rubinstein v. Keshet Inter Vivos Trust* is also no help to Defendant; it involves the changing of evidence submitted along with the original complaint.  2018 WL 8899230, at *5 (S.D. Fla. Oct. 17, 2018).  Relator Riner has submitted no evidence, and her allegations are consistent: GaMed Group, whatever its current name, together with others it controlled, violated the FCA and GFMCA.

In sum, "[t]he key feature of shotgun pleadings is that they fail to give defendants 'adequate notice' of the claims being bought against them and the supporting factual allegations for each claim."  *Harvard v. Inch*, 411 F. Supp. 3d 1220, 1232 (N.D. Fla. 2019) (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)).  The Complaint sufficiently provides Defendant and the Court notice and the ability to determine which facts support

---

[2] Defendant mentions that, upon *its* request, Relator Riner eliminated a reference to Defendant owning the dismissed defendants from her Notices of Voluntary Dismissal (Doc. 40; Doc. 41) before filing.  Doc. 48-1 at 2-3.  As counsel for Defendant noted in their email to Relator Riner's counsel requesting the change, the change was immaterial to the dismissals, and it is not relevant to this Motion.

which claims.  *See Barmapov*, 986 F.3d at 1324.

## III.    The Complaint Sufficiently States FCA and GFMCA Claims

### A. Relator Riner alleges that Defendant controls all entities at issue

Courts may not consider anything beyond the face of the complaint and attached documents on a motion to dismiss for failure to state a claim, with a narrow exception "in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss."  *Ohome*, 2021 WL 5771147, at *2 (quoting *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007)).

The Complaint alleges that Defendant owns, operates, controls, and/or provides or refers medical services at various entities and facilities and that service providers are controlled by the same individuals that control Defendant and its instrumentalities.  *See, e.g.*, Doc. 44 ¶¶ 8-9, 150-52.  Defendant argues that records show that it "has no ownership stake or operational or managerial control over any of the named facilities."  Doc. 48-1 at 10.  But, as established further in Relator Riner's Response to Defendant's Request for Judicial Notice, the records Defendant proffers should not be considered.  Further they do *not* establish that Defendant has no control over the facilities.  Indeed, they suggest the opposite: the

10

owners listed in the records share an operating entity, an address used by a

Defendant's foundation and that operating entity, and other connections.[3]  Further,

Defendant does not claim that any other entity is a necessary party, improperly

joined, or inaccurately named.  *See* Doc. 53 (Joint Preliminary Report and

Discovery Plan) ¶ 5.  If someone else completely controls the entities at issue,

Defendant had an opportunity, and indeed a "continuing duty," *id.*, to share that

information and has not done so.

Whether Defendant officially or otherwise controls and is responsible for the

entities at issue in this case is an issue of fact that cannot be disposed of based on

one stray record.  *See Piccard v. Deedy*, 2021 WL 4846132, at *1 (N.D. Ga. Oct.

15, 2021) (warning that judicial notice risks "bypass[ing] the safeguards which are

involved with the usual process of proving facts by competent evidence in [a]

district court" (quoting *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997))).

**B.  Relator Riner alleges with particularity false claims submitted**

A complaint alleging FCA and GFMCA violations may not be dismissed on

a motion to dismiss unless it fails to "state with particularity the circumstances

constituting fraud or mistake," meaning "facts as to time, place, and substance of

---

[3] Also as discussed in that Response, Defendant's own website has a "Services"
page which includes "Skilled Nursing," which links to a website that, in turn, lists
all except for one of the facilities at issue.

the defendant's alleged fraud, specifically the details of the defendants' allegedly

fraudulent acts, when they occurred, and who engaged in them." *Matheny*, 671

F.3d at 1222 (quotation marks omitted).  A plaintiff may not merely "describe a

private scheme in detail but then . . . allege simply and without any stated reason

for his belief that claims requesting illegal payments must have been submitted,

were likely submitted or should have been submitted to the Government," but

instead must include "some indicia of reliability . . . to support the allegation of an

actual false claim for payment being made to the Government."  *U.S. ex rel.*

*Clausen v. Lab'y Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002)

(citations and emphasis omitted).

