**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF GEORGIA, *ex rel.* BETTY RINER, | |
| *Plaintiff-Relator*, | Civil Action File No.: |
| v. | 1:19-cv-04316-MLB |
| COMMUNITY PRIMARY CARE OF GEORGIA, LLC (a/k/a Ga MedGroup), | |
| *Defendant*. | |

**Defendant Community Primary Care of Georgia, LLC's Reply Brief in Support of Its Request for Judicial Notice in Support of Defendant Community Primary Care of Georgia, LLC'S Motion To Dismiss**

Defendant Community Primary Care of Georgia, LLC ("CPC") hereby files this Reply Brief in Support of its Request for Judicial Notice in Support of Defendant Community Primary Care of Georgia, LLC's Motion to Dismiss.

**ARGUMENT AND CITATION TO AUTHORITY**

In aid of her attempt to shield her First Amended Complaint ("FAC") from scrutiny, Relator objects to all of the documents for which CPC has requested judicial notice. Those publicly accessible documents available on federal government websites, however, fall into a category commonly subject to judicial notice pursuant to the Federal Rules of Evidence and Eleventh Circuit precedent,

and may be considered by this Court in adjudicating CPC's Motion to Dismiss Relator's FAC.

Out of the gate, Relator espouses an incorrect proposition: that "[t]he only facts that a court may consider in deciding a motion to dismiss are the facts alleged in the operative complaint, here [Relator's FAC]." (Relator's Resp. p. 1.) Not so. "[I]n ruling on a motion to dismiss courts may supplement the allegations in a complaint with facts contained in judicially noticed materials." *K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041, 1048 (11th Cir. 2019), citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L.Ed.2d 179 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." (emphasis in original)). Further, contrary to Relator's assertion, this Court need "not accept as true allegations that are contradicted by facts that can be judicially noticed[.]" (Relator's Resp. p. 1); *Self v. BellSouth Mobility, Inc.*, No. 2:98-CV-02581-JEO, 2006 WL 8437245, at *4 (N.D. Ala. Sept. 29, 2006) (citation omitted).

Relator seizes on language from a recent decision from the Northern District of Georgia to suggest that courts cannot take judicial notice of documents that are

not referred to in the Complaint. (Relator's Resp. pp. 3-4 (citing *Ohome v. U.S.* 2021 WL 5771147, at *2).) But the portion of *Ohome* upon which Relator relies did not involve judicially-noticeable documents. In fact, elsewhere in *Ohome*, the court considered information outside of the complaint on the motion to dismiss because "[t]his information is publicly available on a government website and therefore the Court takes judicial notice of it." *Id.,* 2021 WL 5771147, at *7, n.4. In ruling on a motion to dismiss, the Eleventh Circuit has been willing to consider a document if it is "(1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC,* 600 F.3d 1334, 1337 (11th Cir. 2010) (citing *Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005).

The Eleventh Circuit has also approved district courts taking judicial notice of an adjudicative fact[1] that is not subject to reasonable dispute and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *Grayson v. Warden, Comm'r, Alabama Doc,* 869 F.3d 1204, 1225 (11th Cir. 2017) (citing Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it [ . . . ] can be accurately

---

[1] "An "adjudicative fact" is, generally speaking, a fact in issue or facts from which such fact may be inferred." *Grayson v. Warden, Comm'r, Alabama Doc,* 869 F.3d 1204, 1225 n.48 (11th Cir. 2017).

and readily determined from sources whose accuracy cannot reasonably be questioned.")).

Thus, contrary to Relator's position, Eleventh Circuit precedent does not require a complaint to refer to a document before a court may take judicial notice of it. (Relator's Resp. p. 8); *SFM Holdings, Ltd.*, 600 F.3d at 1337; *Grayson*, 869 F.3d at 1225. Accordingly, Relator may not shield her legally deficient claims from proper scrutiny through her strategic omission of dispositive public documents from her FAC.

Next, Relator argues that none of the documents offered by CPC are central to her FAC. (Relator's Resp. pp. 9-10.) Notably, courts have found that documents are central to a plaintiff's claim where the documents go to the viability of the claim, or where it would be impossible for the district court to properly evaluate a crucial issue in the case without considering the documents. *See Bamert v. Pulte Home Corp.*, 445 F. App'x 256, 267 (11th Cir. 2011) (considering purchase agreements attached to the motion to dismiss because without them it would be impossible for the court to resolve a crucial issue in the case); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n. 3 (11th Cir. 2005) (approving the district court's consideration of a contract because it determined the viability of the plaintiff's claim); *In re Sugar Corp. Litigation*, 669 F.Supp.2d 1301, 1310 (S.D.Fla. 2009)

(considering documents that were necessary to determine whether a plaintiff exhausted administrative remedies).

