IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF GEORGIA, *ex rel.* BETTY RINER,<br><br>*Plaintiff-Relator*,<br><br>v.<br><br>COMMUNITY PRIMARY CARE OF GEORGIA, LLC (a/k/a Ga MedGroup),<br><br>*Defendant*. | Civil Action File No.:<br><br>1:19-cv-04316-MLB |

**Defendant Community Primary Care of Georgia, LLC's Reply Brief in Support of Motion to Dismiss Relator's First Amended Complaint**

Defendant Community Primary Care of Georgia, LLC ("CPC") hereby files this Reply Brief in Support of its Motion to Dismiss Relator's First Amended Complaint ("FAC").

## ARGUMENT AND CITATION TO AUTHORITY

### I.  Plaintiff's Complaint is a Shotgun Pleading

Relator incorporates all 168 paragraphs of factual allegations into every count of her FAC, leaving CPC and the Court the task of discerning which allegations support which claims. Relator asserts that this type of pleading is permissible under *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) because the FAC incorporates only all prior factual allegations into each count but does not incorporate any prior count of the FAC into

1

any succeeding count. (*See* Relator's Resp. [Doc. 54] at 4.) But the Eleventh Circuit has not so limited its definition of "shotgun pleadings."

The Eleventh Circuit has affirmed that pleadings like Relator's that incorporate all factual allegations into all counts are shotgun pleadings. *See Clifford v. Federman*, 855 F. App'x 525, 529 (11th Cir. 2021) (describing complaint that incorporated almost the entirety of facts section into almost every count as "equally as cumbersome as simply incorporating every prior allegation into each successive count, if not more so" and affirming that it was a shotgun pleading); *Snow v. Etowah Cty. Sheriff's Dep't*, No. 4:20-CV-00344-ACA, 2020 WL 6899168, at *3-4 (N.D. Ala. Nov. 24, 2020) (dismissing complaint that incorporated each fact pled in the complaint into several counts); *Jackson v. Ocwen Loan Servicing*, LLC, No. 3:16-CV-10-J-39PDB, 2017 WL 238174, at *5 (M.D. Fla. Jan. 19, 2017) (same).

Further, indiscriminately coopting the same 168 factual allegations into each count of her FAC, often without any discernable nexus between those allegations and the claim elements, necessarily means that the FAC counts contain irrelevant factual allegations. This foists on both the Court and CPC "the 'onerous task' of sifting out irrelevances to identify which facts specifically support the necessary elements of each claim." *NCR Corp.*

*v. Pendum, LLC*, No. 1:16-cv-4114-SCJ, 2017 WL 8185864, at *1 (N.D. Ga. Nov. 16, 2017). That CPC was able to formulate a motion to dismiss after attempting such sifting does not protect Relator's FAC from dismissal. Left unaddressed, the unfocused nature of the pleading will make it difficult to adequately control the scope of discovery—one of the evils of shotgun pleading the Eleventh Circuit has long warned against. *Weiland v. Palm Beach County Sherriff's Office*, 792 F.3d 1313, 1321, n.9 (11th Cir. 2015) (citing *Anderson v. District Bd. of Trustees of Cent. Community College*, 77 F.3d 364, 367 (11th Cir. 1996)).

Finally, the shotgun nature of Relator's FAC is a thinly-veiled attempt to disguise her inability to specify which of the original Complaint defendants were responsible for which acts. Relator does not deny that her complaints plead contradictory facts; instead, she contends that she is permitted to do so. (Relator's Resp. at 7-9.) The rule she cites in her defense—that an amended pleading supersedes a former pleading—is a "general" one that does not bar consideration of factual contradictions or inconsistencies between the two. (*Id.* at 8); *Pintando v. Miami–Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007); *see also Devengoechea v. Bolivarian*

*Republic of Venezuela*, 889 F.3d 1213, 1229 (11th Cir. 2018) (analyzing original and amended complaints for inconsistencies).

And her attempt to reconcile her original Complaint to her FAC rings hollow. (Relator's Resp. at 8.) In her original Complaint, Relator alleges that Community Health Services of Georgia, LLC ("CHS-Ga") does business as Ga MedGroup, which was previously known as CPC. (Compl. ¶¶6, 9.) In her FAC, she alleges that CPC does business as Ga MedGroup, and was formerly known as CHS-Ga. (FAC¶¶6-7.) These ownership allegations are mirror images of each other. Where Relator originally sought to cast *CHS-Ga* as responsible for the actions of other distinct legal entities (including CPC), her FAC now seeks to cast *CPC* in this role. The only consistency in this regard is that both the original Complaint and the FAC seek to disregard the corporate form without alleging the requisite factual basis. Relator's assertion that she is "streamlining" down to "one controlling culprit" is no substitute for the specific, detailed factual allegations required to pierce the

corporate veil. (Relator's Resp. at 8-9.)[1]; *U.S. ex rel. Heller v. Guardian Pharmacy*, LLC, 521 F. Supp. 3d 1254, 1280 (N.D. Ga. 2021) (stating that burden to establish this liability theory is "quite high" and listing specific facts plaintiff must demonstrate). Her transparent attempt to plead "alternative facts" must be rejected by this Court.

