**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF GEORGIA, *ex rel.* BETTY RINER, *Plaintiff-Relator*, v. COMMUNITY PRIMARY CARE OF GEORGIA, LLC (a/k/a Ga MedGroup), *Defendant*. | Civil Action File No.: 1:19-cv-04316-MLB |

**Defendant Community Primary Care of Georgia, LLC's Reply to Relator's Response in Opposition to Defendant's Motion to Strike**

Defendant Community Primary Care of Georgia, LLC ("CPC") hereby files this Reply to Relator's Response in Opposition to Defendant's Motion to Strike certain allegations in Relator's First Amended Complaint ("FAC").

**ARGUMENT AND CITATION TO AUTHORITY**

**I. Defendant has met the standard required to strike allegations in Relator's FAC.**

It is well-settled that a court may, *sua sponte* or on motion from a party, strike any redundant, immaterial, impertinent, or scandalous matter from a pleading. *Whipple v. Johnson*, No. 20-10421-J, 2020 WL 8615598, at *1 (11th Cir. Aug. 27, 2020), cert. denied, 141 S. Ct. 1410, 209 L. Ed. 2d 141 (2021); Fed. R. Civ. P. 12(f). Though motions to strike have been described as "disfavored" or "drastic," they are

1

granted when appropriate, as where (as Relator concedes) the challenged allegations have no possible relation to the controversy. (Relator's Resp. p. 3). Courts view motions to strike with disfavor when they are sought by the movant as a dilatory tactic. *See, e.g. Farnham v. Riimic, LLC*, No. 12-60153-CIV, 2012 WL 3962897, at *1 (S.D. Fla. Sept. 11, 2012); § 1380 Motion to Strike—In General, 5C Fed. Prac. & Proc. Civ. § 1380 (3d ed.). But "where, as here, motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay." *Heller Financial, Inc. v. Mid-Whey Powder Co., Inc*, 883 F.2d 1286, 1294 (7th Cir. 1989). Moreover, the disfavored character of Rule 12(f) is relaxed somewhat in the context of scandalous allegations, and matter of this type often will be stricken from the pleadings in order to purge the court's files and protect the subject of the allegations. *Swift Beef Co. v. Alex Lee, Inc.*, No. 5:17-CV-176, 2018 WL 792070, at *1 (W.D.N.C. Feb. 8, 2018); *Hope on Behalf of Clark v. Pearson*, 38 B.R. 423, 424 (Bankr. M.D. Ga. 1984).

    Here, CPC has demonstrated the redundant, immaterial, impertinent, or scandalous nature of each of the contested allegations, and described the prejudice arising therefrom. Further, Relator has never suggested that CPC interposed its Motion to Strike for purposes of delay. Therefore, this Court should grant CPC's Motion to Strike.

**II. The allegations at issue bear no possible relation to the present controversy.**

The allegations CPC requests stricken from the FAC simply have no bearing on Relator's False Claims Act ("FCA") or Georgia False Medicaid Claims Act ("GFMCA") claims. Relator argues that she needs Paragraphs 10 through 14 to demonstrate that CPC submits claims for medical services to the government and is paid for those claims. (Relator's Resp. p. 3.) First, the allegations contained in Paragraphs 10-14 are no substitute for the detailed allegations of specific false claims that are required by Rule 9(b). Moreover, allegations regarding claims submission and reimbursement are made elsewhere in Relator's FAC. (*See, e.g.*, FAC ¶¶ 9, 40, 46, 52, 118, 120.) The allegations in Paragraphs 10 through 14 add nothing to these allegations to satisfy the Relator's burden to plead actual false claims. Therefore, not only are Paragraphs 10 through 14 immaterial, impertinent, and irrelevant (as argued in CPC's Motion to Strike), they are also redundant, which is an additional reason to strike under Rule 12(f).

Further, Relator does not explain how allegations in these paragraphs—regarding a December 2014 draft investigative report on CHS-Ga's prior use of development authorities to obtain Medicaid upper payment level (UPL) payments with the full knowledge and cooperation of the Georgia Department of

Community Health—demonstrate knowledge of falsity of claims at issue in this action, which center on alleged patient misclassification, inaccurate visit documentation, and medically unnecessary treatment beginning in 2015. The conduct alleged in Paragraphs 10 through 14 is not "substantially similar" to the conduct on which Relator's FCA allegations are based and therefore must be struck. *Cf. TracFone Wireless, Inc. v. Zip Wireless Prod., Inc.*, 716 F. Supp. 2d 1275, 1290 (N.D. Ga. 2010) (declining to strike a complaint exhibit where the consent judgments therein involved substantially similar activity and parties). In fact, it is not similar at all.

