# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

United States of America and the
State of Georgia ex rel. Betty
Riner,

                                                  Case No. 1:19-cv-4316-MLB

                Plaintiff-
                Relator,

v.

Community Primary Care of
Georgia, LLC a/k/a Ga MedGroup,

                Defendant.

_____/

## <u>ORDER</u>

This is a qui tam action under the False Claims Act ("FCA") and the Georgia False Medicaid Claims Act ("GFMCA") in which the United States and the State of Georgia declined to intervene.  (Dkts. 24; 25; 44.) Defendant Community Primary Care of Georgia, LLC a/k/a Ga MedGroup moves to dismiss the complaint and strike certain paragraphs of the complaint and for judicial notice of nine documents.  (Dkts. 48; 49; 50.)  The Court rules as follows.

## I.    Background

Relator Betty Riner initiated this lawsuit against Defendant and four other entities.  (Dkt. 1.)  Relator voluntarily dismissed without prejudice her claims against the four entities and is now pursuing this action solely against Defendant.  (Dkts. 40; 41; 44.)  In her amended complaint, Relator alleges Defendant owns, operates, and controls several healthcare service entities.  (Dkt. 44 ¶¶ 6–8.)  According to Relator, Defendant manages and submits claims for payment and receives payment on such claims for all physician and medical services at the facilities where Defendant and its related entities provide or refer healthcare services across Georgia.  (*Id.* ¶ 9.)  Relator is an advanced practice registered nurse who worked for Defendant from October 2015 to May 2021.  (*Id.* ¶¶ 16, 19.)  She claims that, because of physician understaffing, Defendant failed to conduct required physician visits, and the nursing homes provided services to patients in a manner that did not comply with law and without physician oversight or an assessment that the services were medically necessary.  (*Id.* ¶¶ 99–121.)  Relator identifies several patients that allegedly were not seen by a physician but still received rehabilitation services for which Defendant billed

government programs. (*Id.* ¶¶ 100–18.) She claims Defendant filed false claims when it sought reimbursement from the Centers for Medicare and Medicaid Services (CMS) and "falsely asserted that the medical procedures and services provided for these patients and others [were] medically reasonable and necessary." (*Id.* at 117.)

Relator now works for a company that provides nursing services on a contract basis to facilities, including Defendant's facilities. (*Id.* ¶ 160.) She alleges that, after she voluntarily left Defendant and this case was unsealed, Defendant retaliated by informing her new employer that it did not want her assigned to its facilities. (*Id.* ¶¶ 19, 154–61.) Her complaint asserts four causes of action: (1) FCA violation, (2) GFMCA violation, (3) FCA violation for retaliation, and (4) GFMCA violation for retaliation. (*Id.* ¶¶ 169–204.)

## II.  Discussion

### A.    Motion to Dismiss

Defendant moves to dismiss the complaint because it is a shotgun pleading and fails to state a claim for relief. (Dkt. 48-1.)

### 1.   Shotgun Pleading

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) further provides:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b). Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often called "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has identified four categories of shotgun pleadings: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint," (2) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," (3) a complaint that does not separate into a different count each

cause of action, and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1321. Ultimately, "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. The Eleventh Circuit has "little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

Defendant argues the complaint is an impermissible shotgun pleading that meets all four categories. (Dkt. 48-1 at 5–9.) The Court agrees the complaint is a shotgun pleading. The complaint is 49 pages (excluding the attachments) and 218 paragraphs. (*See* Dkt. 44.) The first 168 paragraphs are general allegations not tied to any cause of action. (*Id.* ¶¶ 1–168; *see also id.* at 16 (referring to paragraphs 64–168 as "general allegations").) Each cause of action then "realleges and

incorporates" the allegations alleged in the first 168 paragraphs.[1]  (*Id.* ¶¶ 169, 178, 187, 196.)   That obscures what may be important contentions.  And large swaths of the complaint are improper irrespective of their relevance, consisting of explanations of the law and citations to statutes and regulations.

