## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and | ) | |
| THE STATE OF GEORGIA | ) | |
| ex rel. BETTY RINER | ) | |
| | ) | |
| Plaintiff-Relator, | ) | |
| | ) | |
| v. | ) | Civil Case No: |
| | ) | 1:19-cv-4316-MLB |
| COMMUNITY PRIMARY CARE OF | ) | |
| GEORGIA, LLC (a/k/a Ga MedGroup), | ) | |
| | ) | |
| Defendant. | ) | |

## RELATOR'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT (DOC. 73)

Defendant defrauded Georgia and federal taxpayers and inflicted unspeakable pain on numerous patients and families.  Now Defendant asks the Court to help it avoid responsibility by dismissing this case at the pleading stage. Because Relator Riner's Complaint (Doc. 68) states claims for which relief may be granted, the Court should deny Defendant's motion (Doc. 73).

## STATEMENT OF FACTS

Defendant owns, operates, and/or controls multiple health care service entities, including facilities and physician and medical service companies through which Defendant manages, submits, and receives payment for claims to the

Government.  Doc. 68 ¶¶ 5-33.  Defendant's interrelationships among its entities, facilities, employees, and controllers are labyrinthine; entities under its umbrella have changed names multiple times and operate "doing business as" other entity names.  *Id.*  Relator Riner is an Advanced Practice Registered Nurse who worked for Defendant from 2014 through 2021.  *Id.* ¶¶ 36-37, 39.  During her employment with Defendant, Relator Riner observed Defendant prioritize profits over patients and the law, by failing to provide patients required physician visits, fabricating visits that did not take place, charting visits as occurring on different dates than they really did, and mis-classifying patients, all in order to charge the government more money, which Defendant did.  *See generally id.*

## PROCEDURAL HISTORY

Relator Riner brought this lawsuit on September 25, 2019.  Doc. 1.  After multiple unopposed extensions of time, the United States and Georgia declined to intervene, with such decision expressly not on the merits, and the Court ordered the case unsealed on June 2, 2021.  Doc. 26.

On May 5, 2022, the Court ordered, in response to Defendant's Motion to Dismiss (Doc. 48-1), that Relator Riner's First Amended Complaint (Doc. 44) was a "shotgun pleading" and that she amend her complaint within 30 days, and that she not replead her retaliation claims.  Doc. 65 at 27.  Relator Riner moved for

reconsideration of that order on June 6.  Doc. 66.

Relator Riner filed her Second Amended Complaint on June 8, and, after the Court granted the Defendant's Consent Motion to Extend the Briefing Schedule, Defendant filed a Motion to Dismiss on July 6.  Doc. 73-1.

## ARGUMENT AND CITATION TO AUTHORITY

### I.  Defendant Cannot Meet Its High Burden on Its Motion to Dismiss

A motion to dismiss may only be granted if a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Guerra v. Rockdale Cnty.*, 420 F. Supp. 3d 1327, 1336 (N.D. Ga. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "[A]ll well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Id*. (quoting *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999)).

Federal Rule of Civil Procedure 9(b) applies to FCA cases (and, accordingly, GFMCA cases[1]).  But, at the pleading stage, even under Rule 9(b), "a plaintiff is not expected to actually *prove* his allegations, and [courts] defer to the properly pleaded allegations of the complaint."  *U.S. ex rel Clausen v. Lab'y Corp. of Am.*,

---

[1] *See, e.g.*, *Hill v. Bd. of Regents of the Univ. Sys. of Ga.*, 351 Ga. App. 455, 459 (2019) (holding that the GFMCA "mirrors the language in" the FCA and accordingly "courts generally look to federal [FCA] case law to decide issues under the GFMCA" (quotation marks omitted)).

*Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002) (emphasis in original). A "complaint satisfies Rule 9(b) if it sets forth facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Hopper v. Solvay Pharms, Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009) (quotation marks omitted).

For "presentment" claims that a defendant submitted false claims to the government in violation of 31 U.S.C. §3729(a)(1), a complaint must also allege that claims were actually submitted to the government. *Clausen*, 290 F.3d at 1311-12.[2] A plaintiff must plead facts that provide "some indicia of reliability . . . to support the allegation of an actual false claim for payment being made to the Government." *Id.* (emphasis and citation omitted).

