**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF GEORGIA, *ex rel.* BETTY RINER,<br><br>  *Plaintiff-Relator*,<br><br>v.<br><br>COMMUNITY PRIMARY CARE OF GEORGIA, LLC (a/k/a Ga MedGroup),<br><br>  *Defendant*. | Civil Action File No.:<br><br>1:19-cv-04316-MLB |

# DEFENDANT COMMUNITY PRIMARY CARE OF GEORGIA, LLC'S REPLY TO RELATOR'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT

## ARGUMENT AND CITATION OF AUTHORITY

**I. Relator's SAC Fails to State a Claim Because CPC Does Not Own, Operate, or Control the Facilities at Issue.**

Whether Relator's allegations suffice to hold Community Primary Care of Georgia, LLC ("CPC") responsible for the alleged acts of a host of other entities has been a central issue in this litigation since Relator's first Complaint amendment. In its Order dismissing Relator's First Amended Complaint ("FAC"), this Court recognized that nursing home ownership and management is capable of accurate and ready determination by resort to a federal government website, www.Medicare.gov, whose accuracy cannot reasonably be questioned. (Doc. 65 ("Order") at 11-12.) Relator has provided no basis for this Court to favor her bald allegations over the clear public record. (Order at 10-11 n.4 (citation omitted)); *Self v. BellSouth Mobility, Inc.*, No. 2:98-CV-02581-JEO, 2006 WL 8437245, at *4 (N.D. Ala. Sept. 29, 2006); *Bouton v. Ocean Properties, Ltd.*, 201 F. Supp. 3d 1341, 1345-48 (S.D. Fla. 2016); § 5104 *Facts Judicially Noticeable; Indisputability*, 21B FED. PRAC. & PROC. EVID. § 5104 (2d ed.). Instead, she merely repeats those allegations, many of which are actually inconsistent with a theory of CPC's ownership and control of the facilities. Indeed, Relator's briefing describes, among other things, "an 'umbrella' of interrelated companies" and that "[CPC] operates as part of" this

1

umbrella. (Response at 5, 7.) These allegations portray mere affiliation; they do not show control by any single entity, much less that *CPC* had "such control."[1] (Doc. 76 ("Response") at 8-9.)

Relator asserts that she "alleges more" than the factual allegations in *U.S. ex rel. Heller v. Guardian Pharmacy, LLC*, 521 F. Supp. 3d 1254, 1280 (N.D. Ga. 2021). (Response at 9.) But the "more" Relator alleges—certain commonalities in addresses, agents, and officers—falls far short of what would be required to disregard CPC's corporate form. *U.S. ex rel. Schaengold v. Mem'l Health, Inc.*, No. 4:11-CV-58, 2014 WL 6908856, at *13 (S.D. Ga. Dec. 8, 2014). Relator's SAC simply does not allege facts sufficient to support a veil piercing theory of liability.

Relator's attempt to retrofit the allegations in her SAC into a theory of vicarious liability is just her latest effort to obscure each individual entity's purported role in the purported FCA "schemes." Recall that, originally, Relator

---

[1] Relator asserts that CPC does not dispute that it "controls" the facilities at issue. (Response at 6 n.3.) Yet Relator ignores that CPC's request for judicial notice asks that "this Court notice public records showing that CPC did not own, manage, **or control** any of the nursing homes…." (Motion at 5 (emphasis added).) Further, the judicially noticeable documents show that CPC does not have "operational/managerial control" over any of these facilities. (*See* Doc. 72 Exh. A-DDD.) And as Relator herself pleads, these documents show that "Ethica/Clinical Services"—*not CPC*—"is listed as having operational control of all but one of the facilities." (Response at 6 n.3.) And CPC is not identified as the entity with operational/managerial control over the remaining facility. (*See* Doc. 72 Exh. F.)

alleged at least eleven separate schemes involving at least seven distinct healthcare provider types carried out by five defendants, with CPC's alleged role limited to managing physician services. (Doc. 1 ("Compl.") ¶ 8.) In the wake of the defendants' motions to dismiss that complaint, in part because Relator could not identify which defendant was supposedly responsible for which alleged conduct, Relator chose to dismiss all defendants except her former employer, CPC, contending for the first time in her dismissal notice that CPC "own[ed] and control[led] all other entities originally named in [Relator's original] complaint." (Doc. 40 at 2.) CPC's counsel immediately insisted that Relator remove this inaccurate assertion, and Relator complied. (Doc. 41 at 2.)[2] Thus, even before being confronted with public records showing CPC's lack of ownership and control over the nursing facilities, Relator was aware that CPC only managed physician services, and she was on notice that CPC did not own or control the other defendants, including the facilities.

