**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF GEORGIA, *ex rel.* BETTY RINER,<br><br>    *Plaintiff-Relator*,<br><br>v.<br><br>COMMUNITY PRIMARY CARE OF GEORGIA, LLC (a/k/a Ga MedGroup),<br><br>    *Defendant*. | Civil Action File No.:<br><br>1:19-cv-04316-MLB |

**DEFENDANT COMMUNITY PRIMARY CARE OF GEORGIA, LLC'S REPLY TO RELATOR'S RESPONSE TO DEFENDANT'S REQUEST TO TAKE JUDICIAL NOTICE**

Defendant Community Primary Care of Georgia, LLC ("CPC") hereby files this Reply Brief in Support of its Request for Judicial Notice in Support of Defendant Community Primary Care of Georgia, LLC's Motion to Dismiss Relator's Second Amended Complaint ("SAC").

**ARGUMENT AND CITATION TO AUTHORITY**

**I. The Documents Showing Ownership, Management, and Control of the Facilities at Issue are Proper Subjects for Judicial Notice.**

As this Court concluded in its Order dismissing Relator's First Amended Complaint ("FAC"),

> [T]he ownership and management of [the facilities specifically identified in Relator's FAC] is capable of accurate and ready

> determination by resort to www.medicare.gov, whose accuracy cannot reasonably be questioned. Accordingly, the ownership and management disclosure pages on www.medicare.gov for each of the [facilities specifically identified in Relator's FAC] are proper subjects for judicial notice.

(Doc. 65 ("Order") at 11-12.) But nowhere in Relator's Response to CPC's request for judicial notice of the ownership and management disclosure pages for the additional facilities listed in her SAC does she acknowledge this Court's prior ruling on this issue.

The Court declined to take judicial notice of the documents at that juncture for two specific reasons (i.e., they did not show historical ownership and management information and did not cover all facilities potentially encompassed by Relator's allegations). CPC addressed these concerns in its Motion to Dismiss Relator's SAC, noting that the documents do show historical information and that CPC has now presented documents for the additional facilities added in the SAC (which constitute the sum total of the facilities at issue in this litigation). (*Id.* at 12-13; Doc. 73-1 at 7.) Relator did not address these arguments either. Therefore, CPC requests this Court judicially notice these documents in adjudicating CPC's Motion to Dismiss Relator's SAC ("Motion").

Relator acknowledges, as she must, that a fact is judicially noticeable when it is not subject to reasonable dispute and can be accurately and readily determined

from sources whose accuracy cannot be reasonably questioned. (Doc. 77 ("Response") at 2.) And she does not contest this Court's finding that Medicare.gov is a source whose accuracy cannot reasonably be questioned. (Order at 11.) She contends, however, that this Court should not notice the documents because "at the motion to dismiss stage . . . all well-pleaded facts are accepted as true [.]" (Response at 5 (citation omitted).) Yet even at the motion to dismiss stage, the Court is not required to accept conclusory and unsupported allegations that are contrary to judicially noticeable facts. *Self v. BellSouth Mobility, Inc.,* No. 2:98-CV-02581-JEO, 2006 WL 8437245, at *4 (N.D. Ala. Sept. 29, 2006) (citation omitted).

Relator urges that these documents should not be noticed because the facts for which they are offered are "heavily disputed." (Response at 6-7.) But in the context of determining whether a court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment, "'undisputed' means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). "A document posted on a government website is presumptively authentic if government sponsorship can be verified by visiting the website itself." *Qui Yun Chen v. Holder*, 715 F.3d 207, 212 (7th Cir. 2013). At no point has Relator questioned the authenticity of the public records at issue.

3

Nor has Relator reasonably disputed the facts presented in the documents, as she could have by offering a reputable source disputing facts from CPC's sources. § 5104 *Facts Judicially Noticeable; Indisputability*, 21B FED. PRAC. & PROC. EVID. § 5104 (2d ed.); Fed. R. Evid. 201(e) (allowing an opportunity to be heard "on the propriety of taking judicial notice and the nature of the fact to be noticed"). CPC highlighted this in the briefing on its motion to dismiss Relator's FAC. Thus, Relator was aware of this mechanism for challenge even before filing her SAC. (Doc. 59 at 10-11.) Relator has had ample opportunity to present any evidence she might muster to dispute the facts shown in the public records, and her failure or inability to exercise that opportunity provides no basis to deny judicial notice to the facts reflected in the proffered federal government records.[1]

---

[1] Relator pulls a sentence from CPC's brief stating that it "does not own or manage the nursing homes at issue" to argue that CPC has not denied control over the facilities and does not claim that the documents submitted show lack of control. (Response at 3.) Relator ignores that CPC has "renew[ed] its request that this Court notice public records showing that CPC did not own, manage, **or control** any of the nursing homes identified in the SAC during the relevant time period." (Doc. 73-1 at 5 (emphasis added).) Further, the judicially noticeable documents submitted to the Court show that CPC does not have "operational/managerial **control**" over any of these facilities. (*See* Doc. 72 Exh. A-DDD (emphasis added).) Nonetheless, for the avoidance of doubt, CPC hereby unequivocally denies its ownership, management, **and control** over the facilities at issue.