> Under this framework, [a] complaint will be sufficiently
> pled if [it] alleges the fraudulent scheme with
> particularity, along with (1) direct allegations of
> particular instances of fraudulent submissions or (2)
> specific allegations including other indicia of reliability
> to support the conclusory allegations of fraudulent
> submissions (*e.g.*, firsthand but general knowledge of
> fraudulent submissions or defendant's records and billing
> practices, as in *Hill* [*v. Morehouse Med. Assocs.*, 2003
> WL 22019936 (11th Cir. Aug. 15, 2003)]; or allegations
> of other circumstances sufficient to explain why she
> believes Defendants submitted false or fraudulent claims.

*Rutledge v. Aveda*, 2015 WL 2238786, at *12 (N.D. Ala. May 12, 2015).

Relator Riner meets these requirements.  "As a former APRN for Defendant,

Relator Riner directly observed Defendant's conduct as to making claims, staffing,

and other operations, and she also participated in conversations with colleagues and superiors about Defendant's operations," and she is "intimately familiar with Defendant's violations of the FCA alleged herein" such as "*submitting* false and fraudulent charges," and had "some, but not unfettered, access to information and documentation." Doc. 44 ¶¶ 20-22 (emphasis supplied). The Complaint also alleges details about what she viewed firsthand in her role as APRN, like observing Dr. Paul Hawkins change the date of a physician visit on his computerized notes such that he charged the Government for both his visit and the examination of the patient by Relator Riner, and charge for a 45-minute examination having spent less than 15 minutes with the patient. *Id*. ¶¶ 128-30; *see generally id*.

Defendant argues that "Relator does not allege the details of any claims," Doc. 48-1 at 14, but the facts are alleged in the Complaint; Defendant merely omits them. For example, Defendant states that the Complaint fails to allege the submission of a claim arising from a physician copying from a nurse practitioner's notes without conducting his own assessment, *id*., but the paragraph immediately preceding alleges that the doctor "nevertheless used billing code 99306 to charge Medicare for this visit, instead of billing code 99308." Doc. 44 ¶ 129. Defendant argues that the "passive formulation" of the charge "Medicare was nevertheless billed" renders it ineffective, but in the same paragraph the Complaint alleges, "Dr.

Ralph Warnock *falsely charted a patient for Medicare reimbursement* for a visit at Eagle, when in fact that patient was in the shower at the time Dr. Warnock claims he examined her."  Doc. 48-1 at 14; Doc. 44 ¶ 131 (emphasis supplied).

Defendant's next example—"so that Defendant would receive a higher reimbursement from Medicare"—sees the active allegation *in the same sentence* of the Complaint: "Dr. Hawkins nevertheless used billing code 99306 *to charge Medicare for this visit*."  Doc. 48-1 at 15; Doc. 44 ¶ 129 (emphasis supplied).

Defendant argues that Relator Riner's examples of submitting false claims arising from patient examinations that never occurred lack detail, Doc. 48-1 at 15-16, but the Complaint alleges that in each case Defendant's physicians billed Medicare for examinations that never took place, provides the doctor's name and the month and year in or about the visit, specifies the evidence of the impossibility of the doctor seeing the patient, and alleges processes for maintaining forms for billing the Government and for making and receiving claims submissions to the Government.  *See, e.g.*, Doc. 44 ¶¶ 20-22, 39-60, 118-20, 129, 132-35.  The Complaint also alleges that Defendant knew; it directed its doctors "make up visits that never occurred or make short visits and charge for longer ones."  *Id.* ¶ 121.