Relator's theory of CPC's liability centers around its ostensible ownership and control over the nursing homes at issue. The nursing home ownership and management disclosure documents[2] address Relator's allegations of CPC's ownership that are affirmatively pled as a central part of the FAC. Similarly, the CMS documents[3] are central to Relator's allegations of billing and physician oversight violations because they reflect the published guidance of CMS—upon which providers are entitled to rely—relating to the very obligations that Relator claims CPC violated. Therefore, both sets of documents may be considered. *Maxcess, Inc.*, 433 F.3d at 1340 n.3 ("[A] document outside of the four corners of the complaint may still be considered [on a motion to dismiss] if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") These documents objectively establish relationships and define rights and responsibilities, unlike "witness affidavits" which necessarily rely on individual perceptions. (*See*

---

[2] These documents are contained at Exhibits A through G of the Request for Judicial Notice.

[3] These documents are contained at Exhibits H and I of the Request for Judicial Notice.

Relator's Resp. pp. 9-10.) Therefore, Relator's reliance on *Glass v. City of Glencoe*, 2017 WL 1407477, at *3 (N.D. Ala. Apr. 20, 2017) to attempt to exclude these documents is misplaced. (Relator's Resp. p. 10.)

Relator next argues that this Court should not consider CPC's proffered documents because their contents are not undisputed. In the context of determining whether a court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment, "'undisputed' means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). At no point has Relator disputed the authenticity of CPC's submitted documents. Instead, Relator contends that this Court should not notice the documents because she disagrees with the facts that the public records clearly show. But Relator's disagreement as to the legal effect or meaning of these documents is not a basis to preclude judicial notice of the documents themselves. Rather, it is the role of this Court to determine the meaning to be drawn from the material subject to judicial notice. *See Campos v. I.N.S.*, 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998) (court need not accept factual claims "which run counter to facts of which the court can take judicial notice")

This is especially so because of the confusion that Relator has displayed regarding the relationships between the entities she names in her FAC. Relator

states that her allegations regarding "Defendant and its agents and doctors' ownership, control, and operation of multiple health care entities and facilities" are based on her personal observations over more than five years. (Relator's Response p. 10.) But, as discussed in CPC's motion to dismiss, her allegations in this regard shift wildly between her original Complaint and her FAC. The evolution of Relator's allegations of ownership and control underscores the considerable uncertainty and guesswork underlying those allegations. Given her inconsistency, it is even more stark that she has never "explain[ed] why the publicly available records of a [government] agency should not be taken as true or why the Court should question the authenticity of these documents." *Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-61019-CIV, 2018 WL 8899230, at *5 (S.D. Fla. Oct. 17, 2018), report and recommendation adopted, No. 17-61019-CIV, 2018 WL 8899004 (S.D. Fla. Nov. 15, 2018).

Relator further muddles her allegations with her attempted analysis of information at "chs-ga.org," which she identifies without explanation as"[CPC's]

own website."[4] (Relator's Resp. p. 11.) First off, this website is not referenced in

Relator's FAC and is not a judicially-noticeable source that can be considered. That

aside, Relator makes the unfounded leap that the "Services" page, which includes

"Skilled Nursing," in some way "pronounces that it controls facilities." But there

is no such "pronouncement" anywhere on that web page or any of the others

Relator discusses. At most, these web pages show affiliation.[5] Affiliation does not

establish ownership or operational control, much less contradict judicially-

noticeable facts that demonstrate ownership or operational control.

---

[4] As discussed in Defendant's Reply Brief in Support of Motion to Dismiss Relator's FAC ("Reply"), Relator conflates the Defendant—Community Primary Care of Georgia, LLC ("CPC")—with Community Health Services of Georgia, LLC ("CHS-GA"), so much so that her captions now identify CHS-GA as the Defendant even though CPC is the only remaining Defendant in this case. (Reply p. 5 n.1.) It is unclear why Relator identifies a website with the domain "chs-ga.org" as *CPC's* website.