**II.     The FAC Fails to State a Claim for Which Relief May Be Granted**

   A.     <u>CPC Does Not Own or Operate the Facilities at Issue</u>.

A district court "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). "Undisputed" in this sense means that its authenticity is not challenged. *Id*. Central to Relator's claims is that CPC owns, operates, and controls multiple entities at which she alleges fraudulent activity has

---

[1] Relator sows further confusion by inexplicably changing the name of the Defendant from CPC in her FAC to CHS-Ga in the captions of her responses to CPC's pending motions. Relator may not change the name of the Defendant in this action simply by changing the captions in her briefing; she must move this Court to correct a misnomer. However, as Relator asserts that "Defendant *is* CPC-Ga or its predecessor CHS-Ga" (Relator's Resp. at 8), changing captions as she has does not correct a misnomer—it creates one.

occurred—entities that she previously alleged were owned, operated, and controlled by CHS-Ga.

Publicly accessible CMS records of which the Court may take notice show that (consistent with Realtor's *original* Complaint) CPC does not own, operate, or control the nursing homes at issue. (Doc. 50, Exs. A through G.) Relator does not challenge the authenticity of these documents. Instead, she draws speculative and unfounded conclusions from the mere fact that the nursing homes named in Relator's FAC share operating entities or other connections with each other. (Relator's Resp. at 10-11.) But such connections show, at most, affiliation; they do not suggest beyond speculation that *CPC* owns or controls any nursing homes. Relator cannot avoid the facts reported in CMS's public records through her own conclusory and speculative assertions of contrary facts. *See Gersten v. Rundle*, 833 F. Supp. 906, 910 (S.D. Fla. 1993) (J. King), aff'd, 56 F.3d 1389 (11th Cir. 1995) (concluding that on a motion to dismiss, a complaint's facts are not entitled to the presumption of truth "when the facts alleged are internally inconsistent or when they run counter to facts of which the Court can take judicial notice").

B. <u>Relator Has Not Stated an FCA Claim</u>.

Relator has not plausibly alleged the actual submission of even a single false or fraudulent claim to the Government, the "*sine qua non* of a False Claims Act

6

violation." *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002). Though the FAC includes one "representative" claim (FAC ¶ 120), careful reading shows that the FAC fails to tie it to the alleged fraudulent conduct.

Relator alleges that CPC fails to conduct physician examinations with the timeliness required under 42 C.F.R. § 483.30, causing other staff members to conduct a battery of services on patients without regard to medical necessity and without physician-oversight. (FAC ¶¶ 92, 99.) But, as explained in CPC's motion to dismiss, the "representative" sample she provides does not demonstrate this alleged fraud because 42 C.F.R. § 483.30 permits the Medicaid patient referenced therein to be seen by a nurse practitioner, clinical nurse specialist, or physician assistant. (CPC's Mot. at 13-14.) Therefore, this purported example does not provide the indicia of reliability needed to satisfy Rule 9(b)'s pleading requirement. *Carrel v. Aids HealthCare Found.*, 898 F.3d 1267, 1277 (representative claims only satisfy Rule 9(b) if the representative claim involved fraud).

Instead of facing this argument head-on, Relator contends that she is not required to "plead the absence of an exception," relying on authority that obviates the need for plaintiffs to negate an *affirmative defense* in their complaint. (Relator's Resp. at 15-16.) Relator's authority is inapposite because CPC's argument on this point—that she fails to state a claim because she misapprehends the law and has

7

not presented a representative example of fraudulent billing—is not an affirmative defense, it is a failure of plausibly pleading a regulatory violation. *U.S. v. Halifax Hosp. Med. Ctr.*, No. 6:09-CV-1002-ORL-31, 2013 WL 6017329, at *12 (M.D. Fla. Nov. 13, 2013).

Without her sole discredited example, Relator's FAC identifies no actual false claims for payment from the government in connection with any alleged regulatory violations. Relator has claimed firsthand knowledge of CPC's allegedly medically unnecessary or inaccurately documented treatment of patients, but has not provided "the next link in the FCA liability chain: showing that the defendants actually submitted reimbursement claims for the services [s]he describes." *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006). For example, Relator argues that she has alleged specific instances in which CPC's physicians have billed Medicare for examinations that never took place. (Relator's Resp. at 14; FAC ¶¶ 132-35.) But her support for the assertion that Medicare was actually billed for these specific visits includes neither specific examples of false claims nor her direct knowledge of any entity's billing practices, or even which entity would have billed for the alleged services. Her assertions are instead based on her generic allegations of familiarity with corporate practice of submitting false or fraudulent claims, or the architecture of the Medicare or Medicaid reimbursement systems generally.