Similarly, allegations in Paragraphs 73 through 89 do not relate to Relator's FCA and GFMCA claims. First, these allegations regarding nursing facilities' response to COVID-19 bear no relation to a scheme that Relator allegedly witnessed (and filed suit on) well before the pandemic began. Relator argues that these allegations relate to "Defendant's instruction to limit patient visits to 'medically necessary' visits, indicating that it has not so limited its medical services previously." (Relator's Resp. p. 5.) First, only one paragraph (FAC ¶ 85) in this paragraph block makes any reference to medical necessity, so Relator's purported justification for these allegations is inapplicable on its face to the rest of them. As to Paragraph 85, Relator's contention that, during a pandemic, instructing

4

personnel to limit "patient visits" to those that were "medically necessary" is far from an admission that it provided and billed for medically unnecessary services. Indeed, the allegations surrounding Paragraph 85 suggest that the referenced "patient visits" involved *family* visits, not physician visits. (FAC ¶¶ 86-89.) Further, the insinuation that the alleged instructions in Paragraph 85 mean that CPC otherwise instructs personnel not to so limit visits is, at best, a "statement of unnecessary particulars in connection with and descriptive of that which is material," and should therefore be stricken as immaterial. *Fodor v. E. Shipbuilding Grp.*, No. 5:12-CV-28-RS-CJK, 2014 WL 50783, at *5 (N.D. Fla. Jan. 7, 2014).

In addition, none of the allegations in Paragraphs 10 through 14 and 73 through 89 are necessary to assert any of the claims asserted by Relator in this case. The allegations are gratuitous commentary. That this background information can be eliminated entirely from the FAC without affecting Relator's claims illustrates that Paragraphs 10 through 14 and 73 through 89 are immaterial and should be stricken.

### III. The allegations at issue are prejudicial.

As an initial matter, Relator's contention that CPC did not explain any prejudice it suffers from the presence of these allegations is flat wrong. Regarding Paragraphs 10 through 14, CPC argued that "Relator frames matters in this article

solely to cast Defendant in a derogatory light and draw unwarranted inferences about an ostensible predilection to engage in fraud" as "a blatant attempt to introduce character evidence as probative of a propensity to act in accordance with that character trait[.]" (CPC's Mot. p. 7.) CPC stated that allowing discovery into issues of its supposed revenues and political donations "would be a wasteful and invasive distraction." (*Id.*) CPC also stated that Relator's allegations that it "'puts profits over patients' and 'reaps hundreds of millions of dollars on the backs of seniors and their family' while maintaining rundown facilities [ . . . ] serve only to inflame." (*Id.*) Regarding Paragraphs 73 through 89 regarding CPC's alleged COVID-19 related practices, CPC stated that "Relator's allegations can only be meant to distract from the weakness of her case." (*Id.* p. 8.) CPC explained that these allegations have the very consequences that the Eleventh Circuit warned about in inadequately pled fraud cases, including needless harm to goodwill and reputation. (*Id.* pp. 9-10.)

In an apparent attempt to argue that the allegations at issue are not prejudicial to CPC, Relator states that "[t]he factual allegations regarding Defendant's previous alleged violations of the FCA are already public[.]" (Relator's Resp. p. 6.) This makes no sense, as none of the contested allegations involve prior FCA violations. It seems that Relator may be inaccurately referring

to her allegations in Paragraphs 10 through 14, regarding "then-named CHS-Ga's use of development authorities to obtain Medicaid bonus payments." (FAC ¶ 10.)[1] Relator has not denied that the allegations in these paragraphs are taken from the *ProPublica* article "He Wanted to Fix Rural America's Broken Nursing Homes. Now, Taxpayers May Be on the Hook for $76 Million,"[2] and her argument that the contents of her allegations are already public cement this inference. That article, unlike the FAC, also puts the Medicaid payments at issue into context, including that the Georgia Department of Community Health approved and was a full participant in the program.[3] Further, it is untrue that CPC did not contest the truth of the allegations in Paragraphs 10 through 14. (Relator's Resp. p. 6.) CPC

---

[1] Relator does not argue that her allegations regarding CPC's actions in the early phases of the COVID-19 pandemic are not prejudicial to CPC. (See Relator's Resp. pp. 6-8.) Rather, she restates that these allegations are "relevant to issues disputed in this litigation." (*Id*. p. 6.) But, as explained *supra* pp. 3-4, Relator's COVID-19 allegations are immaterial to the current controversy.

[2] Max Blau, *He Wanted to Fix Rural America's Broken Nursing Homes. Now, Taxpayers May Be on the Hook for $76 Million*, ProPublica Sept. 22, 2020, available at https://www.propublica.org/article/he-wanted-to-fix-rural-americas-broken-nursing-homes-now-taxpayers-may-be-on-the-hook-for-76-million (last visited Jan. 10, 2022). For the Court's convenience, CPC attached a copy of this article as Exhibit A to CPC's Motion to Strike.