Overall, Relator's complaint makes it difficult to distill the subject of her FCA and GFMCA violation claims.[2]  To establish a cause of action

---

[1] Relator emphasizes the complaint incorporates the factual allegations (i.e., the first 168 paragraphs) into each count but does not incorporate any prior count into any succeeding count as is prohibited by the first category of shotgun pleadings. (Dkt. 54 at 6.) That is true. But it is a distinction without significance. The Eleventh Circuit has affirmed that pleadings like Relator's that incorporate all factual allegations into all counts are shotgun pleadings. *See, e.g.*, *Clifford v. Federman*, 855 F. App'x 525, 529 (11th Cir. 2021) (per curiam) (describing a complaint that incorporated almost the entire fact section into almost every count as "cumbersome" because it "requir[ed] the reader to identify and sift through hundreds of paragraphs incorporated into each count[] and then parse through numerous allegations to identify which of those hundreds of paragraphs have some relevance to a particular defendant or cause of action" and affirming it was a shotgun pleading); *Vujin v. Galbut*, 836 F. App'x 809, 816 (11th Cir. 2020) (per curiam) (explaining that a complaint that incorporates the entire fact section into each count "does not suffice" because "to frame a proper pleading" the plaintiff is "required to couple particular facts with particular claims").

[2] The Court thinks Relator's allegations as to her FCA and GFMCA *retaliation* claims give adequate notice to Defendant because those claims rely on a very narrow set of circumstances. Even if those claims could be organized better, it is obvious from reading the entire complaint what facts support her retaliation claims.

for a FCA or GFMCA violation, a plaintiff must show three elements: (1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; and (3) with the knowledge that the claim was false. *United States v. R&F Props. of Lake Cnty., Inc.*, 433 F.3d 1349, 1355 (11th Cir. 2005); *Hill v. Bd. of Regents of the Univ. Sys. of Ga.*, 829 S.E.2d 193, 198 (Ga. Ct. App. 2019) (observing that courts generally look to federal case law to decide issues under the GFMCA); *Cade v. Progressive Cmty. Healthcare, Inc.*, 2011 WL 2837648, at *3 (N.D. Ga. July 14, 2011) (analyzing GFMCA claims by applying FCA case law).  These elements are very specific.  Relator's current complaint requires Defendant and the Court to sift through many immaterial facts (and lots of law) to figure out which allegations support her FCA and GFMCA violation claims. *NCR Corp. v. Pendum, LLC*, 2017 WL 8185864, at *1 (N.D. Ga. Nov. 16, 2017) ("When a plaintiff simply incorporates by reference all of the preceding paragraphs without specifying which factual paragraphs support which counts, the end result is that most counts 'contain irrelevant factual allegations and legal conclusions.' . . . [T]his leaves to the trial court the

'onerous task' of sifting out irrelevancies to identify which facts specifically support the necessary elements of each claim.").

When, as here, "a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give [her] one chance to replead before dismissing [her] case with prejudice on non-merits shotgun pleading grounds." *Vibe Micro*, 878 F.3d at 1296.[3] The Court thus gives Relator one opportunity to replead her case. In the second amended complaint, she must limit the length of the complaint and identify by reference the specific factual allegations and acts (or omissions) by Defendant that support each cause of action. As explained below, Relator must also identify the specific facilities at which she claims Defendant engaged in this misconduct and must plead that fraud with particularity, including consideration of the other issues discussed below.

---

[3] Relator only requests leave to amend in relation to Defendant's failure-to-state-a-claim argument on a regulatory exception. (Dkts. 54 at 16; 56 at 16 n.2.)

### 2.   Failure to State a Claim

### a)   FCA and GFMCA Violations

Defendant argues Relator's FCA and GFMCA violation claims fail because it does not own, operate, or manage the facilities named in the complaint and the complaint does not plead a false claim with particularity or materiality.  (Dkt. 48-1 at 9.)

### (1)   Ownership, Operation, Management

Relator alleges Defendant's facilities, at which fraudulent practices occur, include seven nursing homes.  (Dkt. 44 ¶¶ 69, 82–84, 96–97, 112–16, 119, 128, 131, 133–35, 143, 145.)  Defendant urges the Court to take judicial notice of seven documents which, according to Defendant, confirm that it does not own, operate, or manage the nursing facilities at issue.  (Dkt. 48-1 at 10.)  The seven documents are ownership and management disclosure pages from www.medicare.gov for each of the seven facilities.  (Dkt. 50 at 1–2.)