> Under this framework, [a] complaint will be sufficiently pled if [it] alleges the fraudulent scheme with particularity, along with (1) direct allegations of particular instances of fraudulent submissions or (2) specific allegations including other indicia of reliability to support the conclusory allegations of fraudulent submissions (*e.g.*, firsthand but general knowledge of fraudulent submissions or defendant's records and billing practices, as in *Hill* [*v. Morehouse Med. Assocs.*, 2003

---

[2] Similarly, "false records" claims, that a defendant made or used a false record or statement material to a false or fraudulent claim, require pleading that "(1) the defendant made a false record or statement for the purpose of getting a false claim paid or approved by the government; and (2) the defendant's false record or statement caused the government to actually pay a false claim." *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1327 (11th Cir. 2009).

> WL 22019936 (11th Cir. Aug. 15, 2003)]; or allegations
> of other circumstances sufficient to explain why she
> believes Defendants submitted false or fraudulent
> claims."

*Rutledge v. Aveda*, 2015 WL 2238786, at *12 (N.D. Ala. May 12, 2015).

Defendant has not shown the Complaint is insufficient as a matter of law.

## II. The Complaint Sufficiently Alleges that Defendant Owns, Operates, and/or Controls the Facilities at Issue

Whether Defendant owns, operates, and/or controls facilities at issue is an issue of disputed fact.  Accordingly, on this issue, at the pleading stage, "the Court must take the allegations in the complaint as true."  Doc. 65 at 17.  Relator Riner alleges an "umbrella" of interrelated companies that all operate various parts of healthcare services to support a goal of driving "towards where the money is going."  Doc. 68 ¶¶ 10, 21, 23.  This includes, for example, (1) a unity and commingling of identities in Defendant's history, (2) conveying in Relator Riner's employment orientation the fact that Defendant was in charge of the facilities and that she should do as ordered by the managers of the facilities, and (3) umbrella-wide meetings at which various entities under the umbrella shared how others under the umbrella could support them in increasing profits.  *Id*. ¶¶ 5-7, 22-23.

Defendant did not bother to hide its umbrella structure.  Relator Riner worked in and at the direction of the facilities and the physicians, received

paychecks issued by Ga MedGroup, and had employment benefits managed by

Ethica.  *E.g.*, *id*. ¶¶ 20, 22, 24-26, 160.  The website, https://www.chs-ga.org/,

which links from a website in Defendant's name when the user clicks "Careers"

and then the icon for the resulting homepage, itself claims that it provides "access

to a continuum of care across the healthcare spectrum of Georgia."  *Id*. ¶¶ 8-9.

This includes "skilled nursing" facilities, which are accessed by clicking

"Services" and "Skilled Nursing," which then takes the user to a Ethica/Clinical

Services website http://www.ethicahealth.org/, which in turn has a "Client

Centers" website claiming control of many of the facilities alleged in the

Complaint.  *Id*. ¶¶ 11-12.  The websites have matching website layouts and stock

photographs and freely link to each other, and the named entities share principal

office addresses, other office addresses, officers, and/or registered agents.  *Id*. ¶¶ 8-

16.[3]

      These allegations are not mere "commonalities," as Defendant asserts.  Doc.

---

[3] Defendant argues that documents it submits for judicial notice "confirm that CPC does not own or manage the nursing homes at issue in this suit and cannot have submitted the claims at issue."  Doc. 73-1 at 6.  But, as discussed in Relator Riner's response to Defendant's Request for Judicial Notice, Defendant does not dispute that it "controls" the facilities or any other entities, the documents are not appropriate for judicial notice, and the documents actually support, rather than contradict, Relator Riner's allegations of ownership, management, or control: Ethica/Clinical Services is listed as having operational control of *all but one* of the facilities.

73-1 at 8.  They constitute control and unity of a single "umbrella" unit, as Defendant itself conveyed at Relator Riner's orientation.  Doc. 68 ¶ 21.  Nor are Relator Riner's allegations "sometimes contradictory."  Doc. 73-1 at 9. Throughout the Complaint and throughout this litigation, Relator Riner has asserted that Defendant operates as part of an "umbrella" of operations set up to integrate multiple facets of Medicare and Medicaid to make as much money as possible, with entities "doing business as" other names and changing names and linking to websites.  *E.g.*, Doc. 68 ¶¶ 5-34.  The examples Defendant points to are consistent with that characterization.  *See* Doc. 73-1 at 9-10.