Relator strategically chose to craft a "streamlined" FAC and SAC that eliminated all defendants except CPC rather than parse which of the original

---

[2] Relator acknowledged in her response to CPC's motion to dismiss her FAC that CPC had insisted on this change. (Doc. 54 at 9 n.2.) At CPC's counsel's request, Relator also removed an inaccurate allegation that CPC is the successor entity to CHS-Ga and Eldercare Pharmacy. (*Compare* Doc. 40 at 3 *with* Doc. 41 at 3.)

3

defendants were allegedly responsible for which conduct. (*See* Doc. 54 at 8-9.) Relator was master of her pleadings, including who to sue and what claims to bring. *See Lincoln Property Co. v. Roche*, 546 U.S. 81, 91 (2005). It is not up to CPC to write her Complaint. Nevertheless, CPC has been transparent throughout that it is not responsible for the operations of any nursing facility, hospice, or therapy provider. Rule 9(b) required Relator to plead the "who, what, when, where, and how" of her fraud scheme. *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005). She cannot overcome her inability to meet this burden by shifting it to CPC.

**II. Relator's SAC Fails to State a Claim against CPC Because She Has Failed to Plead False Claims with the Required Particularity or Materiality.**

*A. Relator Misstates the Applicable Pleading Standards*

CPC's initial brief sets forth the correct pleading standards applicable to False Claims Act actions. (Doc. 73-1 ("Motion") at 5-6; Order at 15.) Unable to meet those standards, Relator seeks to recast them and in doing so, misstates them in at least two ways. First, Relator's contention that "[d]ismissal is *only* appropriate 'where it is clear that the plaintiff can prove no set of facts in support of the claims in the complaint'" is incorrect. (Response at 11 (quoting *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018)) (emphasis added).) *Patel* did in fact hold that dismissal is appropriate in those circumstances, but it did not hold that dismissal is appropriate *only* in those circumstances. 904 F.3d at 1321. Indeed,

4

the Supreme Court expressly rejected that standard "as an incomplete, negative gloss on an accepted pleading standard" that "has earned its retirement" and is "best forgotten." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007).

Second, Relator misrepresents the Rule 9(b) pleading standard, maintaining that she need only plead details of the alleged fraud and not details of any resulting claims. She states that at the pleading stage, even under Rule 9(b), "a plaintiff is not expected to actually *prove* [her] allegations" and that courts defer to properly-pleaded complaint allegations. (Response at 3-4 (quoting *U.S. ex rel Clausen v. Lab'y Corp. of Am., Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002))(emphasis added by Relator).) However, Relator pointedly omits the next sentence of the *Clausen* quote: "But we cannot be left wondering whether a plaintiff has offered mere conjecture or a specifically pleaded allegation on an essential element of the lawsuit." *Id*.

The actual pleading standards supplied by the Federal Rules of Civil Procedure, as interpreted by the Supreme Court and Eleventh Circuit, are higher than those advocated by Relator through her selective editing of *Patel* and *Clausen*. Relator cannot meet these standards, and her SAC must be dismissed.

5

### B. *Relator Fails to State a Claim Based on Lack of Required Physician Visits or Patient Misclassification*

The first two counts of Relator's SAC—alleging that without adequate physician oversight, patients were misclassified as "skilled" and that medically unnecessary services were provided—turn entirely on her misapplication of 42 C.F.R. § 483.30. In its Order dismissing her FAC, the Court instructed her to address with particularity what CPC correctly pointed out: that § 483.30 allows performance of nursing facility physician tasks by certain non-physicians who are not employees of the facility and who are working in collaboration with a physician. (Order at 14-15.)

Relator contends that she has done so by her bare allegations that the non-physicians were employees of the facilities and the physicians did not provide the non-physicians with oversight, assistance, or meaningful collaboration. (Response at 11; SAC ¶¶ 90-92.) But as alleged by Relator, *CPC* employed the non-physicians, including her. (SAC ¶¶ 19, 39, 149.) And as shown in the public record, CPC does not own or manage the facilities, meaning that the non-physicians are not employed by the facilities. Relator's inability to make that round peg fit the square hole of her theory of the case apparently explains why, instead of taking advantage of being allowed to amend her complaint to state claims against the actual

operators of the facilities, she has persisted in maintaining that CPC is the facility operator despite judicially noticeable public records showing that it's not.