Disregarding authority describing what constitutes "reasonable dispute" of matters presented for judicial notice, Relator relies on a rehash of her SAC allegations to attempt to establish CPC's operational and managerial control of the facilities at issue. (Response at 4, 6-8.) Relator argues that the proffered documents support her allegations because they state that Clinical Services, Inc. ("Clinical Services") has "operational/managerial control" over the facilities, and she has alleged unity between CPC and Clinical Services. (*Id*.) But, as argued in CPC's briefing on its motion to dismiss Relator's SAC, her allegations of shared website links, offices and officers, and administrative functions do not overcome the separate corporate identities of these entities. (Doc. 73-1 at 9.) And her remaining bare allegations—i.e. that CPC was formerly known as CHS-Ga, which was also known as Ethica, which is a name under which Clinical Services Inc. does business—do not trump judicially noticeable facts that contradict those allegations, especially as she has presented no reputably sourced documentary evidence of her own in support. (Response at 4); *Self*, 2006 WL 8437245, at *4. Relator's conflation of affiliation and control is no reason to disregard clear public records showing that entities other than CPC own, operate, and control the nursing homes and, by law, are responsible for their regulatory compliance.

Finally, Relator states that Clinical Services, Inc. appears under operational/managerial control on the ownership and management disclosures for every single facility except Riverview Health & Rehabilitation ("Riverview"), and argues that tax documents CPC submitted regarding Riverview do not disclose its management, much less address its ownership or control. (Response at 4-5.) Relator is wrong. The judicially noticeable Medicare.gov disclosure page clearly shows that Riverview was under the "operational/managerial control" of Riverview Health and Rehabilitation Center, Inc., not CPC. (Doc. 72 at 34.) The tax documents were submitted in response to the Court's observation that the Medicare.gov disclosure page for this facility, unlike the others, lacked an ownership section. (Order dated April 21, 2022.) The tax forms were submitted to establish that CPC had no ownership interest in Riverview, which they do, as CPC is nowhere named on those documents.

In sum, despite Relator's unfounded and unsupported beliefs regarding CPC's ownership, management, and control, this Court may properly take the judicially noticeable records that Relator has not reasonably disputed into account in deciding CPC's motion to dismiss. *See, e.g., Bouton v. Ocean Properties, Ltd.*, 201 F. Supp. 3d 1341, 1345-48 (S.D. Fla. 2016); *United States ex rel. Heller v. Guardian Pharmacy, LLC*, 521 F. Supp. 3d 1254, 1280 (N.D. Ga. 2021).

**II. The CMS.gov Documents Are Proper Subjects for Judicial Notice.**

As this Court observed, under Rule 201, a court may take judicial notice of government documents available from reliable sources, such as websites run by governmental agencies. (Order at 12 (citation omitted).) Accordingly, courts routinely take judicial notice of documents and information from CMS.gov. *See, e.g. U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381-82 (C.D. Cal. 2014) (noticing multiple manuals and forms on the CMS website), *aff'd sub nom., United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017); *Abdus-Sabur v. Hope Village, Inc.*, 221 F. Supp. 3d 3, 9-10 & n.3 (D.D.C. 2016) (noticing Medicare manual and government healthcare website); *United States ex rel. Fox RX, Inc. v. Omnicare, Inc.*, 38 F. Supp. 3d 398, 405-06 & n.6 (S.D.N.Y. 2014) (noticing CMS website).

Relator has not refuted the authorities cited by the Court or CPC in its briefing. She has not cited any law for the proposition that these manuals are not judicially noticeable to show that the actions that a relator casts as illegal have actually been approved by CMS or that a provider's actions complied with CMS's publicly stated interpretation of the law. Nor does she contradict CMS's interpretation of the law or point to any contrary statements by CMS.

Rather, Relator argues that judicial notice of the CMS documents CPC proffers is inappropriate because judicial notice only allows admission of facts not

subject to reasonable dispute, and such notice is not supported by law. (Response at 7-10.) First, Relator takes issue with CPC's statement that CMS, in its Memorandum on Physician Delegation of Tasks in Skilled Nursing Facilities (SNFs) and Nursing Facilities (NFs) (the "CMS Memorandum"), "clarified that [42 C.F.R. § 483.30] allows that nurse practitioners may provide initial and other required visits for Medicaid (i.e., 'NF') patients where state law permits" because the statement "assumes the nurse practitioners meet . . . the exception" that Relator alleges does not apply. (Response at 8.) But CPC's statement does not "assume" anything—it accurately reflects the contents of the CMS Memorandum. *See* Doc. 73-1 (Exh. B) at 32-33), available at https://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/SurveyCertificationGenInfo/Downloads/Survey-and-Cert-Letter-13-15-.pdf. Relator's allegations have nothing to do with whether the document is a proper subject of judicial notice.