Defendant similarly reads allegations about facility admissions in isolation, ignoring allegations that Defendant "bills the government for all these services and

is paid for such services based on the claim that the services are medically reasonable and necessary" notwithstanding the fact that "administrative staff regularly overrides medical personnel in making decisions about the admission of patients and the categorization of those patients." *Id*. ¶¶ 136-53. Despite occasional "passive formulations" of language, Doc. 48-1 at 14-16, the "specific circumstances" of the alleged submission of a false claim are clear sufficient to meet the requirements of Federal Rules of Civil Procedure 8(a)(2), 8(d), and 9(b).

Further, the Complaint attaches medical billing records of Patient H.B., showing services charged to Medicaid, "notwithstanding Defendant's failure to timely provide doctor visits to ensure that such claims were based on medical reasonableness and necessity." Doc. 44 ¶ 120; Doc. 44-1. Defendant argues that the Court cannot consider this representative sample because there allegedly is no requirement that Patient H.B. be seen by a physician at the alleged intervals. Doc. 48-1 at 13. But this is not true; there is a requirement. 42 C.F.R. §§ 483.30(b)-(c). Defendant seems to argue that 42 C.F.R. § 483.30(f) may provide an exception to this requirement. The 42 C.F.R. § 483.30(f) exception provides that non-physician practitioner "who is not an employee of the facility but is working in collaboration with a physician" may conduct these required visits for Medicaid facilities in states in which state law allows. But in her Complaint, Relator Riner is not required to

plead the absence of an exception that Defendant argues should apply. *See, e.g.*, *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) ("[P]laintiffs are not required to negate an affirmative defense in their complaint." (quotation marks omitted and punctuation altered)). To be sure, if she is so required, Relator Riner should be allowed to amend her complaint, because she can allege facts that show that this exception is not applicable.[4] But this is a fact issue, not appropriate for a motion to dismiss, and does not undermine Relator Riner's other allegations, like charting visits that never occurred.

In sum, Relator Riner has alleged "personal knowledge or participation" that provides "some indicia of reliability . . . to support the allegation of an actual false claim for payment being made to the Government." *Matheny*, 671 F.3d at 1230 (citation omitted); *Clausen*, 290 F.3d at 1311 (citations and emphasis omitted). This is like *U.S. v. R&F Props. of Lake Cnty., Inc.*, where the employment experiences of a nurse practitioner were "sufficient to explain why [she] believed [her employer] submitted" false claims. 433 F.3d 1349, 1360 (11th Cir. 2005).

In addition, Relator Riner has provided an example of actual claim submissions entered into the medical billing records for Patient H.B. *See U.S. ex*

---

[4] Specifically, Relator Riner can allege, based on her personal observations as an APRN for Defendant, Doc. 44 ¶¶ 17, 19-21, that the non-physician practitioners who conducted the visits instead of a physician were employed by the facilities as part of the same unit of control as Defendant, making the exception not applicable.

*rel. Mastej v. Health Mgmt. Assoc., Inc.*, 591 F. App'x 693, 704 (11th Cir. 2014) ("Providing exact billing data . . . or attaching a representative claim is one way a complaint can establish the necessary indicia of reliability that a false claim was actually submitted." (citations omitted)).  The Complaint is nothing like the complaints in *Atkins* and *Helmly*, the cases that Defendant cites in its argument that Relator Riner has not adequately pled details of a false claim: in *Atkins* the relator "summarily conclude[d] that the defendants submitted false claims" without an example or alleging "firsthand knowledge of the defendants' submissions of false claims," while in *Helmly* the district court had noted that the relators failed to allege "any specifics about actual claims submitted" *or* the requisite "personal knowledge or level of participation."  *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006); *Helmly v. Bethany Hospice and Palliative Care of Coastal Ga.*, 853 F. App'x 496, 501 (11th Cir. 2021).  Here, Relator Riner had firsthand knowledge, discussed in detail Defendant's knowledge of the false claims, and provided a billing example.

### C. Relator Riner has alleged falsity and materiality

Defendant argues, without citation to a single case, that as to "many," but not all, of Relator Riner's claims, the Complaint fails "to plead facts showing the materiality of these alleged schemes to the Government's payment decisions."