[5] Curiously, Relator ignores that the "Services" page at www.chs-ga.org/ also includes a "Medical Services" link, which launches the webpage for Ga MedGroup (http://www.ga-medgroup.org/). By Relator's logic, this "pronounces" that CHS-Ga controls GaMedGroup (the name by which CPC is also allegedly known). (Relator's Resp. p. 11; FAC ¶ 6.) But this would conflict with her allegation that CPC "was formerly known as" CHS-Ga. (FAC ¶ 7.) Further, no nursing facilities are linked from the GaMedGroup page, which, again by Relator's logic, must mean that GaMedGroup/CPC does not control the nursing homes at issue. This exercise illustrates that Relator's allegations regarding ownership and control are internally inconsistent and no more than her speculative guesswork.

Relator makes the same mistake as she reviews CPC's proffered documents. She notes certain commonalities in principal office addresses, officers, and registered agents. But again, these demonstrate affiliation, not control. And, more to the point, nothing in Relator's analysis demonstrates *CPC's* ownership or control of any entity. For example, Relator notes that Clinical Services, Inc. has "operational/managerial" control over the nursing homes at issue, and asserts that "Clinical Services, Inc. is "doing business as" Ethica." (Relator's Resp. pp. 12-13.) But she does not assert that CPC owns or controls Clinical Services, Inc. Remarkably, Relator does not mention CPC anywhere in her Response to CPC's Request for Judicial Notice.[6] And she never alleges any grounds that would allow her to pierce the corporate veil to disregard the legally separate identities of any entity to make CPC liable for their alleged actions.

Next, Relator argues against judicial notice of the CMS documents because she disputes their contents as well. (Relator's Resp. pp. 14-15.) In other words, Relator seeks to have this Court disregard CMS's published guidance interpreting the regulations that it has been charged with promulgating and implementing

---

[6] Relator goes so far in her obfuscation of the allegedly culpable party that she impermissibly switches the named Defendant in the case caption to "Community Health Services of Georgia, LLC."

because she disagrees with their interpretation. But the relevant standard for judicial noticeability is that, as here, the authenticity of the document is not challenged, not that the contents are undisputed. *Day*, 400 F.3d at 1276. Even so, as explained more fully in CPC's briefing on the motion to dismiss, Relator's dispute with the contents of these documents is meritless. And her contention that she "is not required, for purposes of her Complaint, to anticipate Defendant's argument that an exception should apply and then plead reasons that the exception should not apply" is unavailing. (*Id*. pp. 15-16.) Relator's claim is premised on alleged violations of regulatory requirements. She cannot state a claim for relief if the alleged conduct comports with CMS's published instructions and guidance regarding the regulation she cites. Relator's argument on this point is akin to saying that a defendant in a breach of contract action cannot point to a specific contract provision defeating plaintiff's claims because the plaintiff was not required to anticipate that the defendant would point to it.

Moving on, citing *Grayson v. Warden*, 869 F.3d 1204, 1224-25 (11th Cir. 2017), Relator argues that, even where the source's accuracy cannot reasonably be questioned, the proffered fact itself must be "not subject to reasonable dispute" to be noticeable. (Relator's Resp. p. 16.) An "ascertainable fact" can be "reasonably" disputed by offering a reputable source that disputes the fact from the proponent's

source. § 5104 Facts Judicially Noticeable; Indisputability, 21B Fed. Prac. & Proc. Evid. § 5104 (2d ed.). Relator has yet to offer anything of the kind.

Finally, Relator objects to CPC providing the submitted documents to the Court to demonstrate the truth of the matters the documents assert. (Relator's Resp. pp. 17-19.) But courts routinely notice the contents of public records. *See, e.g. Hicks v. City of Alabaster, Ala.*, No. 2:11-cv-4107, 2013 WL 988874, at *7 n.5 (N.D. Ala. Mar. 12, 2013) (Proctor, J.) (taking judicial notice "of the contents of relevant public records"); *Nat'l Lab. Rels. Bd. v. Tropical Wellness Ctr.*, LLC, No. 18-14099-CIV, 2019 WL 2254921, at *1 (S.D. Fla. Mar. 11, 2019), report and recommendation adopted, No. 2:18-CV-14099, 2019 WL 2255566 (S.D. Fla. Mar. 29, 2019) (noticing Florida Division of Corporations records for information on Defendant LLC's corporate status); *Roberto v. Shendell & Assocs., P.A.*, No. 9:17-CV-81213, 2018 WL 1367445, at *1 (S.D. Fla. Mar. 16, 2018) (taking judicial notice of public records "primarily to demonstrate that the allegations in Plaintiffs' Complaint are objectively false"); *Fauley v. Washington Mut. Bank FA*, No. 3:13-CV-00581-AC, 2014 WL 1217852, at *4 (D. Or. Mar. 21, 2014) (noticing parent-subsidiary relationship as represented in a corporate disclosure form); *Brooks v. CSX Transp., Inc.*, No. 3:09-CV-379-J-32HTS, 2009 WL 3208708, at *5 n.6 (M.D. Fla. Sept. 29, 2009)