(FAC ¶¶ 20-22, 39-60.) The Eleventh Circuit requires a relator to show that she "personally was in a position to know that actual false claims were submitted to the government and had a factual basis for [her] alleged personal knowledge." *U.S. ex rel. Mastej v. Health Mgmt. Assocs.*, Inc., 591 F. App'x 693, 707 (11th Cir. 2014). Relator fails to provide any such particularized allegations.

Relator simply has not alleged personal experiences sufficient to demonstrate knowledge that CPC (or any other entity) submitted any claims in connection with any of the activities that purportedly would have rendered any claims false. Relator likens herself to the nurse practitioner with sufficient personal experience in *U.S. v. R&F Props. of Lake Cnty., Inc.*, 433 F.3d 1349, 1360 (11th Cir. 2005). (Relator's Resp. at 16.) But Relator's averments of familiarity with CPC's fraudulent behavior through her direct observation of "claims, staffing, and other operations" and "conversations with colleagues and superiors" about CPC's operations does not meet the high standard met by the *R&F Props.* nurse practitioner, whose belief that her employer was submitting false claims arose from personally being directed to improperly bill under physicians' billing numbers and at least one discussion with a specifically named office administrator regarding the impropriety of billing under the physicians' billing numbers, together with the fact that the defendant billed "all" nurse practitioner services under the physicians'

9

billing numbers and "never" billed them another way. *Id.*; (Relator's Resp. at 16; FAC ¶¶ 20-22.) Moreover, discussing the limits of *R&F Props.*, the Eleventh Circuit has stated: "Nonetheless, we have made clear that even if a relator 'assert[s] ... direct knowledge of [a] defendant['s] billing and patient records,' she still must allege 'specific details' about false claims to establish 'the indicia of reliability necessary under Rule 9(b).'" *Carrel v. Aids Healthcare Found., Inc.*, 898 F.3d 1267, 1276 (11th Cir. 2018) (citing *U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1302 (11th Cir. 2010)). Accordingly, Relator's FAC lacks the indicia of reliability required by Rule 9(b) and is due to be dismissed.

### 2. Relator Does Not Plausibly Plead Falsity or Materiality.

For a false claim to be actionable, the alleged falsity must be material. Relator's allegation that CPC is understaffing nurses and physicians in nursing facilities fails to allege a material falsity, and thus does not adequately allege a False Claims Act violation. To find a violation, Courts must consider whether noncompliance is "minor or insubstantial" and amounts to "garden-variety breaches of contract or regulatory violations," or, conversely, whether the Government would have attached importance to the violation in determining whether to pay the claim. *Marsteller for use & benefit of U.S. v. Tilton*, 880 F.3d 1302, 1313 (11th Cir. 2018). Even if CPC were responsible for the physician and nurse

staffing at nursing homes, Relator has not shown how such a regulatory violation would influence the payment of a claim by the government.

In response, Relator seems to concede that mere non-compliance with regulatory staffing requirements would not, by itself, be material to payment. Instead, she asserts that non-compliance with a *different* requirement—that services are "reasonable and necessary"—would be material to payment. (Relator's Resp. at 18-19.) Relator argues that "[t]he fact that services were not provided at all, not provided as claimed, or not medically necessary is material to the Government's decision to pay them." (*Id.* at 19.) Yet Relator has not alleged facts supporting such claims. Instead, she has alleged regulatory violations (*i.e.*, understaffing nursing facilities) that are not material to any claims for payment.

### 3. Relator Does Not Adequately Plead Claims For Retaliation.

Relator contends that statutory language of the FCA's anti-retaliation provision, as currently written, does not limit itself to "current employee." (Relator's Resp. at. 23.) But a bipartisan group of Senators disagrees—hence their current efforts to amend the statute to "*extend*[] relief from retaliatory actions to

former employees."[2]  Had the majority of courts not determined that post-employment retaliation is not actionable under the FCA, there would be no push in Congress now to amend the FCA's retaliation protections to extend to former employees.

The case Relator would have this Court follow, *U.S. ex rel. Felten v. William Beaumont Hosp.*, 993 F.3d 428, 435 (6th Cir. 2021), departs from that weight of authority. *Felten* relied heavily on *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997), a case interpreting Title VII's anti-retaliatory provision. 993 F.3d at 431-36. But, as the *Felton* dissent vehemently argued, had the majority kept to the plain text of the FCA and Sixth Circuit precedent, it would have determined that "the FCA unambiguously reserves retaliation claims for only those plaintiffs who were employees when they were retaliated against." *Id*. at 436 (Griffin, J., dissenting).