[3] As stated in the article, "After a 'healthy debate,' according to one former top official, DCH approved Rollins' plan — so long as the department received a cut of the bonus payments. Department officials hoped to use the money to help stabilize Medicaid reimbursement rates for providers across the state." *Id.*

described the allegations as "untrue" and questioned the accuracy of the article on which the allegations were based. (CPC's Mot. pp. 6-7.)

In any event, that Relator's allegations may already be a part of the public sphere does not mean they belong in a well-pleaded Complaint. As commentators have explained, "[t]he granting of a motion to strike scandalous matter is aimed, in part, at avoiding prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegations any other unnecessary notoriety inasmuch as, once filed, pleadings generally are public documents and become generally available." C. Wright & A. Miller, 5C FEDERAL PRACTICE AND PROCEDURE 3d § 1382; *see also Dennis v. Nw. Mut. Life Ins. Co.*, No. 3:06-cv-43-J-20MCR, 2006 WL 1000308, at *4 (M.D. Fla. Apr. 14, 2006) (striking allegations because they were immaterial and impertinent, and would be prejudicial if ever reviewed by a jury); *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 556 (S.D.N.Y. 2002) (striking allegations that had been publicized despite plaintiff's argument that any prejudice therefrom had already occurred, stating "[i]f a party has suffered prejudice as a result of scandalous allegations—as is likely here—the solution under Rule 12(f) is not thereafter to ignore the party's plight"). Allowing these allegations to remain in the FAC elevates the likelihood that jurors would see them

from a mere possibility to a practical certainty. Thus, the improprieties in the FAC are appropriately redressed through a motion to strike.

Contrary to Relator's position, courts do analyze whether character evidence will be admissible when considering a motion to strike. *See, e.g., Johnson v. Trump for President, Inc.*, No. 819CV00475T02SPF, 2019 WL 2492122, at *2 (M.D. Fla. June 14, 2019) (striking evidence of prior incidents of defendant's nonconsensual acts despite plaintiff's argument that evidence of such prior incidents would be admissible under Fed. R. Ev. 404(b) to prove defendant's motive, intent, knowledge, and absence of mistake regarding the battery); *United States v. Med-Care Diabetic & Med. Supplies, Inc.*, No. 10-81634-CIV, 2014 WL 12279511, at *2 (S.D. Fla. June 17, 2014) (striking allegations that "create[d] the possibility of an end run around the rules of evidence, which prohibit citation to past wrongdoing or character evidence as probative of a propensity to act in accordance with that character trait" and stating that "[t]he presence of these allegations [ . . . ] prejudice[d] Defendants' right to any later *in limine* motions to preclude such evidence"). As these courts' reasoning makes clear, CPC would be prejudiced by the inclusion of these allegations in the FAC, and they should be stricken.

## IV. CPC has presented sufficient legal basis to strike Paragraphs 10-14 and 73-89 of Relator's FAC.

Through its arguments herein and in its Motion to Strike, CPC has shown that each and every one of allegations in question are redundant, immaterial, impertinent, or scandalous (or some combination thereof). CPC has also described the prejudice that would be inflicted on it should those allegations be allowed to remain in the FAC. Thus, CPC has provided sufficient legal basis for this Court to strike the offending allegations.

## V. Conclusion

Defendant Community Primary Care of Georgia, LLC requests that this Court strike allegations in Relator's FAC that are immaterial and impertinent to the False Claims Act violations Relator alleges, or are redundant or scandalous, and which prejudice CPC. Dismissing the paragraphs at issue will streamline the ultimate resolution of the action, including discovery and trial, because it will focus attention on the real issues in the case.

Respectfully submitted this 5th day of April, 2022.

ARNALL GOLDEN GREGORY LLP

*/s/ Glenn P. Hendrix*

                                              Glenn P. Hendrix, Esq.
                                              Georgia Bar No. 346590
                                              W. Jerad Rissler
                                              Georgia Bar No. 142024
                                              171 17th Street, Suite 2100
                                              Atlanta, Georgia 30363-1031
                                              404.873.8500
                                              glenn.hendrix@agg.com

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this pleading was prepared using Book Antiqua 13-point font in accordance with Local Rule 5.1(C).

This 5th day of April, 2022.

*/s/ Glenn P. Hendrix*
Glenn P. Hendrix
Georgia Bar No. 346590

## CERTIFICATE OF SERVICE

I hereby certify that on April 5th 2022, I electronically filed the foregoing **Defendant Community Primary Care of Georgia, LLC's Reply to Relator's Response in Opposition to Defendant's Motion to Strike** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all Counsel of Record.

*/s/ Glenn P. Hendrix*
Glenn P. Hendrix
Georgia Bar No. 346590

ARNALL GOLDEN GREGORY LLP
171 17th Street NW
Suite 2100
Atlanta, Georgia 30363-1031
Telephone: 404.873.8500
Facsimile: 404.873.8501