The Court begins by noting that the inquiry at the motion-to-dismiss stage is into the sufficiency of the allegations in the complaint, and not an evidentiary, fact-finding mission.  *Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d

1371, 1379 (11th Cir. 2010) (explaining that determining the legal sufficiency of the complaint requires presuming the factual allegations made in the complaint to be true).  For that reason, the scope of the review on a motion to dismiss is generally limited to the complaint and any documents attached to it. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (per curiam).  Under limited circumstances, however, a court can look beyond the four corners of the complaint when ruling on a motion to dismiss without converting it into a motion for summary judgment.  *DeBose v. Ellucian Co.*, 802 F. App'x 429, 433 (11th Cir. 2019) (per curiam).  One circumstance is when a court takes judicial notice of certain facts.  *Id.*; *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").[4]  Courts can take notice of

---

[4] According to Relator, courts ordinarily consider only the face of the complaint and documents attached thereto on a motion to dismiss, and the one narrow exception is documents incorporated into the complaint by reference.  (Dkt. 56 at 3–4.)  In opposition to Defendant's motion for

certain facts without formal proof but only where the fact is one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  The Eleventh Circuit has urged caution when taking judicial notice of facts because the judicial notice process "bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in [a] district court." *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997).

The ownership and management of the seven facilities is not generally known within the Northern District of Georgia.  But the ownership and management of those facilities is "capable of accurate and ready determination" by resort to www.medicare.gov, whose accuracy cannot reasonably be questioned.  Accordingly, the ownership and

---

judicial notice, Relator essentially argues a document must meet the incorporation-by-reference exception before a court may take judicial notice of it and consider it at the motion-to-dismiss stage. (*Id.* at 3–16.) As shown above, the case law says otherwise.  *See also K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041, 1048 (11th Cir. 2019) (Carnes, J., concurring) ("[I]n ruling on a motion to dismiss[,] courts may supplement the allegations in a complaint with facts contained in judicially noticed materials.").

management disclosure pages on www.medicare.gov for each of the seven facilities are proper subjects for judicial notice. *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) ("Under Rule 201, the court can take judicial notice of 'public records and government documents available from reliable sources on the Internet,' such as websites run by governmental agencies.").[5] But the Court declines to do so here because two problems exist.   First, the ownership and management disclosure pages show ownership and management *only at one point in time*.  They do not shed light on the historical ownership and management.  Based on those pages, it is unclear who owned, operated,

---

[5] *See, e.g.*, *Ohome v. United States*, 2021 WL 5771147, at *7 & n.4 (N.D. Ga. Dec. 6, 2021) (taking judicial notice of information about the DHS Traveler Redress Inquiry Program from  the Department of Homeland Security website because the "information is publicly available on a government website"); *Abdus-Sabur v. Hope Village, Inc.*, 221 F. Supp. 3d 3, 9–10 & n.3 (D.D.C. 2016) (taking judicial notice of Medicare manual and government healthcare website); *Wells Fargo Bank N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (explaining it was "clearly proper to take judicial notice" of documents from Medicare.gov, which included ownership information for a nursing and rehabilitation center); *Mitchell v. Nix*, 2007 WL 779067, at *4 (N.D. Ga. Mar. 8, 2007) (taking judicial notice of information from the Georgia Department of Corrections' website); *Full Circle Diary, LLC v. McKinney*, 467 F. Supp. 2d 1343, 1347 n.6 (M.D. Fla. 2006) (taking judicial notice of FAQ page on the Construction Industry Licensing Board's official State of Florida webpage).

and managed the seven facilities at the time of the allegations in the complaint. So even if the Court were to take judicial notice of the seven pages, it would be of little value. Second, although ambiguous, it is possible the complaint is not confined to just those seven facilities. While Relator includes specific allegations about the seven facilities, she also alleges Defendant's scheme to submit claims for payment to the government and receive payment on such claims encompasses Defendant's facilities across Georgia. (Dkt. 44 ¶ 9.) This is a broader and more general allegation. Construing the allegations in the complaint in the light most favorable to Relator and considering Relator's representation that her allegation refers to all 54 facilities (Dkt. 64 at 2), the Court finds she is referring to more facilities beyond the seven identified by name.[6] So even if the Court were to take judicial notice of the seven pages, it would not require dismissal of the FCA and GFMCA violation claims. This being said, in the amended complaint, Relator must identify—with specificity—the facilities at which she alleges Defendant submitted false claims.