Further, Defendant's corporate organization does not allow dismissal.  The law does not permit a corporation to avoid liability for its actions by claiming a separate and distinct legal existence for actions actually undertaken merely as the corporation's alter ego or business conduit.  *Renee Unlimited, Inc. v. City of Atlanta*, 301 Ga. App. 254, 259 (2009).  Questions of such abuse of the corporate form are factual in nature.  *See, e.g.*, *Bryant v. Optima Int'l, Inc.*, 339 Ga. App. 696, 706-07 (2016) (holding that the trial court erred in granting summary judgment as to whether corporate entities were merely "alter egos" of another). This is why the Court's Joint Preliminary Report and Discovery Plan asks the parties whether there are "necessary parties who have not been joined," "persons

7

[who] are improperly joined as parties," and "parties [who] are either inaccurately stated or necessary portions of their names are omitted."  Doc. 53 at 3.  Defendant listed no other parties that should be joined.  *Id*.  It is telling that Defendant never states who else might be responsible for the decisions that led to the fraudulent billing at issue in this case.  To the extent Defendant believes other entities should be added as parties in addition to or instead of it, it should confer with Relator Riner to amend the Complaint.  Defendant will not do so, because all fingers point back to Defendant.

Defendant cites two cases that it asserts demonstrate that Relator Riner's "allegations, even if true, are not enough to disregard CPC's independent corporate existence."  Doc. 73-1 at 9 (citing *JBS Hair, Inc. v. Beauty Essence, Inc.*, 2022 WL 657503, at *4 (N.D. Ga. Mar. 4, 2022); *U.S. ex rel. Heller v. Guardian Pharmacy, Inc.*, 521 F. Supp. 3d 1254, 1280-81 (N.D. Ga. 2021)).  Defendant is wrong.  In *JBS Hair*, this Court found that a plaintiff had not pleaded facts that met the Georgia alter ego doctrine, emphasizing "the absence of any real evidence of interconnectedness."  2022 WL 657503, at *3-5.  Whereas there the plaintiff had only pleaded facts such as one corporation identifying another as one of its "partners" on a website and sharing some corporate organizing facts, not any control or abuse of the corporate form, here Relator Riner has made such

allegations of control and alleged that such control allowed Defendant to promote the injustice and fraud alleged in the Complaint, including abuse of the corporate form by commingling purportedly separate and independent entities. *Id*.; *see, e.g.*, Doc. 68 ¶¶ 17, 20, 22-23, 26, 28-29 (alleging involvement of different parts of Defendant's umbrella controlling other parts of the umbrella).  Further, there the Court concluded that, by observing the defendant's corporate independence, the result was only that the case would be "transferred to a district with proper venue" or "dismissed . . . with the option that it can be refiled." *JBS Hair*, 2022 WL 657503, at *5.  Here, Defendant seeks to dismiss the case and avoid liability completely, compounding the injustice.

*Heller*, in turn, involved no factual allegations about abuse of the corporate form but rather merely that one corporation guided the "macro-level operations" that were then enacted by a local management team.  521 F. Supp. 3d at 1280-81. Relator Riner alleges more: the operation of an umbrella organization with "such unity of interest and ownership that they lack separate personalities," including *local* control, as further supported by the documents Defendant proffers for judicial notice.  *Id*. at 1280; *see, e.g.*, Doc. 68 ¶¶ 5-34, 74-84, 125, 156, 158-59, 176-79; *see generally* Doc. 72 (identifying Ethica/Clinical Services as having operational control of all but one of the facilities).  Accordingly, Relator Riner has alleged

9

facts from which the Court may draw the reasonable inference that Defendant should not be allowed to shield itself.  *See OneSouth Bank v. Titshaw*, 2021 WL 2188950, at \*4-5 (M.D. Ga. May 28, 2021) (ruling a complaint sufficiently alleged facts of common identity and abuse of the corporate form to survive a motion to dismiss).

### III.    Relator Riner Has Stated Claims for Which Relief May be Granted Under the FCA and GFMCA

Relator Riner's Complaint "alert[s] [D]efendant[] to the precise misconduct with which they are charged and protect[s] [it] against spurious charges of immoral and fraudulent behavior."  *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (quotation marks omitted).  It is sufficient at this pleading stage.