Relator also tries to backpedal from her conflicting allegations regarding physician oversight by arguing that it is no contradiction to say that physicians were delegated or assigned to oversee her, but did not. (Response at 11-13.) But her SAC does not allege some ephemeral delegation or assignment of oversight—it alleges *actual* oversight. (*Id.* ¶¶ 18, 19.)

To the extent that Relator now intends to acknowledge the actual oversight exercised by physicians but to quibble with the quality or extent of that oversight, her claims fare no better. Relator does not allege any facts that would plausibly establish a certain level or quality of oversight that is required, a materiality threshold below which Medicare would deem any claims not payable, that physicians failed to meet these unstated standards, or that any claims were submitted with the knowledge that such standards had not been met.

Further, Relator's SAC examples do not support her conclusory allegations of clinical judgment override. For example, Relator alleges that when she had not signed forms assigning patients to "skilled services," CPC instructed that she do so. (SAC ¶ 158.) But Relator does not articulate why she had not signed the forms in the first place or that she ultimately signed them against her own clinical

7

judgment. And instructions to sign certifications as quickly as possible suggest only an impetus towards timely administrative processing having nothing to do with clinical judgment of medical necessity. (*Id.* ¶ 158.) Likewise, allegations of patients receiving services without having seen a physician does not mean that patient care was administered against anyone's independent clinical judgment. (*Id.* ¶¶ 162-65.) Finally, Relator provides no detail regarding the discussions she allegedly had with others to support her conclusory allegations on this claim. (*Id.* ¶¶ 156, 160, 161.) In short, Relator relies on irrelevancies, speculation, and innuendo, and does not plead this scheme with particularity.[3]

### C. Relator Fails to State a Claim Regarding Allegedly Deficient or Nonexistent Doctor Visits

Relator argues that failure to plead the submission of false claims is not fatal because her allegations are supported by other "indicia of reliability." (Response at 13-14.) But her first exemplar—alleging that a doctor used billing code 99306 instead of 99308 to receive a higher Medicare reimbursement—does not indicate any impropriety, let alone submission of a false claim. (*Id.* at 14; SAC ¶ 199.) Since,

---

[3] Relator also tosses out the red herring that "[CPC] does not deny that patients were certified against nurse practitioners' clinical judgment." (Response at 12.) To be clear, if CPC had answered Relator's SAC, it would have denied such an allegation. But at this juncture, CPC is limited to pointing out the deficiencies in her SAC, not denying its allegations.

as alleged by Relator, this was the doctor's first visit with the patient, code 99308—which is used only for "subsequent nursing facility care"—would have been inappropriate.[4] (SAC ¶ 198.) This allegation continues a pattern: whenever Relator ventures beyond bald allegations into specifics, her claims are exposed as baseless.

Moreover, a physician's entry of a procedure code does not mean that a claim was actually submitted. Conclusory allegations about the forms a practice uses to submit claims, without any allegations about the processes to complete and submit those forms, do not sufficiently allege the submission of a false claim or establish indicia of reliability that false claims were in fact submitted. *See, e.g. U.S. ex rel. Boros v. Health Mgmt. Assocs., Inc.*, No. 4:10-CV-10013-KMM, 2012 WL 5304172, at *2 (S.D. Fla. Oct. 25, 2012).

Relator's next four exemplars likewise fail to show reliable indicia that false claims were actually submitted. (Response at 15-16.) Relator argues that her

---

[4] *See* "Billing & Coding: E&M Services in a Nursing Facility" available at https://www.cms.gov/medicare-coverage-database/view/article.aspx?articleId=57724&ver=4, which states that code 99308 is to be used for "subsequent nursing facility care." CPC requests judicial notice of this publicly available information on the government's website. *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015). Also, her allegation that the doctor spent "less than 15 minutes" with the patient does not render billing 99306 improper, as that code states only that "**typically**, 45 minutes are spent at the bedside **and** on the patient's facility floor or unit" completing various tasks, including examination, medical decision making, and coordination of care. *Id.*; (SAC ¶ 199)(emphasis added).

allegations suffice because she states that "Defendant billed" for the physician visits. (*Id.* at 15.) But the bare statement that "Defendant billed" contains none of the details required by Rule 9(b). Moreover, Relator's pleading trick of "streamlining" her allegations to be lodged against CPC alone renders that phrase ambiguous. By inexplicably treating CPC as the operator of a physician group, nursing homes, therapy providers, and hospices, she has made it impossible to parse the necessary ""who," "what," "where," "when," and "how" of fraudulent submissions to the government. *Corsello*, 428 F.3d at 1014.