Relator also argues that the Memorandum is not appropriate for judicial notice because "the truth for which it is asserted"—i.e., that the CMS Memorandum shows "what is or is not a violation of law"—is "not a fact at all[.]" (Response at 9.) But CMS, as the federal agency that administers the Medicare and Medicaid programs and authored the regulation that Relator alleges CPC violated, is an authority as to what is or is not a violation of that regulation. The CMS

Memorandum is no mere "interpretation of a policy statement[.]" It represents CMS's guidance on how it will apply the regulation it authored governing physician delegation of tasks. (Response at 9; Doc. 73-1 (Exh. B) at 31.) Healthcare providers are entitled to rely upon it, and Relator cannot shield her allegations from scrutiny by attempting to block CMS's guidance from this Court's consideration.

Relator further argues that the CMS Memorandum is not a proper subject of judicial notice because it lacks the force of law. (Response at 8-9.) But a document lacking the force of law is still a proper subject of judicial notice as an official interpretation of statutes or regulations so long as it is not in conflict therewith. *See, e.g., Epic Tech, LLC v. Penn-Tech Assocs., Inc.*, No. 1:20-CV-02428-VMC, 2022 WL 3212728, at *10 (N.D. Ga. June 3, 2022) (noticing U.S. Patent and Trademark Office's Manual of Patent Examining Procedure though it lacked the force of law); *Roten v. Astrue*, No. 5:08CV89-RLV, 2011 WL 4596129, at *5 n.4 (W.D.N.C. Sept. 30, 2011) (noticing Social Security Administration's Hearing, Appeals and Litigation Law Manual though it lacked the force of law).

Relator next contends that this Court should not notice CMS's statement that the consolidated billing requirement under Medicare Part A "confers on the SNF the billing responsibility for the entire package of care that residents receive

9

during a covered Part A SNF stay"[2] or the Medicare Claims Processing Manual. (Response at 9.) Relator does not question the accuracy or authoritativeness of these materials or the statements in them. Moreover, the reasons for judicial notice of the CMS Memorandum apply with equal force to these CMS documents. These documents are CMS's interpretation and guidance of the regulations that providers are expected to follow, and govern the relationships between CMS and the providers. The documents show how CMS intends to enforce the regulations it promulgated, and regulated entities are entitled to rely on this guidance.

It is Relator's burden to plausibly allege facts that show a regulatory violation that is material to CPC's claims, and the guidance documents show that Relator's allegations of regulatory violations simply are not plausible. CPC should not be forced into expensive and time-consuming discovery where public documents show that CPC's conduct did not violate regulations as those regulations are interpreted and enforced by CMS, the governing agency. Relator's feeble attempt to have the Court ignore these authoritative public statements from the very agency charged with enforcing Medicare's rules highlights the disconnect between Relator's theories and CMS's own application of the rules.

---

[2] Available at https://www.cms.gov/Medicare/Billing/SNFConsolidatedBilling (last visited 8/16/22).

### III. Conclusion

For the foregoing reasons, the Court should grant CPC's Request for Judicial Notice in Support of Defendant Community Primary Care of Georgia, LLC's Motion to Dismiss Relator's SAC.

Respectfully submitted this 17th day of August, 2022.

                                          ARNALL GOLDEN GREGORY LLP

                                          */s/ Glenn P. Hendrix*
                                          Glenn P. Hendrix, Esq.
                                          Georgia Bar No. 346590
                                          W. Jerad Rissler
                                          Georgia Bar No. 142024
                                          171 17th Street, Suite 2100
                                          Atlanta, Georgia 30363-1031
                                          404.873.8500
                                          glenn.hendrix@agg.com

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that this pleading was prepared using Book Antiqua 13-point font in accordance with Local Rule 5.1(C).

This 17th day of August, 2022.

*/s/ Glenn P. Hendrix*
Glenn P. Hendrix
Georgia Bar No. 346590

## CERTIFICATE OF SERVICE

I hereby certify that on August 17th, 2022, I electronically filed the foregoing **DEFENDANT COMMUNITY PRIMARY CARE OF GEORGIA, LLC'S REPLY TO RELATOR'S RESPONSE TO DEFENDANT'S REQUEST TO TAKE JUDICIAL NOTICE** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all Counsel of Record.

                                              */s/ Glenn P. Hendrix*
                                              Glenn P. Hendrix
                                              Georgia Bar No. 346590

ARNALL GOLDEN GREGORY LLP
171 17th Street NW
Suite 2100
Atlanta, Georgia 30363-1031
Telephone: 404.873.8500
Facsimile: 404.873.8501