Doc. 48-1 at 18-19.  Defendant only identifies two alleged failures: physicians

directly, not facilities or operators, bill Medicare; and understaffing nurses is not

material to the Government's decision to make or deny Medicare payments.  *Id.*

First, the Complaint alleges that Defendant controls, operates, employs, uses

as agents, and otherwise is under the same umbrella as its doctors.  *See, e.g.*, Doc.

44 ¶¶ 1, 3, 9, 17, 66-70, 121-25, 137, 139, 148, 150.  Second, the Complaint

alleges that the understaffing of physicians and non-physician practitioners leads to

staff members conducting "a battery of services on patients, without regard to

medical necessity and without physician-oversight."  *Id.* ¶¶ 90-135.  Only

"reasonable and necessary" services and products are eligible for reimbursement.

42 U.S.C. § 1395y(a)(1)(A).  Thus, alleging that the services and products

provided to the patients were done without regard to medical necessity, but rather

were to increase reimbursements, is sufficient to allege falsity and materiality.

More generally, although Defendant's Motion does not specify any other

claims or arguments that fail to plead materiality, the Complaint alleges CMS form

UB-04 or CMS-1450, required for submissions for payments by the Government,

must be verified by the submitting party as "true, accurate and complete" and

document medical services for payment that were "medically necessary and

appropriate for the health of the patient," and it provides other details about

18

certifying and submitting claims.  *See id.* ¶¶ 39-63.  The fact that services were not provided at all, not provided as claimed, or not medically necessary is material to the Government's decision to pay them.  Relator Riner has also sufficiently alleged details about the claims being false.  *See generally id.* ¶¶ 64-153.

IV.    **The Complaint Sufficiently Alleges Retaliation**

A. **The Complaint alleges the elements of a retaliation claim**

31 U.S.C. § 3730(h) and O.C.G.A. §49-4-168.4, in nearly identical language, provide that "[a]ny employee, contractor, or agent shall be entitled to all relief necessary to make [them] whole," if they are "discriminated against in the terms and conditions of employment because of lawful acts done by [them] in furtherance of a civil action" under the FCA or GFMCA.  "To adequately plead an FCA and GFMCA retaliation claim, the Plaintiff must allege 'unlawful discrimination,' a 'protected activity,' and 'a causal connection' between the discrimination and protected activity." *Cervalli v. Piedmont Healthcare, Inc.*, 511 F. Supp. 3d 1363, 1368 (N.D. Ga. 2021) (quoting *U.S. v. HPC Healthcare, Inc.*, 723 F. App'x 783, 791-92 (11th Cir. 2018)).  The heightened pleading standard Rule 9(b) imposes for fraud claims does not apply to these retaliation claims; a complaint need only "make a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Defendant does not appear to contest the sufficiency of Relator Riner's allegations as to protected activity or causal connection.  *See* Doc. 48-1 at 23-25.  Indeed, Relator Riner lawfully acted in furtherance of a civil action by filing this civil action.  *See Backhurst v. Lee Cnty.*, 2019 WL 952269, at *5 (M.D. Fla. Feb. 27, 2019) ("The prototypical example of conduct protected by the FCA is the filing of an FCA claim."  (citation omitted)).  The Complaint alleges that Relator Riner's supervisor told her that Defendant no longer wanted her to serve at its facilities soon after learning of her filing of the lawsuit, after Defendant previously gave Relator Riner positive reviews.  Doc. 44 ¶¶ 154, 158-64; *see, e.g.*, *Lord v. Univ. of Miami*, 2021 WL 5327788, at *14-15 (S.D. Fla. Nov. 16, 2021) (ruling the plaintiff pleaded sufficient retaliation facts based in part on the timing of the retaliation).