("Alternatively, when considering a motion to dismiss, the Court may take judicial notice of the contents of relevant public records.").

Indeed, Courts routinely take notice of documents retrieved from CMS.gov and Medicare.gov. *See, e.g. U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381-82 (C.D. Cal. 2014) (taking judicial notice of multiple manuals and forms on the CMS website), *aff'd sub nom., United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017); *Wells Fargo Bank N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D. N.Y. 2015) (stating it was "clearly proper to take judicial notice" of documents from Medicare.gov, which included ownership information for a nursing and rehabilitation center).

Nursing home ownership information from Medicare.gov was also judicially noticed in *Frank "Doe" v. WM Operating, LLC*, No. CV 17-2204, 2017 WL 3390195 (E.D. Pa. Aug. 7, 2017). There, the district court examined a case of alleged sexual discrimination by several defendants, including the owners of Meadowview Rehabilitation and Nursing Center, a nursing home in Pennsylvania. *Id*. at *1. Several defendants argued in a motion to dismiss that they sold the nursing home at issue prior to the date when the alleged sexual discrimination began. *Id*. at *7. These defendants cited the Medicare.gov website and a leasing agreement as support for their argument and asked the district court

to take judicial notice of these documents as public records. *Id*. Relying on *Wells Fargo*, *supra*, the district court took judicial notice "of the fact that WM Holdings, LLC has owned one hundred percent of Meadowview Rehabilitation and Nursing Center since February 1, 2016, as stated in the Medicare.gov record attached to defendants' motion to dismiss." *Id*. at *7, n.6.

**Conclusion**

Relator's allegations regarding the ownership of the nursing facilities referenced in her FAC and the regulations that she claims these facilities violated are flatly contradicted by publicly available information maintained by the agency charged with regulating these facilities. Despite this, Relator asserts that this Court must accept all of her allegations as true, ignoring this publicly-available contradictory information because she didn't cite it in her FAC and she disagrees with it. However, the standard for judicial notice does not depend on a plaintiff's forthrightness in referencing the judicially-noticeable materials in her complaint, nor does it depend on the plaintiff's agreement with the facts in those materials. This Court is not constrained to accept conclusory allegations that clash with records publicly available on government websites.

For the foregoing reasons, the Court should grant Request for Judicial Notice in Support of Defendant Community Primary Care of Georgia, LLC's Motion to Dismiss.

Respectfully submitted this 5th day of April, 2022.

ARNALL GOLDEN GREGORY LLP

*/s/ Glenn P. Hendrix*
Glenn P. Hendrix, Esq.
Georgia Bar No. 346590
W. Jerad Rissler
Georgia Bar No. 142024
171 17th Street, Suite 2100
Atlanta, Georgia 30363-1031
404.873.8500
glenn.hendrix@agg.com

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that this pleading was prepared using Book Antiqua 13-point font in accordance with Local Rule 5.1(C).

This 5th day of April, 2022.

*/s/ Glenn P. Hendrix*
Glenn P. Hendrix
Georgia Bar No. 346590

## CERTIFICATE OF SERVICE

I hereby certify that on April 5th, 2022, I electronically filed the foregoing **Defendant Community Primary Care of Georgia, LLC's Reply Brief in Support of Its Request for Judicial Notice in Support of Defendant Community Primary Care of Georgia, LLC'S Motion To Dismiss** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all Counsel of Record.

/s/ Glenn P. Hendrix
Glenn P. Hendrix
Georgia Bar No. 346590

ARNALL GOLDEN GREGORY LLP
171 17th Street NW
Suite 2100
Atlanta, Georgia 30363-1031
Telephone: 404.873.8500
Facsimile: 404.873.8501