Relator seeks to dismiss the weight of the authority by claiming that "some of those cases [finding no FCA cause of action for post-employment retaliation] emphasize the type of discrimination." (Relator's Resp. at. 24.) Yet nothing the district court in *U.S. ex rel. Head v. Kane Co.* stated in dicta about the nature of the

---

[2] Summary of S. 2428, 117th Congress, Title 31, § 4 (2021), available at https://www.congress.gov/bill/117th-congress/senate-bill/2428/text?r =52&s=l (last visited Mar. 28, 2022) (emphasis added).

12

defendant's alleged discriminatory acts detracts from its textual analysis of the FCA's plain language, which led to its holding that "Section 3730(h) applies only to the employment context and, therefore, cannot extend to claims for retaliatory action occurring solely after a plaintiff has been terminated from his job." *U.S. ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 208 (D.D.C. 2011); accord *Potts v. Ctr. for Excellence in Higher Educ.*, 908 F.3d 610, 614 (10th Cir. 2018) (reaching the conclusion that "employees" includes only persons who were current employees when their employers retaliated against them" by "examining the wording of § 3730(h)(1)").

Nor can Relator find relief through her conclusory assertion that she is a "contractor." Relator has never alleged that she was a party to a contract with CPC at the time of the alleged retaliation. Relator cites *Ickes v. Nexcare Health Sys.*, LLC, 178 F. Supp. 3d 578, 591-93 (E.D. Mich. 2016), to support the proposition that an individual can be a contractor to an entity to which the individual's employer contracts services. But the *Ickes* court so found in a context where the plaintiff's defunct employer and the contracting company were so tightly identified through common ownership, interrelated personnel reporting relationships, and close operating relationships that plaintiff had argued that they were a single entity, a condition that does not exist in this case. *Joanne M. Ickes, Plaintiff, v. Nexcare Health*

Case 1:19-cv-04316-MLB   Document 60   Filed 04/05/22   Page 14 of 17

*Systems, L.L.C., and South Lyon Senior Care & Rehab Center, LLC, jointly and severally, Defendants.*, 2015 WL 12532662 (E.D.Mich.).

Nor does *El-Khalil v. Oakwood Healthcare, Inc.*, No. 19-12822, 2020 WL 1915358 (E.D. Mich. Apr. 20, 2020) help plaintiff, as that non-employee relator was deemed an independent contractor based on Michigan law defining physicians with staff privileges at hospitals as such. 2020 WL 1915358 at *2. In sum, neither *Ickes* nor *El-Khalil* support a holding that Relator is a "contractor" within the meaning of § 3730(h). *Cf. Taul ex rel. U.S. v. Nagel Enters.*, No. 2:14-CV-0061-VEH, 2017 WL 4956422, at *3 (N.D. Ala. Nov. 1, 2017) (finding relator's argument that he was a contractor failed where relator worked for an entity in a contractual relationship with defendant); *U.S. ex rel. Lord v. NAPA Mgmt. Servs. Corp.*, 2017 WL 2653164, at *11 (M.D. Pa. June 20, 2017) (finding anesthesiologist formerly employed by perioperative management company could not maintain an FCA retaliation claim against hospital where employer staffed him because hospital "was not relator's employer" and lacked "contractor or agency relationship with relator.").

**III.	Conclusion**

For the foregoing reasons, the Court should grant CPC's motion and dismiss Relator's Complaint in its entirety. Nothing in Relator's response to CPC's motion requires a different outcome.

Respectfully submitted this 5th day of April, 2022.

                                        ARNALL GOLDEN GREGORY LLP

                                      */s/ Glenn P. Hendrix*
                                      Glenn P. Hendrix, Esq.
                                      Georgia Bar No. 346590
                                      W. Jerad Rissler
                                      Georgia Bar No. 142024
                                      171 17th Street, Suite 2100
                                      Atlanta, Georgia 30363-1031
                                      404.873.8500
                                      glenn.hendrix@agg.com

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that this pleading was prepared using Book Antiqua 13-point font in accordance with Local Rule 5.1(C).

This 5th day of April, 2022.

>*/s/ Glenn P. Hendrix*
>Glenn P. Hendrix
>Georgia Bar No. 346590

## CERTIFICATE OF SERVICE

I hereby certify that on April 5th 2022, I electronically filed the foregoing **Defendant Community Primary Care of Georgia, LLC's Reply Brief in Support of Motion to Dismiss Relator's First Amended Complaint** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all Counsel of Record.

*/s/ Glenn P. Hendrix*
Glenn P. Hendrix
Georgia Bar No. 346590

ARNALL GOLDEN GREGORY LLP
171 17th Street NW
Suite 2100
Atlanta, Georgia 30363-1031
Telephone: 404.873.8500
Facsimile: 404.873.8501