---

[6] This discussion highlights the issues with her shotgun pleading. The Court urges Relator to be more precise in what facilities she is referring to upon amendment.

## (2)   Sufficiency of the Allegations

Defendant argues Relator did not plead with particularity the submission of a false claim in connection with any alleged scheme and did not plausibly plead materiality.  (Dkt. 48-1 at 12–19.)

As to particularity of a false claim, the Court has a hard time evaluating whether Relator pled falsity with particularity in the light of her complaint being a shotgun pleading.  The Court declines to address this now, and Defendant may raise this argument anew after Relator amends her complaint.[7]

The Court, however, hopes Relator pays attention to some of Defendant's particularity arguments as they seem—at first blush—to merit consideration.  For example, at the heart of Relator's claim is her allegation that controlling regulations required Defendant to ensure a physician visited each patient in one if its facilities at certain intervals, that this did not happen, and thus patients were provided services without regard to medical necessity and physician oversight.   (Dkt. 44

---

[7] Because the Court is not addressing this argument, it need not address Document 8 in Defendant's motion for judicial notice.  (Dkt. 50 at 2, 4–5.)

¶¶ 92, 99.) Relator cites 42 C.F.R. § 483.30 in support of this contention. But Defendant correctly points out that the statute provides that

> [a]t the option of the State, any required physician task in a [nursing facility] (including tasks which the regulations specify must be performed personally by the physician) may also be satisfied when performed by a nurse practitioner, clinical nurse specialist, or physician assistant who is not an employee of the facility but who is working in collaboration with a physician.

(Dkt. 48-1 at 13.)   In the second amended complaint, Relator must address this issue with particularity.

Relator should also be mindful of Defendant's argument that, except for Patient H.B., she has failed to allege the details of other claims so as to satisfy her burden of pleading the "who, when, when, where, and how of fraudulent submissions to the government."   (Dkt. 48-1 at 14 (citing *Est. of Helmly v. Bethany Hospice & Palliative Care of Coastal Ga., LLC*, 853 F. App'x 496, 501 (11th Cir. 2021)).)   The Court is not ruling on Defendant's argument because a new complaint is forthcoming.   But Defendant has accurately stated the requirements of pleading a false claims act violation with specificity and noted significant differences between the quality of allegations about Patient H.B. and other allegations.

As to materiality, "[t]he definition of 'material' contained within the statute considers whether the misrepresentation had 'a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.'" *Marsteller ex rel. United States v. Tilton*, 880 F.3d 1302, 1313 (11th Cir. 2018) (citing 31 U.S.C. § 3729(b)(4)).  Defendant says most of Relator's allegations fail to implicate the FCA (or the GFMCA) since she does not allege how the alleged schemes ever could affect claims for payment.  (Dkt. 48-1 at 18.)

Despite claiming "most" of Relator's allegations fail to plausibly allege materiality, Defendant only provide two examples.   First, Defendant cites Relator allegation that Defendant, as the nursing home operator, is responsible for false physician billing.  Defendant attacks this allegation by arguing facility residents may choose their own physician, facilities do not employ physicians, and facilities are not reimbursed by Medicare for physician services, meaning "[p]hysicians serving Medicare beneficiaries in facilities bill Medicare directly."  (*Id.*)   In response, Relator says she alleged Defendant controls, operates, employs, uses as agents, and is otherwise under the same umbrella as its doctors.  (Dkt.

54 at 18 (citing Dkt. 44 ¶¶ 1, 3, 9, 17, 66–70, 121–25, 137, 139, 148, 150).)[8] This seems to allege Defendant somehow controls or is otherwise involved in physician billing. At this stage, the Court must take the allegations in the complaint as true.