#### a.    Relator Riner adequately pleads that Defendant failed to conduct required physician visits to ensure that billed and submitted services were medically reasonable and necessary

Relator Riner alleges that Defendant presented claims and made and used false records for services without oversight to affirm services and patient classifications were medically necessary and appropriate, as required.  Doc. 68 ¶¶ 85-189.  Specifically, Defendant failed to conduct physician visits required by 42 C.F.R. § 483.30.  *Id.* ¶¶ 88-96, 102, 134.

Defendant argues that an exception applies that allows non-physicians to perform these visits.  Doc. 73-1 at 12-19.  But Defendant does not dispute that the

*rule* is that such physician visits are required, with regulations also including an *exception* when certain conditions are met.  *See id.*  At the pleading stage, the law does not require Relator Riner to plead the absence of an exception.  Dismissal is only appropriate "where it is clear that the plaintiff can prove no set of facts in support of the claims in the complaint."  *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (quotation and punctuation marks omitted).

Still, the Complaint states facts that, if proven, show that the exception does not apply.  Relator Riner alleges that the non-physician practitioners were employees of the facility, which also disqualifies them from the exception.  *E.g.*, Doc. 68 ¶¶ 90-92, 95-96, 102-20.  Further, she alleges that Defendant's physicians "did not provide the non-physicians with oversight, assistance, or any other meaningful supervision," and that Relator Riner herself personally experienced this lack of supervision and collaboration.  *Id.*.

Defendant argues that Relators' allegations regarding the lack of meaningful oversight, assistance, and supervision that is required for the exception to apply "contradicts Relator's allegation that physicians oversaw the patients that she . . . treated."  Doc. 73-1 at 14.  Not so.  Relator Riner alleges both that physicians were delegated to oversee her according to regulations *and* that they did not actually provide such collaboration.  *See, e.g.*, Doc. 68 ¶¶ 18-19; *id.* ¶¶ 90, 92, 95-96, 102.

11

That is no contradiction.  Defendant also argues that these requirements "apply only to 'SNF patients,'" Doc. 73-1 at 14, but 42 C.F.R. § 483.30(f) provides no such limitation.

Accordingly, Relator Riner has alleged facts from which the Court may draw the reasonable inference in the light most favorable to Relator Riner that the exception Defendant points to does not apply.  As the Court has observed in another case, "a court reviewing [a motion to dismiss under Rule 12(b)(6)] should bear in mind that it is testing the sufficiency of the complaint, not the merits of the case."  *Lara Santiago v. Mayorkas*, 554 F. Supp. 3d 1340, 1346 (N.D. Ga. 2021).

### b.  Relator Riner adequately pleads improper classification

Relator Riner alleges that Defendant misclassified patients as requiring "skilled" care when palliative was the correct designation because those patients would not benefit from costly rehabilitation services.  Doc. 68 ¶¶ 142-89.  Defendant does not deny that patients were certified against nurse practitioners' clinical judgment, but claims Relator has not alleged facts with particularity regarding the misclassification.  Doc. 73-1 at 21.  But it is in the Complaint: administrative staff "regularly overrides medical personnel" and "instructs nurse practitioners . . . to classify and recertify patients as skilled patients when those patients do not meet the criteria to do so."  Doc. 68 ¶¶ 144, 147.  Relator Riner

alleges personal experience observing such violations, identifying specific patients and time periods, *id*. ¶¶ 158-59, 162-75; and conversations with others, *id*. ¶¶ 156, 160-61.

Defendant further argues that a regulation outlining who may certify and recertify, 42 C.F.R. § 424.20, may not "ground Relator's FCA/GFMCA action," Doc. 73-1 at 21, but it does not. Relator cites the certification rule as one that Defendant violated, Doc 68 ¶¶ 148-50, but she also cites 42 C.F.R. § 483.30 and relates improperly-classified patients, discussed above. The categorizations themselves are the clear focus of Count Two. *See, e.g.*, *id*. ¶¶ 182-84.