Finally, as to SAC Paragraph 208, describing allegedly deficient patient care schemes (which CPC discussed at length in its Motion), on the one hand, and pleading the submission of actual false claims from those schemes, on the other, are two different things, and Relator cannot substitute the former for the latter. *Clausen*, 290 F.3d at 1311. As discussed in the following section, Relator does not sufficiently allege "other circumstances sufficient to explain why she believes [CPC] submitted fraudulent claims." *Rutledge v. Aveda*, No. 2:14-CV-00145-AKK, 2015 WL 2238786, at *12 (N.D. Ala. May 12, 2015).

### D. *Relator Fails to Offer Indicia of Reliability of Submitted Claims*

Relator posits the straw man that she does not have to prove her case at the pleading stage by providing actual evidence of every false claim submitted to the

10

government. (Response at 18-19.) Of course, that isn't the standard. But she must plead with particularity indicia of reliability to support the allegation of an actual false claim. *Clausen*, 290 F.3d at 1311. Relator's proffered indicia—two patients' billing records and her alleged personal experiences—do not meet the standard.

Indeed, the patient billing records submitted by Relator actually show the *un*reliability of her false claims allegations. Regarding Patient H.B., she offers only: (1) a conclusory assertion of sufficiency; and (2) an inference "that the Court appeared to conclude" that the record provided appropriate indicia of reliability. (Response at 16-17.) But Relator's conclusory assertion does nothing to counter CPC's arguments, and her inference appears to be based only on this Court's summation of CPC's briefing, not an evaluation of sufficiency. (Order at 15 (expressly deferring ruling on the issue).) Relator's argument as to C.A.'s records simply recaps her arguments that conditions were not met for physicians' delegation of tasks to non-physicians. (Response at 17-18.) But, as discussed above and in CPC's motion to dismiss, Relator has not plausibly alleged non-compliant delegation or that any such non-compliance would be material to payment.[5] Thus, neither record evidences instances of *false* claims with respect to these two patients.

---

[5] Relator also argues that "C.A.'s records support false claims that patients were classified as 'skilled' without a proper physician's assessment, and that the

11

Nor do Relator's alleged personal experiences provide sufficient indicia of reliability, as demonstrated by her cited cases. (Response at 20-21.) In *U.S. ex rel. Walker v. R & F Props. of Lake County, Inc.*, the Eleventh Circuit held that Rule 9(b) was satisfied because the relator conversed with a specifically identified office manager who explained defendant's policy of *always* fraudulently billing nurse practitioner services as incident to the services of a physician. 433 F.3d 1349, 1360 (11th Cir. 2005). In contrast, Relator alleged a discussion with a billing manager regarding a single allegedly misclassified patient, but she does not specifically identify that manager or what the manager told her, if anything, about claims submissions. (SAC ¶ 160.) Moreover, she does not supply details regarding any alleged patient to plausibly indicate that any claim—if one were properly alleged—would be false. (*Id.*)

*Matheny*, *Mastej*, or *Hill* also do not support Relator's argument, as each of those relators held positions that afforded firsthand knowledge of claim submissions that gave their allegations indicia of reliability. *See U.S. ex rel. Matheny*

---

services provided, therefore, were not medically necessary, and were in fact, worthless services, which is the case regardless of which Medicare Part Defendant billed." (Response at 18.) Here again, Relator displays the ignorance of Medicare requirements that seems to be driving her claims. There is no requirement that a physician "classify" a Medicare Part **B** patient as "skilled," and Relator doesn't cite any law or regulation imposing such a requirement.

12

*v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1230 (11th Cir. 2012); *U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x 693, 708-09 (11th Cir. 2014); *Hill v. Morehouse Med. Assocs., Inc.*, No. 02-14429, 2003 WL 22019936, at *4 (11th Cir. Aug. 15, 2003). Relator, in contrast, fails to set forth such allegations of firsthand knowledge.