Relator Riner also alleges unlawful discrimination in the terms and conditions of her employment.  Doc. 44 ¶¶ 165-68.  Defendant argues that "[n]one of this rises to the level of retaliation under the FCA" because the retaliation was not "objectively adverse," Doc. 48-1 at 23-24, but it muddles legal rules in its argument.  *Cheatham v. DeKalb Cnty.* applied the "adverse employment action" test from a Title VII *disparate impact* test, not a retaliation case.  682 F. App'x 881, 889 (11th Cir. 2017).  Case law after *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227 (11th Cir. 2006), held that an "adverse action" in a Title

VII *retaliation* claim must be defined simply as action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). *Crawford* concluded: "*Burlington* also strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions." *Id*. at 973 n.13 (citation omitted).

Under either standard, a reasonable worker would have found Defendant's conduct to be unlawful discrimination. Defendant, as an important client of Relator Riner's current employer, has rendered her unable to serve Defendant's facilities, which in turn limits her opportunities for advancement at her current job and makes her less likely to be offered other jobs in the future, because she must disclose that she is restricted from serving at Defendant's facilities to insurers, facilities, and future positions and is deprived of access to colleagues who could serve as required references. Doc. 44 ¶¶ 165-68. In contrast, in *U.S. v. Lockheed Martin Corp.*, 927 F. Supp. 2d 1338, 1349 (N.D. Ga 2013), the alleged discrimination was the assignment of new work duties that the plaintiff did not allege interfered with existing workload. *Cotton* and *Cheatham*, both on *summary*

*judgment* rather than a motion to dismiss, involved a plaintiff who was unable to show *any* negative effects arising from her claim of sexual harassment, and a transfer with no reduction in "pay, prestige or responsibility" as well as "no other reason why a reasonable person . . . would view the action as adverse," respectively. *Cotton*, 434 F.3d at 1232-33; *Cheatham*, 682 F. App'x at 889 (citations omitted); *see also El-Khalil v. Oakwood Healthcare, Inc.*, 2020 WL 1915358, at *1 (E.D. Mich. Apr. 20, 2020) (complaint in which the alleged retaliatory discrimination was declining to renew a podiatrist's admitting privileges at hospital at which he had worked but currently only held admitting privileges).

**B. Relator Riner is a "contractor"**

Defendant also argues that Relator Riner is not a current contractor of Defendant. Defendant is wrong. First, whether Relator Riner is a contractor is inherently factual, inappropriate for resolution at the motion to dismiss stage, not, as Defendant argues, "a legal conclusion couched as a factual allegation." Doc. 48-1 at 22. Sufficiently for the pleadings stage, Relator Riner has alleged that she is a current contractor of Defendant, "because her current employer provides her services on a contract basis to facilities including Defendant's facilities," and Defendant is an "important client" of the employer. Doc. 44 ¶¶ 160, 190, 199.

A district court in Michigan considered a defendant's argument that the

plaintiff was not a "contractor" in similar circumstances.  *Ickes v. Nexcare Health Sys., LLC*, 178 F. Supp. 3d 578, 591-93 (E.D. Mich. 2016).  It noted that Congress amended the FCA to include "contractors" and "agents," and "it is clear that the purpose was to ensure that the protections of the Act extended beyond a traditional employment relationship."  *Id*. at 591.  It then ruled that the plaintiff was a "contractor" under the FCA, when the plaintiff was an employee of a non-party company that was contracted to provide rehabilitation services to a defendant nursing home.  *Id*.; *see also El-Khalil*, 2020 WL 1915358, at *1-2 (ruling that a health care provider with staff privileges at his former employer hospital had plausibly pleaded that he was an "employee, contractor, or agent").