Second, Defendant identified Relator's allegation that it is understaffing nurses in its facilities. (Dkt. 48-1 at 19.) Defendant argues Relator has not alleged how the number of nurses (or quality of their care) is material to the government's decision to pay reimbursement claims. (*Id.*) But Relator says she alleged the understaffing leads to staff members conducting "a battery of services on patients, without regard to medical necessity and without physician oversight" and only "reasonable and necessary" services and products are eligible for reimbursement. (Dkt. 54 at 18 (citing Dkt. 44 ¶¶ 90–135; 42 U.S.C. § 1395y(a)(1)(A)).) The Court notes that perhaps Relator has alleged two things at once—

---

[8] Defendant seeks judicial notice of a Medicare Claims Processing Manual, which states that a "physician's professional services are excluded from a skilled nursing facility's Medicare Part A payment and must be billed separately by the physician directly to the Medicare program. (Dkt. 5o at 5.) Defendant says this document "refute[s] Relator's allegation that a nursing home is responsible for physician billing or vice-versa." (*Id.*) The Court does not see the significance of the document in the light of Relator's argument.

that the tests were administered "without medical necessity" and "without physician oversight." It is unclear whether she is alleging they were not medically necessary because there was no physician oversight or whether she is alleging that, irrespective of oversight, they were also not necessary. In the second amended complaint, Relator ought to specify what conduct she alleges and should not unnecessarily muddle the two.

### b)    Retaliation

Relator alleges she voluntarily resigned from Defendant and began working for a company that provides nursing services on a contract basis to facilities, including Defendant's facilities. (Dkt. 44 ¶ 160.) After this lawsuit was unsealed, Defendant allegedly told her new employer that it did not want her assigned to its facilities. (*Id.* ¶ 161.) Relator claims retaliation under the FCA and GFMCA. (*Id.* at 42, 44.) Defendant argues Relator cannot establish retaliation because post-employment retaliation is not actionable and her allegations do not amount to retaliation. (Dkt. 48-1 at 19–25.)[9]

---

[9] The Court finds Relator's retaliation claims fail on the first ground, so the Court declines to address Defendant's second argument.

The FCA and GFMCA, in nearly identical language, provide that "[a]ny employee, contractor, or agent shall be entitled to all relief necessary to make [he or she] whole," if he or she is "discriminated against in the terms and conditions of employment because of lawful acts done by [he or she] in furtherance of an action" under the FCA or GFMCA. *See* 31 U.S.C. § 3730(h)(1); O.C.G.A. § 49-4-168.4(a).[10] Defendant contends no cause of action exists for post-termination retaliation. (Dkt. 48-1 at 20.) Relator sets forth two arguments in response: (1) she qualifies as a contractor so her retaliation claims are not post termination and (2) a former employee, like herself, may invoke the anti-retaliation provision because the statutory language is not limited to "current" employees. (Dkt. 54 at 23.)

Relator says she plausibly pled she is a contractor of Defendant because she alleged "her current employer provides her services on a contract basis to facilities including Defendant's facilities" and Defendant is an "important client" of her employer. (Dkt. 54 at 22 (citing Dkt. 44 ¶¶ 160, 190, 199).) To be clear, she claims protection from retaliation

---

[10] Originally, only employees could bring actions under § 3730(h). In 2009, however, Congress expanded the scope of § 3730(h) to cover "[a]ny employee, contractor, or agent."

because she is an employee of a company that has a contract with Defendant. She relies on *Ickes v. Nexcare Health System, LLC*, 178 F. Supp. 3d 578 (E.D. Mich. 2016), and *El-Khalil v. Oakwood Healthcare, Inc.*, 2020 WL 1915358 (E.D. Mich. Apr. 20, 2020), to show she is a contractor. (Dkt. 54 at 22–23.) In *El-Khalil*, a physician received admitting privileges at four hospitals run by the defendant. 2020 WL 1915358, at *1. The defendant did not renew his admitting privileges at the hospitals. *Id.* He sued claiming those actions were illegal because they were retaliation for his whistleblowing under the FCA. *Id.* The court found he plausibly pled he was a contractor under the statute because the statute's inclusion of "contractor" and "agent" (not just employee) shows individuals in nontraditional employment relationships, including independent contractors, are meant to be protected, and under Michigan law physicians with admitting privileges at a hospital are generally considered independent contractors. *Id.* at *2. The Court does not find *El-Khalil* to be helpful because Relator is not a physician with admitting privileges at a hospital and Michigan law does not apply here. She is an employee of a company unrelated to Defendant that has a contractual arrangement (apart from Relator) with Defendant.