Defendant also argues that "Relator's own allegation that physicians oversaw the patients she treated . . . shows that this basic requirement [that non-physicians collaborate with physicians] was met." Doc. 73-1 at 22. Again, it is simply no contradiction to state both that (1) physicians were responsible for supervising or collaborating with nonphysician providers, and (2) they failed to meet that responsibility. By merely being *assigned* to oversee a nurse, a physician has not provided "medical direction and appropriate supervision." *Id*.

### c. Relator Riner adequately pleads the submission of false claims arising from deficient/nonexistent physician visits

Other than arguing Relator Riner failed to allege false claims *submitted* for deficient or nonexistent physician visits, Defendant does not move to dismiss the

claims on this scheme.  *See* Doc. 73-1 at 22-25.  But Relator Riner is not required

to submit examples of submissions of every type of false claim.  *Rutledge*, 2015

WL 2238786, at *12; *see also infra* at 18-20.  Rather, Relator Riner must allege

that false claims were submitted for the visits and provide "indicia of reliability."

Such allegations and "indicia of reliability" are in the Complaint; Defendant

simply omits them from its argument.  For example, Defendant first states that

Relator Riner's Complaint "does not allege that [an allegation] resulted in the

submission of any claim by CPC."  Doc. 73-1 at 22-23 (citing Doc. 68 ¶ 200).  The

paragraph at issue refers to "this patient visit," which refers to the visit discussed in

the preceding paragraph.  *See* Doc. 68 ¶ 200.  In that immediately-preceding

paragraph, the Complaint alleges that the physician "nevertheless used billing code

99306 to charge Medicare for this visit, instead of billing code 99308, so that

Defendant would receive a higher reimbursement from Medicare."  Doc. 68 ¶ 199.

     Defendant also takes issue with "passive formulations" such as "so that

Defendant would receive a higher reimbursement," Doc. 73-1 at 23-24, but the

active allegation is in *the very same sentence*: "Dr. Hawkins nevertheless used

billing code 99306 to charge Medicare for this visit."  Doc. 68 ¶ 199.  Defendant

complains that the Complaint "does not even allege a process by which billing

codes entered by physicians would have resulted in claims," Doc. 73-1 at 23.  But

the Complaint states: "Institutional health care providers, including Defendant, submit claims for payment from Medicare on CMS form UB-04, or CMS-1450 . . . or similar forms," and that such forms include "81 fields, including procedural codes that indicate the type of medical procedure and professional service rendered," with submission of such forms "required for payments" by the government and such information verified as "true, accurate and complete," with similar allegations regarding Medicaid.  Doc. 68 ¶¶ 51-54, 59-60.

Regarding the submission of claims for four examples of physicians recording patient examinations that did not take place, Defendant argues that "Relator does not provide any details, including such basic facts as who billed Medicare (including even the type of provider—SNF or physician—each of which is subject to different methodologies), for what services, or whether CPC knew of any alleged false charting."  Doc. 73-1 at 24.  Those allegations, again, are clear from the Complaint, including sometimes in the same paragraphs Defendant cites. Defendant billed and its physicians charted the visits, *see, e.g.*, Doc. 68 ¶¶ 191-94, 197, 203-08; they billed for physician visits, Doc. 68 ¶¶ 204-08; and Defendant and its physicians knew, *see, e.g.*, Doc. 68 ¶¶ 203-09.  Accordingly, the Complaint withstands even the isolated scrutiny that Defendant applies to the allegations of actual submissions, which, again, is not the appropriate Rule 9(b) "indicia of

reliability" standard.  *See Clausen*, 290 F.3d at 1311.

Defendant again misleadingly isolates a single part of Relator Riner's Complaint, citing a portion of Paragraph 208 to argue that "speculation" does not satisfy Rule 9(b).  Doc. 73-1 at 24-25.  Relator Riner has alleged far more than speculation.  The *very same paragraph* from which Defendant only quotes a brief excerpt also includes the following bases for her allegations that Defendant actually submitted the claims: her observations of Defendant's other FCA violations, her discussions regarding Defendant's other FCA violations, evidence supporting those observations and conversations, and her receipt and knowledge of instructions to meet visit quotas for revenue purposes.  Doc. 68 ¶ 208.

While Defendant chooses which portions of the Complaint to address or ignore in its briefing, the totality of the Complaint—including the fact that "an obvious reason to knowingly falsely chart physician visits is to bill and receive money from the government," *id*.—demonstrates why Relator Riner plausibly "believes Defendant[] submitted false or fraudulent claims."  *Rutledge*, 2015 WL 2238786, at *12 (citations omitted).