Finally, Relator failed to "identify the specific facilities at which she claims [CPC] engaged in [] misconduct and [] plead that fraud with particularity" as the Court required. (Order at 13.) In her brief, Relator overstates allegations in her SAC to prop up her deficient allegations. For example, Relator states in her brief that her allegations of company-wide violations were based in part on "her personal observations of the unlawful practices occurring at facilities she witnessed pursuant to policies that were in effect at all of Defendant's facilities." (Response at 21-22.) But Relator's SAC alleges no company-wide policies. There's only a vague statement that certain experiences "[**gave] her reason to believe** that these violations occurred throughout all of [CPC's] facilities as a matter of [CPC's] policy." (SAC ¶¶95, 61 (emphasis added).) Contrary to a statement in her brief, there is no allegation in her SAC of "colleagues explicitly stating to her that the same violations [were] occurring at their facilities." (Response at 22.) The SAC states this allegation more tepidly—that colleagues "shared her concerns," which

13

could as easily mean that they shared a concern that whatever Relator told them would have been improper, not that they experienced it themselves or that it resulted in false claims. (*Id.* ¶ 161.) Her allegations that 1) a doctor who allegedly "engaged in false claims and [. . .] operated at other facilities" and 2) all entities under CPC's umbrella acted in concert, does not raise her assertion of company-wide violations beyond rumor and conjecture. *Mastej*, 591 F. App'x at 705.

### E. *Relator Has Not Sufficiently Alleged Materiality*

Relator relies on purported regulatory violations for the SAC counts alleging medically unnecessary treatment due to provider understaffing and patient misclassification. Yet she does not identify which of the numerous entities that she (incorrectly) asserts were operated by CPC were responsible for complying with each respective regulation. Nor does she identify which entity or entities submitted claims that were connected to any purported regulatory violations. Without the details of which regulated entity subject to which set of regulations did what, it is impossible to determine beyond speculation that any alleged regulatory violations would have been material to any claim for payment. Relator's Response does not explain how she can satisfy the rigorous materiality requirement in the absence of such detail. Thus, Relator fails to allege a material falsity with respect to these counts.

### *F. Relator Has Not Sufficiently Alleged a "Worthless Services" Theory*

Relator argues that she states a worthless services claim because some of the services were "so deficient that for all practical purposes" they were nonexistent. But as every single reference in the SAC to "worthless" services makes clear, that allegation is premised on the purported lack of a "physician's assessment" that the services were medically necessary. (SAC ¶¶ 121, 123, 128, 131, 169, 172.) This claim fails because, as already discussed, there was no requirement for a "physician assessment." There is no false claim for failure to comply with a non-existent requirement.[6]

## III. Conclusion

Even with the benefit of guidance from this Court's Order, Relator still has not stated any valid claim against CPC. Her SAC should be dismissed in its entirety.

Respectfully submitted this 17th day of August, 2022.

---

[6] The Eleventh Circuit has not addressed the "worthless services" theory of FCA liability. But where it is recognized, performance of the service must be so deficient that for all practical purposes it is the equivalent of no care at all. *U.S. ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.*, 764 F.3d 699, 710 (7th Cir. 2014). Relator fails to state a claim under a "worthless services" theory.

15

ARNALL GOLDEN GREGORY LLP

*/s/ Glenn P. Hendrix*
Glenn P. Hendrix, Esq.
Georgia Bar No. 346590
W. Jerad Rissler
Georgia Bar No. 142024
171 17th Street, Suite 2100
Atlanta, Georgia 30363-1031
404.873.8500
glenn.hendrix@agg.com

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this pleading was prepared using Book Antiqua 13-point font in accordance with Local Rule 5.1(C).

This 17th day of August, 2022.

*/s/ Glenn P. Hendrix*
Glenn P. Hendrix
Georgia Bar No. 346590

## CERTIFICATE OF SERVICE

I hereby certify that on August 17th, 2022, I electronically filed the foregoing **DEFENDANT COMMUNITY PRIMARY CARE OF GEORGIA, LLC'S REPLY TO RELATOR'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all Counsel of Record.

*/s/ Glenn P. Hendrix*
Glenn P. Hendrix
Georgia Bar No. 346590

ARNALL GOLDEN GREGORY LLP
171 17th Street NW
Suite 2100
Atlanta, Georgia 30363-1031
Telephone: 404.873.8500
Facsimile: 404.873.8501