### C. The statutes do not limit the term "employee" to "current employee"

As the Sixth Circuit has held, the Court should not insert the word "current" into the FCA and GFMCA's prohibition against retaliation against "employees." *U.S. ex rel. Felten v. William Beaumont Hosp.*, 993 F.3d 428, 435 (6th Cir. 2021). The Sixth Circuit noted that the United States Supreme Court held that the term "employee" in Title VII of the Civil Rights Act of 1964 encompasses both current and former employees, in part because of the consistency of such a reading "with a primary purpose of antiretaliation provisions: Maintaining unfettered access to statutory remedial mechanisms."  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346

(1997) (citations omitted).  The Supreme Court held that "it would be destructive of this purpose of the antiretaliation provision for an employer to be able to retaliate with impunity against an entire class of acts under Title VII—for example, complaints regarding discriminatory termination."  *Id*.  Similarly, declining to read the term "current" into the FCA and GFMCA anti-retaliation provisions best comports with the statutes' broad protections of whistleblowers.

As Defendant notes, other courts have answered this question differently. Doc. 48-1 at 20-21.  But some of those cases emphasize the *type* of discrimination.[5]  For example, in *U.S. ex rel. Head v. Kane Co.,* the district court noted that the acts of discrimination alleged by the plaintiff were "non employment-related."  798 F. Supp. 2d 186, 208 n.32 (D.D.C. 2011).  The alleged retaliation in the Tenth Circuit case was defendant's lawsuit to reclaim money it had paid the plaintiff.  *Potts v. Ctr. for Excellence in Higher Educ.*, 908 F.3d 610, 612 (10th Cir. 2018).  Relator Riner alleges that she engaged in FCA-protected activity while employed by Defendant, and she alleges that the discrimination is in the terms and conditions of her employment.  Doc. 44 ¶¶ 19, 165-68.

---

[5] Also, a federal district court in Virginia declined to resolve its case at the motion to dismiss stage, noting the lack of binding precedent.  *See Fitzsimmons v. Cardiology Assoc. of Fredericksburg, Ltd.*, 2015 WL 4937461, at *7 (E.D. Va. Aug. 18, 2015) ("The Court will not, at this early pleading stage, find that the anti-retaliation provision of the FCA cannot cover [the plaintiff]'s claims . . . ."); *id*. at *7 n.18.

## CONCLUSION

The Court should deny Defendant's efforts to categorize the Complaint as a "shotgun pleading," assert its own version of disputed facts, and impose pleading and legal standards that are higher than what the law dictates.  The Court should deny the Motion.

This 22nd day of February, 2022.

**STACEY EVANS LAW**

/s/ Stacey Godfrey Evans
Stacey Godfrey Evans
Georgia Bar No. 298555
John Amble Johnson
Georgia Bar No. 229112
STACEY EVANS LAW
4200 Northside Parkway NW
Building One, Suite 200
Atlanta, Georgia 30327
Telephone: 770-779-9602
Facsimile:  404-393-2828
sevans@staceyevanslaw.com
ajohnson@staceyevanslaw.com

**THE CLAIBORNE FIRM P.C.**

/s/ William R. Claiborne
William R. Claiborne
Georgia Bar No. 126363
will@claibornefirm.com
410 E. Bay Street
Savannah, GA 31401
Telephone:  (912) 236-9559
Facsimile:  (912) 236-1884

**WOOLF LAW**

/s/ S. Wesley Woolf
S. Wesley Woolf
woolf@woolflawfirm.com
Georgia Bar No. 776175
408 East Bay Street
Savannah, GA 31401
Telephone:  (912) 201-3696
Facsimile:  (912) 236-1884

*Counsel for Relator*

## <u>LOCAL RULE 7.1(D) CERTIFICATE</u>

The undersigned counsel certifies that this Brief has been prepared with one

of the font and point selections approved by the Court in Local Rule 5.1.

This 22nd day of February, 2022.


<u>/s/ Stacey Godfrey Evans</u>
Stacey Godfrey Evans
Georgia Bar No. 298555

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **RELATOR'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS RELATOR'S FIRST AMENDED COMPLAINT** with the Clerk of Court using the EM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record.

This 22nd day of February, 2022.

/s/ Stacey Godfrey Evans
Stacey Godfrey Evans
Georgia Bar No. 298555