In *Ickes*, a non-party entity hired the plaintiff to be a physical therapist and assigned her to provide services to the defendant, a nursing home.  178 F. Supp. 3d at 582.  The court found she was a contractor to the defendant.  *Id.* at 591.  The Court is not persuaded by *Ickes*.  Other than saying the statute is designed to cover employment-like relationships, the *Ickes* court offered no explanation for why "contractor" includes a contractor's employee.  Moreover, *Ickes* is distinguishable from this case in that the non-party entity and the defendant were so intertwined that they essentially acted as the plaintiff's co-employers.  *Id.* at 582.  That condition does not exist in this case.  Ultimately, a contractor is defined as "[a] party to a contract" or "[m]ore specif[ically] one who contracts to do work for or supply goods to another."  Contractor, *Black's Law Dictionary* (11th ed. 2019).  The complaint does not allege Relator has a contractual relationship with Defendant.

So Relator is not a contractor.  That means she must be an "employee" to invoke the anti-retaliation provisions of the federal and Georgia statutes.  She resigned from Defendant in May 2021 and the allegedly retaliatory act did not happen until October 2021.  By her own allegations, she was not an employee at the time of the alleged

retaliation.  Defendant says the FCA and GFMCA do not apply to former employees.  (Dkt. 48-1 at 20–21.)

Only two circuits have addressed this issue regarding the FCA.  The Tenth Circuit said, "the [FCA's] anti-retaliation provision unambiguously excludes relief for retaliatory acts occurring after the employee has left employment."  *Potts v. Ctr. for Excellence in Higher Educ., Inc.*, 908 F.3d 610, 618 (10th Cir. 2018).  The Sixth Circuit, however, held that the anti-retaliation provision of the FCA may be invoked by a former employee.  *United States ex rel. Felten v. William Beaumont Hosp.*, 993 F.3d 428, 435 (6th Cir. 2021).  District court opinions go both ways.  *Compare United States ex rel. Complin v. N. Carolina Baptist Hosp.*, 2019 WL 430925, at *10 (M.D.N.C. Feb. 4, 2019) ("[I]t appears clear to this court from the current case law that 31 U.S.C. § 3780(h) does not contemplate a remedy for post-termination retaliation."); *United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 208 (D.D.C. 2011) ("The plain language . . . clearly establishes that Section 3730(h) applies only to the employment context and, therefore, cannot extend to claims for retaliatory action occurring solely after a plaintiff has been terminated from his job."), *with Haka v. Lincoln Cnty.*,

533 F. Supp. 2d 895, 917 (W.D. Wis. 2008) (recognizing a claim for post-employment retaliation in the decision not to rehire the plaintiff because such a hiring choice concerned the "terms and conditions of employment"). But most courts that considered this issue have found § 3730(h) does not apply to post-employment retaliation. *See Potts v. Ctr. for Excellence in Higher Educ., Inc.*, 244 F. Supp. 3d 1138, 1143 (D. Colo. 2017) ("The overwhelming majority of courts that have considered the issue have found that § 3730(h)(1) does not apply to post-employment retaliation . . . ."), *aff'd*, 908 F.3d 610 (10th Cir. 2018); *Master v. LHC Grp., Inc.*, 2013 WL 786357, at *7 (W.D. La. Mar. 1, 2013) (collecting cases). And at least one court in our circuit has found § 3730(h)(1) does not provide a remedy for post-termination retaliation. *See Taul ex rel. United States v. Nagel Enters., Inc.*, 2017 WL 4956422, at *4 (N.D. Ala. Nov. 1, 2017).

The most natural reading of the statutes is that they do not create claims for post-termination retaliation. In interpreting a statute, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). On its face, the statutes do not apply to

23

former employees.  The statutes provide that "any employee . . . shall be entitled to relief" from retaliation.  *See* 31 U.S.C. § 3730(h)(1); O.C.G.A. § 49-4-168.4(a).  They refer to any "employee"—that is, one who "works" in the service of another person (the employer).  Employee, *Black's Law Dictionary* (11th ed. 2019).  The present tense is crucial.  When Congress and the Georgia Legislature enacted the statutes, they also chose not to include any modifier like "former" or "current and former."  The plain terms they used and did not use to identify those who may bring retaliation claims preclude application of the statutes to former employees.[11]  The statutes also provide an employee the right to be made whole if he or she is demoted, discharged, or otherwise retaliated against "in the terms and conditions of employment" because of the employee's efforts to stop an FCA violation.  *See* 31 U.S.C. § 3730(h)(1); O.C.G.A. §

---

[11] Defendant notes that a bill has been introduced to insert "current or former" after "any" in § 3730(h)(1)'s introductory phrase.  (Dkt. 48-1 at 21 n.3.)  This proposed amendment, Defendant argues, shows Congress does not believe the statute as currently written applies to former employees.  (*Id.*)  While that may be, it could just as easily be the opposite scenario, too.  In other words, perhaps Congress thought it was clear that "any employee" means current and former employees, and Congress is frustrated courts are "misinterpreting" the statute, so senators seek to amend it to make their intent clear.  Rather than trying to decipher why Congress introduced this bill, the Court declines to consider it and instead focuses on the statutory text as written.