### d.  The Complaint offers "indicia of reliability" of submitted claims

Relator Riner attaches records for Patients H.B. and C.A to support her allegations that Defendant actually submitted claims to the government.  Docs. 68-

1; 68-2.  Defendant argues that the "allegations regarding H.B. are substantially

unchanged from her FAC and still fail to establish the submission of *any* false

claim."  Doc. 73-1 at 16 (emphasis supplied).  They were sufficient then, and they

remain so now.  When the records for Patient H.B. were attached to the First

Amended Complaint, the Court observed that "the quality of allegations about

Patient H.B." had "significant differences" from some of the allegations.  Doc. 65

at 15.  Although Relator Riner notes that providing an example as to every

allegation is not required, the Court appeared to conclude that the H.B. records

would constitute appropriate "indicia of reliability" for the allegations that

Defendant submitted false claims regarding required physician visits under 42

C.F.R. § 483.30.  *See id*. at 14-15.

Relator Riner similarly asserts that Patient C.A.'s services (Doc. 68-2) were

not medically reasonable and necessary and that he was erroneously designated as

"skilled."[4]  Doc. 68 ¶¶ 130-33, 171-74.  Defendant argues that a nurse practitioner

was permitted to perform all physician tasks for C.A. because he was a Medicare

---

[4] Defendant notes that Dr. Weber's provider number indicates that C.A. received
more than only two physician visits.  Doc. 73-1 at 19 n.7.  Even if that were true,
which is a fact issue disputed by C.A.'s "repeated pleas and demands to see a
doctor," Doc. 68 ¶ 116, the records would still provide indicia of reliability of false
claims being submitted, because significant time periods remain in which C.A. was
required to be seen by a physician but was not, and physicians did not provide non-
physician providers the requisite supervision or collaboration to adhere to
requirements to ensure services and categorizations are medically necessary.

Part B, not Part A, patient.  Doc. 73-1 at 17-19.[5]  But again, as discussed above,

Relator Riner alleges facts demonstrating that, even if a nurse practitioner were

allowed to perform some or all of the physician visits under certain circumstances,

such circumstances were not met here.  Thus, C.A.'s records support false claims

that patients were classified as "skilled" without a proper physician's assessment,

and that the services provided, therefore, were not medically necessary, and were

in fact, worthless services, which is the case regardless of which Medicare Part

Defendant billed.  Doc. 68 ¶¶ 131, 133, 172, 174.  Accordingly, Exhibit 1 and

Exhibit 2 are representative samples of Defendant billing for and receiving money

on claims without confirming that services and categorizations were medically

necessary.

    As a more basic matter, however, Relator Riner does not need to "establish"

the submission of false claims with actual evidence, Doc. 73-1 at 15-16; she must

allege them.  The heightened pleading standard for FCA claims simply requires

that, as to actual submissions of false claims, a plaintiff may not only "describe a

private scheme in detail but then . . . allege simply and without any stated reason

---

[5] As discussed in Relator Riner's response to Defendant's Request for Judicial
Notice, the claims-processing manual Defendant attaches as Exhibit C is not
appropriate for judicial notice, because the truth for which it is asserted is not an
indisputable fact.  The same is true of the Exhibit B CMS memorandum and the
website Defendant discusses in Footnote 5.  Doc. 73-1 at 16-17 n.4; 18 n.5.

for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *Clausen*, 290 F.3d at 1311.  Rather, "some indicia of reliability must be given in the complaint to support the allegation of *an actual false claim* for payment being made to the Government."  *Id.* (emphasis in original).  But not for *every* alleged false claim.  A relator does not have to prove her case at the pleading stage and there is no one way to show the "indicia of reliability" to allow FCA claims to proceed:

> Providing exact billing data—name, date, amount, and services rendered—or attaching a representative sample claim is one way a complaint can establish the necessary indicia of reliability that a false claim was actually submitted.  However, there is no per se rule that an FCA complaint must provide exact billing data or attach a representative sample claim.

*U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x 693, 704 (11th Cir. 2014) (citations to published Eleventh Circuit opinions omitted).  *Clausen* is also instructive, listing several "types of information that might have helped" the plaintiff state a claim but holding that it "does not mandate *all* of this information for *any* of the alleged claims."  *Clausen*, 290 F.3d at 1312, 1312 n.21.

Again, only "*some* of this [billing claims] information for at least *some* of the claims must be pleaded in order to satisfy Rule 9(b)" to demonstrate that the

defendant made an "actual claim for payment and not just a preparatory scheme."
*Id.* (emphasis added)).  This is especially so where, as here, a relator alleges FCA
violations over a long period of time and involving policies that encompassed
many separate claims.  To require otherwise would result in courts dismissing any
FCA complaint where unlawful practices are widespread across multiple locations
over multiple years, because a relator would have great difficulty providing
examples for every act in every facility.  And the bigger and longer-lasting a FCA
defendant's fraudulent scheme, the better chance it would have to avoid liability.
Indeed, *Clausen* anticipated this issue, holding that a relator "alleging prolonged
multi-act schemes" would only be required to "allege at least *some* examples of
actual false claims to lay a complete foundation for the rest of his allegations," not
submit evidence for each claim or otherwise prove his case at the pleading stage.
*Id*. at 1314 n.25 (emphasis supplied).  In sum, examples are enough for the
required "indicia of reliability" and Relator Riner has provided examples.

    Further, even if Defendant's arguments were sufficient basis to disregard
these two examples, which they are not, Relator Riner does not base her allegations
that claims were submitted only on the examples of Defendant's billing records she
attaches to the Complaint.  Relator Riner also alleges personal experience and
conversations with others as an employee of Defendant, including at facility and

annual meetings, in which Defendant's billing for and accepting payment from the government was observed and/or explicitly discussed with Relator Riner. *See, e.g.*, Doc. 68 ¶¶ 40-41, 93-95, 157.

Relator Riner was told that she needed to assign and re-certify patients to "skilled services" to procure payment from the government; the Vice President of Compliance & Quality told her, "one facility was tens of thousands of dollars behind in reimbursement money because of providers being slow to sign them;" and an employee managing billing at a facility discussed billing for and accepting payment from the government for a patient's "skilled" services despite Defendant's knowledge that the patient was too sick to qualify. *Id*. ¶¶ 158-60. These are the very types of allegations that the Eleventh Circuit has upheld as sufficiently alleging actual submissions, even when alleged only individually *and* in the absence of the examples Relator Riner provides. *See Mastej*, 591 F. App'x at 706-10; *U.S. ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1230 (11th Cir. 2012); *U.S. ex rel. Walker v. R&F Props. of Lake Cnty., Inc.*, 433 F.3d 1349, 1360 (11th Cir. 2005).

Finally, Relator Riner alleges that Defendant's violations occurred at its facilities across Georgia. Doc. 68 ¶ 11. Relator Riner bases these allegations on (1) her personal observations of the unlawful practices occurring at facilities she

witnessed pursuant to policies that were in effect at all of Defendant's facilities, (2) her personal observations of a doctor who engaged in false claims and knowledge that he also operated at other facilities, (3) annual meetings at which physicians and other providers who operated at other facilities stated the unlawful practices were occurring at those facilities, and (4) her general understanding, fostered as soon as her hiring, that all of the entities under Defendant's umbrella, including the facilities, are acting in concert. *See, e.g.*, *id*. ¶¶ 3, 14-32, 40-41, 95, 161, 202.

Defendant argues that these allegations constitute "rumors and conjecture," and therefore Relator Riner has failed to plead these violations. Doc. 73-1 at 25-26. This is not true. Relator Riner's allegations, such as provider colleagues explicitly stating to her that the same violations are occurring at their facilities or hearing corporate presentations to personnel across facilities is far from mere "rumors and conjecture." Defendant cites *Mastej*, which is inapt to its argument, and actually supports Relator Riner's position. That case involved a whistleblower who alleged that, through his employment with the Defendants, he knew about the defendants' submission of claims. 591 F. App'x at 708. The Eleventh Circuit held that, by having access to such information as "case management meetings" in which patients and billing were discussed, the relator had *not* based "his knowledge on rumors or mere conjecture," and the trial court's order dismissing

the case was error.  *Id*. (citations omitted).  Similarly, Relator Riner was "in the room" where the information was shared, not relying on second-hand statements. *See also Hill*, 2003 WL 22019936, at *4 ("[S]he had firsthand information about [the defendant]'s internal billing practices and the manner in which the fraudulent billing schemes were implemented.").

Further, as set forth above, if detailed allegations for every facility alleged to have engaged in the wrongdoing was required, then a multi-facility corporation could likely never be held to account because whistleblowers are unlikely to have specific levels of knowledge at multiple locations—and the law does not require it.

### e.  Relator has sufficiently alleged materiality

In passing, Defendant argues that the Complaint "offers no factual allegations showing that Medicare would deny payment."  Relator Riner amply alleges that the false claims were material.  Factors relevant to materiality include whether the requirement is a condition of the government's payment, whether misrepresentations went to the essence of the bargain, and the government's behavior.  *U.S. ex rel. Bibby v. Mortg. Inv. Corp.*, 987 F.3d 1340, 1347 (11th Cir. 2021).  Relator Riner alleges that Defendant swore that services were medically reasonable and necessary and patient classifications were appropriate, as the government required it to swear, when it knew they were not.  *See, e.g.*, Doc. 68 ¶¶

64-71, 121-24, 128, 131, 139, 169, 172, 182, 184, 187, 214; *see, e.g.*, *Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1105 (11th Cir. 2020) (holding "affirmative misrepresentations" to be material because they, like Defendant's frauds, "go[] to the essence of the parties' economic relationship"). Such allegations of materiality simply cannot be assumed away at the pleading stage.

### f.  Relator has adequately alleged worthless services

Defendant makes a fleeting contention that Relator Riner has not alleged that some care was worthless. It is not true that Relator Riner uses a lack of "improvement level after receiving care" as the "benchmark" of such allegations, as Defendant claims. Instead, she alleges that some of the services were "so deficient that for all practical purposes" they were nonexistent, because they were not medically reasonable and necessary. Doc. 73-1 at 20; Doc. 68 ¶¶ 121, 123, 128, 131, 169, 172. This is sufficient. *See, e.g.*, *U.S. v. Crumb*, 2016 WL 4480690, at *24 n.39 (S.D. Ala. Aug. 24, 2016) (ruling that complaint alleged FCA liability for "worthless services" when it alleged services that were "not reasonable" and "not medically necessary," even when the term "worthless" was not in the complaint).

### CONCLUSION

At this pleading stage, Relator Riner's allegations, not the Defendant's gloss

on disputed issues of fact, must be accepted as true.  Relator Riner has stated

claims that Defendant has violated the FCA and GFMCA, and the Court should

deny the Defendant's Motion to Dismiss (Doc. 73).

This <u>3rd</u> day of August 2022.

**STACEY EVANS LAW**

/s/ Stacey Godfrey Evans
Stacey Godfrey Evans
Georgia Bar No. 298555
John Amble Johnson
Georgia Bar No. 229112
STACEY EVANS LAW
4200 Northside Parkway NW
Building One, Suite 200
Atlanta, Georgia 30327
Telephone: 770-779-9602
Facsimile:  404-393-2828
sevans@staceyevanslaw.com
ajohnson@staceyevanslaw.com

**THE CLAIBORNE FIRM P.C.**

/s/ William R. Claiborne
William R. Claiborne
Georgia Bar No. 126363
will@claibornefirm.com
410 E. Bay Street
Savannah, GA 31401
Telephone:  (912) 236-9559
Facsimile:  (912) 236-1884

**WOOLF LAW**

/s/ S. Wesley Woolf
S. Wesley Woolf
woolf@woolflawfirm.com
Georgia Bar No. 776175
408 East Bay Street
Savannah, GA 31401
Telephone:  (912) 201-3696
Facsimile:  (912) 236-1884

*Counsel for Relator*

## **LOCAL RULE 7.1(D) CERTIFICATE**

The undersigned counsel certifies that this Brief has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1.

This <u>3rd</u> day of August 2022.

/s/ Stacey Godfrey Evans
Stacey Godfrey Evans
Georgia Bar No. 298555

*Counsel for Relator*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I electronically filed the foregoing **RELATOR'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT (DOC. 73)** with the Clerk of Court using the EM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record.

This <u>3rd</u> day of August 2022.

/s/ Stacey Godfrey Evans
Stacey Godfrey Evans
Georgia Bar No. 298555

*Counsel for Relator*