49-4-168.4(a).  Why include the reference to the "terms of employment" if the statutes encompass former employees?  After all, former employees have no terms or conditions of employment.  *See Head*, 798 F. Supp. 2d at 208.  This Court, like many, finds post-termination retaliation against a former employee is not actionable.

### B.   Motion to Strike

Rule 12(f) allows a party to move to strike "any redundant, immaterial, impertinent, or scandalous matter" within the pleadings.  Fed. R. Civ. P. 12(f).  Defendant moves to strike paragraphs 10–14 and 73–89 in the complaint as immaterial, impertinent, scandalous, and unfairly prejudicial.  (Dkt. 49-1 at 5.)  Motions to strike should be granted only if the matter sought to be omitted has no possible relation to the controversy, may confuse the issues, or otherwise prejudices a party.  *Allen v. Life Ins. Co. of N. Am.*, 267 F.R.D. 407, 410 (N.D. Ga. 2009).

Paragraphs 10–14 detail Defendant's past controversy with Medicare and Medicaid, revenues, and political donations.  (Dkt. 44 ¶¶ 10–14.)  Relator says Paragraphs 10–14 help show Defendant's knowledge of the falsity of the claims, in that Defendant has had its practices challenged in the past, is open about its willingness to push the

legal limits, seeks to influence the political process, and greatly benefits financially from its current operations.  (Dkt. 55 at 4.)  Defendant says Paragraphs 10–14 cast it "in a derogatory light and draw unwarranted inferences about an ostensible predilection to engage in fraud" and allowing discovery into Defendant's revenues and political donations "would be a wasteful and invasive distraction."  (Dkt. 49-1 at 4, 7.) Defendant's political donations, dirty rooms, and revenue are not relevant to any claims, and the Court thus strikes Paragraphs 12–14. These allegations should not be included in the second amended complaint unless relevant to some new allegation.  Paragraphs 10–11, on the other hand, might have some possible relation, so the Court does not strike those paragraphs.

Paragraphs 73–89 discuss Defendant's practices during the early stages of the COVID-19 pandemic.  (Dkt. 44 ¶¶ 73–89.)  Relator says Paragraphs 73–89 relate to "Defendant's instruction to limit patient visits to 'medically necessary' visits, indicating that it has not so limited its medical services previously."  (Dkt. 55 at 4–5.)  As Defendant notes, however, only one paragraph in Paragraphs 73–89 refers to medical necessity.  (Dkts. 44 ¶ 85; 61 at 4.)  The Court does not see how

Paragraphs 73–84, 86–89 have any possible relation to the claims. The Court thus strikes those paragraphs and orders that they not be included in the second amended complaint. The Court, however, does not strike Paragraph 85.

## III. Conclusion

The Court **DENIES** Defendant's Motion for Judicial Notice (Dkt. 50).

The Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss (Dkt. 48). Relator's First Amended Complaint (Dkt. 44) is a shotgun pleading. Consistent with Eleventh Circuit precedent, the Court will give Relator one opportunity to replead her case. If she chooses to take advantage of this opportunity, she must file her second amended complaint within 30 days from the date of this order.[12] She may only replead Counts I and II (FCA and GFMCA violations). She may not replead Counts III and IV (FCA and GFMCA retaliation) because the Court found she is not a contractor and post-termination retaliation is not actionable.

---

[12] If she does not file a second amended complaint, the Court will dismiss this case with prejudice on shotgun pleading grounds. *See Vibe Micro*, 878 F.3d at 1296.

The Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Strike (Dkt. 49).   The Court **STRIKES** Paragraphs 12–14, 73–84, 86–89 in the First Amended Complaint (Dkt. 44).

**SO ORDERED** this 9th day of May, 2022.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE